## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **WIKA INSTRUMENT I, LP,** | ) | |
| **f/k/a WIKA INSTRUMENT** | ) | |
| **CORPORATION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. _____** |
| **v.** | ) | |
| | ) | |
| **ASHCROFT, INC.,** | ) | |
| | ) | **Jury Trial Requested** |
| **Defendant.** | ) | |
| _____ | ) | |

## COMPLAINT

Plaintiff WIKA INSTRUMENT I, LP, f/k/a WIKA Instrument Corporation ("WIKA") hereby states its complaint against ASHCROFT, INC. ("Ashcroft" or "Defendant").

## INTRODUCTION

Ashcroft is knowingly and publicly misrepresenting the flammability, inherent quality and safety of WIKA's market-leading XSEL® pressure gauges. In advertisements and elsewhere, Ashcroft falsely claims that its Duragauge pressure gauges are safer than WIKA's XSEL® gauges. Yet, the opposite is true: 1) WIKA gauges are safer than Ashcroft gauges; 2) WIKA gauges are less flammable than

Ashcroft gauges; and 3) the Ashcroft Duragauge gauge has serious safety issues when exposed to open flames.

Ashcroft is misleading the public to seize market share from WIKA and damage WIKA's reputation with members of the oil, gas, chemical, petrochemical and refining markets who purchase and use WIKA gauges.  In so doing, Ashcroft is touting flammability tests and "after" photographs purportedly comparing WIKA and Ashcroft gauges after being exposed to flame and/or heat.  The tests are not scientifically reliable, were manipulated to favor Ashcroft, and do not support Ashcroft's conclusion that WIKA's gauges are unsafe and Ashcroft's are safe.  The photograph comparison itself is doctored, and literally false.

Ashcroft's behavior is textbook consumer deception designed to cause confusion and doubt in the marketplace about WIKA.  Ashcroft's false advertising violates the federal Lanham Act and state unfair competition laws, should be enjoined and WIKA should be awarded damages and Ashcroft's profits.

## THE ACTION

### 1.

This is a false advertising, unfair competition and tortious interference action for damages and injunctive relief; specifically, that WIKA be granted trebled monetary damages, punitive damages, Ashcroft's profits from its false ads, the cost

for WIKA to disseminate corrective advertising and WIKA's attorney's fees, and that Ashcroft be ordered to gather and recall its false ads and destroy them, with Ashcroft enjoined from issuing the false advertising again.

2.

This action is brought under the federal Lanham Act, 15 U.S.C. §§ 1125 <u>et seq.</u>, O.C.G.A. § 10-1-372, C.G.S.A. § 42-110a <u>et</u> <u>seq.</u> and Georgia common law.

**<u>PARTIES</u>**

3.

WIKA is a Georgia limited partnership with its principal place of business located at 1000 Wiegand Boulevard, Lawrenceville, Georgia 30043.

4.

Defendant Ashcroft is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Stratford, Connecticut. Ashcroft may be served with process on its registered agent, Corporate Service Company at 50 Weston Street, Hartford, Connecticut 06120-1537.

5.

Ashcroft's parent company is Nagano Keiki Holdings, Ltd.

## JURISDICTION AND VENUE

6.

Ashcroft markets, sells and distributes products in the State of Georgia and actively solicits and conducts business in the State of Georgia and within this judicial district.

7.

This Court has personal jurisdiction over Ashcroft.

8.

This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. §§ 1121(a) and 1125(a) and 28 U.S.C. § 1367.

9.

Jurisdiction and venue are proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because the claims set forth below arose in this District and Defendant has sufficient contacts with the State to subject it to personal jurisdiction.

## FACTUAL BACKGROUND

### WIKA's Pressure Gauge Business

10.

WIKA is a global manufacturer and supplier of pressure and temperature measurement instruments, including pressure gauges, which it markets and sells throughout the United States and internationally to companies that regularly deal with highly combustible materials. This includes the oil, gas, chemical, petrochemical and refining markets ("Refinery Industry").

11.

WIKA has devoted significant time and resources to develop and promote its pressure gauges and the WIKA brand throughout the Refinery Industry.

12.

WIKA's gauges are known throughout the Refinery Industry due to their high-quality and superior ratings for safety and flammability.  WIKA's market share in the Refinery Industry has increased over the last five (5) years.

13.

Generally, a pressure gauge is comprised of the following components: a case to protect the gauge internals; a Bourdon tube pressure sensing element; a movement to convert motion from the sensing element to the pointer which

indicates the pressure on a dial; a lens or window to protect the dial and pointer; and a connector to attach the gauge to the device or system being monitored.

14.

The WIKA XSEL® Process Gauge is a pressure gauge that WIKA promotes and sells to customers in the Refinery Industry.  WIKA's XSEL® Process Gauge is available in two types, Type 232.34, having a dry case, and Type 233.34, having a liquid-filled case.

15.

The outer case of WIKA's XSEL® Process Gauges is made of  a Polybutylene Terephthalate ("PBT") named Pocan (manufactured by Lanxess), which is a fiberglass reinforced thermoplastic material.

16.

A gauge's flammability and fire safety characteristics are important material factors in the Refinery Industry consumer's purchasing decision when considering pressure gauges.  The relative flammability and safety of a gauge are indicative of the inherent quality of that particular gauge.

17.

The flammability and fire safety characteristics of pressure gauges include their temperature resistance, thermal stability, flame resistance, burn time and

ability to self-extinguish rapidly. These characteristics are significant considerations for pressure gauge consumers because fires are a serious risk in the oil, gas, chemical, petrochemical and refining markets.

**Ashcroft Has Been Losing Business To WIKA For Years**

18.

Ashcroft manufactures and sells pressure and temperature measurement instrumentation to Refinery Industry consumers worldwide. WIKA and Ashcroft directly compete in the Refinery Industry pressure gauge market.

19.

Ashcroft's Type 1279 Duragauge pressure gauge competes with WIKA's XSEL® Process Gauges for sales and market share in the Refinery Industry.

20.

In recent years, WIKA's market share in the Refinery Industry has increased due to its products' superior quality, safety, flammability characteristics and price.

21.

Much of WIKA's increased market share has come at Ashcroft's expense.

**Ashcroft's Ads Misrepresent Its And WIKA's Gauges**

22.

Aschroft's Type 1279 Duragauge case is comprised of various materials, including a phenolic material named Plenco, aluminum and polypropylene.  <u>See</u> Ashcroft "Bulletin PL-1", attached as Exhibit A, at 2.

23.

In 2012, Ashcroft began disseminating comparative advertising materials contending that Ashcroft's Type 1279 Duragauge has better flammability characteristics and is safer than WIKA's XSEL® Process Gauges based on purported testing, and because WIKA's gauges have thermoplastic cases and Ashcroft's do not.

24.

In the Spring of 2012, Ashcroft published a brochure identified as "Page: DU/PI-74", a true and correct copy of which is attached as Exhibit B ("Ashcroft Brochure"; collectively, with the materials referenced in Paragraph 23, "Advertising Material").

25.

The Ashcroft Brochure has the title: "ASHCROFT® TYPE 1279 DURAGUAGE® PRESSURE GAUGE WITH PHENOL CASE VERSUS COMPETITIVE THERMOPLASTIC CASE."  Exhibit B at 1.

26.

The first page of the Ashcroft Brochure includes the following statements:

… Ashcroft process gauge competitors use thermoplastics for their cases …

     The Ashcroft Type 1279 case is made of a PLENCO 02370, Black Phenolic Resin. … Typically, phenolic doesn't burn, but instead will 'char', breaking down to form ash and giving off a little smoke.

'Thermoplastics', like Pocan (Polybutylene Terephthalate) on the other hand, will melt when exposed to heat. …

     Thermoplastics are also more likely to burn than thermosets. … When thermoplastics burn, the material will melt, creating a pool of burning liquid, or even worse, spattering burning molten plastic onto nearby surfaces.

Exhibit B at 1.

27.

On page 2 of the Ashcroft Brochure, Ashcroft further states that:

**Flammability Testing:**

     … Ashcroft has conducted a number of open flame tests comparing the performance of Wika, US Gauge, and Ashcroft Type 1279 process gauges when exposed to the flame of a laboratory burner

for a period of 10 seconds.  The case material of both the Wika and US Gauge burned intensely when contacted with the flame, posing a risk of spreading a fire.  In contrast, the phenolic case of the Ashcroft 1279 did not burn and case integrity was not compromised.

Exhibit B at 2.

28.

The literal and necessarily implied message of the above-identified statements set forth on pages 1 and 2 of the Ashcroft Brochure is that WIKA gauges "will melt, creating a pool of burning liquid … spattering burning molten plastic" and "pos[e] a risk of spreading a fire" when exposed to direct flame or high temperatures.  This message is literally false: a) Ashcroft's statements are not based on scientifically reliable testing; b) on investigation and belief, Ashcroft's statements are contradicted by scientifically reliable testing; c) the test results cited by Ashcroft do not support the conclusions stated in the Aschroft Brochure; and d) Ashcroft's Type 1279 Duragauge melts when exposed to open flame.

29.

Page 3 of the Ashcroft Brochure states in a subsection entitled "Elevated Temperature Testing" that:

Ashcroft has performed extensive thermal testing on the Type 1279 Duragauge process gauge with a phenolic case.  No ill effects were noted up to temperatures of 500°F (260°C).  In excess of 500°F (260°C) a noticeable odor is produced…at 700°F (371°C) some smoke is produced.  At 750°F (399°C) the phenolic case will char…

In one experiment an Ashcroft Type 1279 with a phenolic case, and the competitor's gauges with a thermoplastic case, were heated to 550ºF for 30 minutes.  After the test, the Ashcroft Type 1279 was relatively undamaged and the gauge was fully functional. …

*Figure 2:*  Both the Wika and U.S. Gauge with a thermoplastic case completely melted making the gauges non-functional.  When in contact with a direct flame, both competitors' gauges with a thermoplastic case have the potential to spread a fire.

Exhibit B at 3.

30.

The literal and necessary implication of Page 3 of the Ashcroft Brochure, "Elevated Temperature Testing" is that all WIKA gauges are flammable at high temperatures, they will likely spread fires if exposed to fire and they are unsafe; and yet Ashcroft gauges are not flammable, do not have the potential to spread a fire, they remain fully functional during fires and they are safer than WIKA gauges.  This literal and necessary implication is literally false as:  a) Ashcroft's statements are not based on scientifically reliable testing; b) on investigation and belief, Ashcroft's statements are contradicted by scientifically reliable testing; c) and the test results cited by Ashcroft do not support the conclusions stated in the Ashcroft Brochure.

31.

Page 3 of the Ashcroft Brochure contains the following picture within the "Elevated Temperature Testing" subsection (the "After Picture"):



WIKA XSEL 232.34          ASHCROFT 1279          US Gauge 1981

Figure 2:

*Gauges elevated to an ambient temperature of 550°F  (288°C) for 30 minutes. Both competitive gauge cases, (Wika and US Gauge) above melted as shown. If exposed to a direct flame, the potential to spread a fire exists. In contrast, the integrity of the Type 1279 Duragauge case (Ashcroft) remained intact and did not melt. Gauge calibration was checked before and after the test. The Type 1279 was fully functional and remained within tolerance. (note: the acrylic front ring fully melted causing the gauge window to be unsecured into the gauge case)*

Exhibit B at 3.

32.

The literal and necessary implication of the After Picture and accompanying caption is that scientifically reliable and market-relevant testing proves that all WIKA gauges are flammable and melt at high temperatures or when subjected to direct flame, that they become inoperable when exposed to heat and they will likely spread fires and that they are therefore unsafe; yet Ashcroft gauges are not flammable, they do not have the potential to spread a fire, they remain fully functional during fires, they do not melt and they are therefore safer than WIKA gauges. This message and the After Picture are literally false as: a) the pictures of gauges shown on Page 3 are doctored; b) the After Picture does not reflect scientifically reliable testing or the testing allegedly done by Ashcroft; c) on investigation and belief, the After Picture is contradicted by actual pictures of WIKA and Ashcroft gauges subjected to the tests purportedly performed by Ashcroft; d) the pictures present a false comparison; and e) the caption's suggestion that Ashcroft's elevated temperature testing proves that "[i]f exposed to a direct flame, the potential to spread a fire exists" -- yet the Type 1279 Duragauge does not melt when exposed to direct flame -- is false as it is factually untrue and the conclusions stated in the caption are not supported by scientifically reliable testing or the testing allegedly done by Ashcroft.

-13-

**Taken Both In Context And Individually, Ashcroft's Advertising Materials Make Literally False, Deceptive And Misleading Claims About WIKA's And Ashcroft's Gauges**

33.

Ashcroft's Brochure makes direct comparisons between the Type 1279 Duragauge pressure gauge and WIKA's Type 232.34 XSEL® Process Gauge. Ashcroft's Brochure also makes comparisons to any type of WIKA XSEL® Process Gauges which uses Pocan thermoplastic material by referencing the Pocan thermoplastic material used in WIKA's gauges.  See Exhibit B.

34.

Ashcroft's Brochure also references various tests as supporting the claims asserted in the Advertising Material.

35.

Accordingly, Ashcroft's Brochure is a comparative advertisement that makes establishment or "tests prove" claims.

36.

Ashcroft's Advertising Material is literally false, misleading and deceptive.

37.

Ashcroft's Advertising Material falsely and explicitly states and/or falsely states by necessary implication that:

- WIKA's XSEL® Process Gauges are not safe at high temperatures or when exposed to direct flame and they contribute to spreading fires;

- Ashcroft's Type 1279 Duragauge is safe at high temperatures and when exposed to direct flame and it does not contribute to spreading fires;

- Ashcroft's Type 1279 Duragauge does not have the potential to spread fires; and

- Legitimate scientific testing proves that WIKA's gauges are unsafe and that Ashcroft's gauges are safer than WIKA's gauges.

38.

Ashcroft's Advertising Material is false and misleading because it asserts that Ashcroft's gauges are safe and WIKA's gauges are unsafe, yet the truth is that:

- WIKA's XSEL® Process Gauges are safe at high temperatures and when exposed to direct flame and they do not contribute to spreading fires;

- Ashcroft's Type 1279 Duragauge is not as safe at high temperatures, or when exposed to direct flame, as Ashcroft claims and/or implies;

- Ashcroft's Type 1279 Duragauge has the potential to spread fires; and

- Ashcroft's testing is not sufficiently reliable, does not support Ashcroft's claims, and Ashcroft either failed to conduct the appropriate tests, failed to properly conduct the applicable tests or intentionally failed to disclose the complete results.

39.

The Type 1279 Duragauge pressure gauge does not offer temperature resistance and thermal stability superior to WIKA's XSEL® Process Gauges.

40.

WIKA's XSEL® Process Gauges do not "creat[e] a pool of burning liquid, or even worse, spatter[] burning molten plastic onto nearby surfaces" as claimed in the Ashcroft Brochure.

41.

Upon information and belief, the testing conducted and relied on by Ashcroft is not scientifically reliable, does not comply with applicable test standards, does not meet any reliable safety standard, and does not support Ashcroft's conclusions that its Duragauge gauges are totally safe and do not have the potential to spread fires, or that WIKA's XSEL® Process Gauges are unsafe.

42.

Upon information and belief, Ashcroft failed to disclose the complete results of the testing conducted and relied on by Ashcroft.

43.

Upon information and belief, the back portion of the case and window ring of Ashcroft's Type 1279 Duragauge pressure gauge was removed before conducting the tests referenced in Ashcroft's Advertising Material because

Ashcroft knew that the back portion of the case and the window ring would catch fire and burn when tested, causing a fire safety hazard.   Alternatively, on information and belief, if Ashcroft did not remove the back portion of the case and/or window ring before conducting the tests, the Ashcroft Type 1279 Duragauge pressure gauge appearing in the After Picture was not the gauge actually tested or was cleaned to remove the melted case back and window ring before being photographed.

44.

The After Picture and caption underneath stating that "the integrity of the Type 1279 Duragauge case remained intact and did not melt" are literally false, deceptive and misleading because, on investigation and belief, Ashcroft removed the back portion of the case and window ring before conducting the claimed flammability test.

45.

Upon information and belief, the picture on page 3 of Ashcroft's Advertising Material does not show the actual Ashcroft Type 1279 Duragauge pressure gauge that was used in the referenced test; if it does, Ashcroft cleaned the gauge to remove the melted case material before photographing the gauge.

46.

Ashcroft's Type 1279 Duragauge pressure gauge case poses a greater risk of spreading fire than the WIKA XSEL® Process Gauge case.

47.

When considered in full context, Ashcroft's Advertising Material unambiguously and necessarily conveys and implies that WIKA's XSEL® Process Gauge is unsafe and dangerously flammable.  This advertising claim by Ashcroft is literally false, both explicitly and by necessary implication.

48.

When considered in full context, Ashcroft's Advertising Material unambiguously and necessarily implies that Ashcroft's Type 1279 Duragauge pressure gauge is safer than WIKA's XSEL® Process Gauge, and/or Ashcroft's gauge does not have the potential to spread fires, but WIKA's gauges are likely to spread fires in a refinery fire environment.  This advertising claim by Ashcroft is literally false, both explicitly and by necessary implication.

49.

When considered in full context, Ashcroft's Advertising Material unambiguously and necessarily implies that scientific testing establishes that WIKA's XSEL® Process Gauges are unsafe and likely to spread fires in a refinery

fire environment, and that Ashcroft's Type 1279 Duragauge pressure gauge is safer than WIKA's XSEL® Process Gauges, and/or Ashcroft's gauge does not have the potential to spread fires in a refinery fire environment.  This advertising claim by Ashcroft is literally false, both explicitly and by necessary implication.

50.

When considered in full context, Ashcroft's Advertising Material assert the message and gist that WIKA gauges are of inferior quality, unsafe and not suited for use in a refinery environment, and that Ashcroft gauges are of superior quality, safe, cannot spread fires and are perfectly safe and better suited than WIKA gauges for use in a refinery environment.  The unambiguous message and gist of the Advertising Materials is not opinion, but instead an asserted statement of fact that is literally false.

51.

The tests Ashcroft cites and relies on to assert that WIKA gauges are of inferior quality, unsafe and not suited for use in a refinery environment, and that Ashcroft gauges are of superior quality, safe, cannot spread fires and are perfectly safe and better suited than WIKA gauges for use in a refinery environment are not sufficiently reliable to be relied upon, nor do the tests support the messages and

gist of the Advertising Materials.  The Advertising Materials are therefore literally false.

52.

Alternatively, if the claims in Ashcroft's Advertising Material are not literally false, such claims are nevertheless implicitly false, deceptive and misleading.

53.

Ashcroft is disseminating the Advertising Materials to consumers and potential consumers of pressure gauge products, including customers and potential customers of WIKA's pressure gauges.

54.

The false, deceptive and misleading claims in Ashcroft's Advertising Material have and are, or are likely to, deceive consumers of pressure gauges and, by doing so, influence their purchasing decisions.

55.

The false, deceptive and misleading claims in Ashcroft's Advertising Material speak to and address an inherent quality and characteristic of WIKA and Ashcroft gauges, namely their safety, functionality, quality of workmanship and ability to spread and withstand fires in a refinery environment, and are material to

consumers in the Refinery Industry who purchase pressure gauges and who are considering whether to purchase a WIKA pressure gauge.

56.

WIKA has received inquiries from customers or potential customers about Ashcroft's Advertising Material and the relative safety, quality and functionality of WIKA and Ashcroft gauges.

57.

Ashcroft's conduct is interfering with WIKA's business relations with its current customers and prospective consumers in the Refinery Industry.

58.

Ashcroft's conduct is causing irreparable harm to WIKA's reputation and the reputation of its pressure gauge products.  Ashcroft's false, deceptive and misleading claims taint the WIKA brand name and the reputation of its pressure gauge products and thereby compromise WIKA's ability to effectively market and sell these products in the future.

59.

On information and belief, Ashcroft has engaged in the conduct at issue with reckless disregard of WIKA's rights, and/or has engaged in such conduct intentionally, willfully, and maliciously with knowledge that the claims being

made are false, deceptive and misleading and with the intention to harm WIKA and to deceive consumers.

**COUNT I**
**LANHAM ACT § 43(a)(1)(B)**
**FALSE ADVERTISING BY ASHCROFT**

60.

WIKA repeats and re-alleges the averments contained in paragraphs 1 through 59 of this Complaint as if fully set forth herein.

61.

Both WIKA's XSEL® Process Gauges and Ashcroft's Type 1279 Duragauge pressure gauges are sold in interstate commerce.

62.

Ashcroft's Advertising Material has been and is disseminated, published and discussed in interstate commerce.

63.

Ashcroft's Advertising Material is literally false and misleading.

64.

Ashcroft's Advertising Material and literally false and misleading advertising is likely to deceive consumers of pressure gauges.

-22-

65.

Ashcroft's Advertising Material and literally false and misleading advertising speak to and address an inherent quality and characteristic of WIKA and Ashcroft gauges, namely their safety, functionality, quality of workmanship and ability to spread and withstand fires in a refinery environment, are likely to influence customers' decisions in purchasing pressure gauges and materially affect purchasing decisions by relevant consumers.

66.

Ashcroft's Advertising Material and literally false and misleading advertising has caused and will continue to cause irreparable harm to WIKA. Unless Ashcroft is enjoined from continuing the aforementioned unlawful acts, WIKA will suffer irreparable harm.

67.

As a direct and proximate result of Ashcroft's Advertising Material and literally false and misleading advertising, WIKA has suffered damages in an amount to be determined at trial.

68.

Ashcroft's Advertising Material and literally false and misleading advertising and promotion in interstate commerce constitutes false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

69.

Pursuant to Section 34 of the Lanham Act, 15 U.S.C. § 1116, WIKA is entitled to preliminary and permanent injunctive relief to prevent damage to WIKA and to prohibit Ashcroft from further violations of Section 43(a) of the Lanham Act as further set forth in the Prayer for Relief below.

70.

Furthermore, pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117(a), WIKA is entitled to monetary damages, corrective advertising costs, Ashcroft's profits, costs, and prejudgment interest.

71.

This is an exceptional case under Section 35 of the Lanham Act, 15 U.S.C. § 1117(a), entitling WIKA to recover its attorneys' fees and up to three times its actual damages.

72.

Pursuant to Section 36 of the Lanham Act, 15 U.S.C. § 1118, WIKA is entitled to a destruction order requiring all advertisements in Ashcroft's possession bearing the false or misleading descriptions or representations be delivered up and destroyed.

## COUNT II
## VIOLATION OF GEORGIA'S UNIFORM DECEPTIVE TRADE PRACTICE ACT (O.C.G.A. § 10-1-372)

73.

WIKA repeats and re-alleges the averments contained in paragraphs 1 through 72 of this Complaint as if fully set forth herein.

74.

Ashcroft's Advertising Materials represent that its pressure gauges have characteristics, uses or benefits that they do not have.

75.

Through Ashcroft's aforementioned advertising activities, Ashcroft is representing that WIKA's pressure gauges have characteristics that they do not have.

76.

Through Ashcroft's aforementioned advertising activities, Ashcroft is disparaging WIKA's pressure gauges by making false or misleading factual representations.

77.

Ashcroft has disseminated the Ashcroft Advertising Material containing false, deceptive and misleading representations to the public with the intent to sell, distribute or increase consumption of its pressure gauges.  WIKA has suffered pecuniary loss as a direct and proximate result of Ashcroft's Advertising Material and conduct.

78.

Ashcroft's false, deceptive, and misleading advertising and promotional activities violate the Georgia Uniform Deceptive Trade Practice Act, O.C.G.A. § 10-1-372.

79.

Ashcroft's deceptive advertising practices have been intentional and willful.

80.

Unless Ashcroft is enjoined from continuing its unlawful activities, WIKA will continue to suffer irreparable harm.

81.

Pursuant to O.C.G.A. § 10-1-372, WIKA is entitled to preliminary and permanent injunctive relief as well as attorneys' fees and costs of this action.

## COUNT III
## VIOLATION OF CONNECTICUT'S UNFAIR TRADE PRACTICES ACT
## (C.G.S.A. § 42-110a et seq.)

82.

WIKA repeats and re-alleges the averments contained in paragraphs 1 through 81 of this Complaint as if fully set forth herein.

83.

Ashcroft is representing that its pressure gauges have characteristics, uses or benefits that they do not have.

84.

Ashcroft is representing that WIKA's pressure gauges have characteristics that they do not have.

85.

Ashcroft is engaging in conduct which creates confusion and misunderstanding in the marketplace, and a likelihood of future confusion.

86.

As a direct and proximate result of Ashcroft's aforementioned advertising

activities, WIKA has suffered damages in an amount to be determined at trial.

87.

Ashcroft's actions are unlawful and offend public policy, are immoral, unethical, oppressive or unscrupulous, and are substantially injuring WIKA.

88.

Ashcroft has engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Connecticut Unfair Trade Practices Act, C.G.S.A. § 42-110a et seq.

89.

Pursuant to C.G.S.A. §§ 42-110b and 42-110g, WIKA is entitled to preliminary and permanent injunctive relief, other equitable relief, and to recover damages, including lost profits, and attorneys' fees and costs.

90.

In addition, WIKA is entitled to recover punitive damages pursuant to C.G.S.A. § 42-110b because Ashcroft has acted with reckless indifference to WIKA's rights and/or Ashcroft has acted with an intentional, wanton, or malicious disregard of WIKA's rights.

## COUNT IV
## TORTIOUS INTERFERENCE WITH CURRENT AND PROSPECTIVE BUSINESS RELATIONSHIPS

91.

WIKA repeats and re-alleges the averments contained in paragraphs 1 through 90 of this Complaint as if fully set forth herein.

92.

Ashcroft disseminated its Advertising Materials to entities with whom WIKA had, has or may have a business relationship.

93.

WIKA had prospective business relationships with one or more of the entities to whom Ashcroft has disseminated its Advertising Materials.

94.

Ashcroft knew and knows of WIKA's business relationships with purchasers of pressure gauges within the Refinery Industry.

95.

Ashcroft knew and knows of WIKA's prospective business relationships with purchasers of pressure gauges within the Refinery Industry.

96.

With malice and intent to injure WIKA, Ashcroft tortiously interfered with WIKA's business relationships with purchasers of pressure gauges within the Refinery Industry by disseminating false and misleading information about WIKA's pressure gauges, and by disseminating defamatory statements about WIKA's pressure gauges, to WIKA's current and prospective customers.

97.

Ashcroft tortiously interfered with WIKA's business relationships without any legal privilege that would arguably protect Ashcroft for its conduct.

98.

WIKA has been injured as a direct and proximate result of Ashcroft's tortious conduct.

99.

WIKA is entitled to recover damages due to Ashcroft's tortious interference.

100.

Ashcroft committed its tortious misconduct willfully, or with malice, fraud, wantonness, oppression, or an entire want of care that raises the presumption of a conscious indifference to the consequences of Ashcroft's actions.

101.

Ashcroft tortiously interfered with WIKA's business relationships with the specific intent to cause WIKA harm.

102.

Accordingly, WIKA is entitled to recover punitive damages in an amount to be determined at trial, without any statutory limit to the amount of an award of punitive damages pursuant to O.C.G.A. § 51-12-5.1(f).

## COUNT V
## COSTS AND EXPENSES, INCLUDING ATTORNEYS' FEES
## (O.C.G.A. § 13-6-11)

103.

WIKA repeats and re-alleges the averments contained in paragraphs 1 through 102 of this Complaint as if fully set forth herein.

104.

In carrying out the aforementioned activities, Ashcroft acted in bad faith, was stubbornly litigious and/or caused WIKA unnecessary trouble and expense.

105.

Pursuant to O.C.G.A. § 13-6-11, WIKA is entitled to recover its costs and expenses, including reasonable attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff WIKA prays for the following relief:

(a)    The Court enter judgment that Ashcroft has engaged in false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), has engaged in deceptive advertising practices in violation of O.C.G.A. § 10-1-372, has engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce in violation of C.G.S.A. § 42-110b, has tortiously interfered with WIKA's existing and prospective business relationships, and has acted in bad faith, been stubbornly litigious, and caused unnecessary trouble and expense.

(b)    On Count I, that WIKA be awarded monetary damages; corrective advertising costs; disgorgement of Ashcroft's profits; enhanced damages; its attorneys' fees; its costs; prejudgment interest; preliminary and permanent injunctive relief prohibiting Ashcroft from further violations of the Lanham Act and permanent injunctive relief requiring Ashcroft to disseminate corrective advertising materials, including an order directing Ashcroft to file with the Court and serve on WIKA within thirty days after entry of the injunction a written report, under oath, setting forth in detail the manner and form in which Ashcroft has complied with the injunction; and a destruction order requiring that Ashcroft

deliver up and destroy all advertising and promotional materials deemed false, deceptive, and misleading.

(c)     On Count II, that WIKA be granted preliminary and permanent injunctive relief prohibiting further violations of O.C.G.A. § 10-1-372; attorneys' fees; and costs.

(d)     On Count III, that WIKA be granted preliminary and permanent injunctive relief prohibiting further violations of C.G.S.A. § 42-110b; other equitable relief including corrective advertising; and also that WIKA be awarded monetary damages, lost profits, punitive damages, attorneys' fees, and costs.

(e)     On Count IV, that WIKA be awarded its actual damages, lost profits, and punitive damages.

(f)     On Count V, that WIKA be awarded its costs and expenses, including attorneys' fees.

(g)     An award of Plaintiff's costs and expenses.

(h)     On each of Plaintiff's claims for relief, such further and other relief as the Court deems just and proper.

## **Demand for Jury Trial**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted this 4th day of January 2013.

/s/ **Eric P. Schroeder**

Eric P. Schroeder
Georgia Bar No. 629880
eric.schroeder@bryancave.com
Damon J. Whitaker
Georgia Bar No. 752722
damon.whitaker@bryancave.com
Edwin M. Cook
Georgia Bar No. 154203
edwin.cook@bryancave.com

**BRYAN CAVE LLP**
One Atlantic Center, Fourteenth Floor
1201 West Peachtree Street, NW
Atlanta, Georgia 30309
Telephone:   (404) 572-6600
Facsimile:    (404) 572-6999

**- Of Counsel -**

J. Bennett Clark
ben.clark@bryancave.com

**BRYAN CAVE LLP**
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, Missouri 63102
(314) 259-2000   phone
(314) 259-2020   facsimile

*Attorneys for Plaintiff WIKA Instrument I, LP, f/k/a WIKA Instrument Corporation*

## <u>Local Rule 7.1(D) Certification of Compliance</u>

I hereby certify that the foregoing pleading has been prepared with Times New Roman font, 14 point, one of the font and point selections approved by the Court in L.R. 5.1B, N.D. Ga.`

/s/ Eric P. Schroeder
Georgia Bar No. 629880

#6241739_2