UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| WIKA INSTRUMENT I, LP, f/k/a WIKA INSTRUMENT CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> ASHCROFT, INC., <br><br> Defendant. | CIVIL ACTION NO. <br><br> 1:13-CV-43-CAP |

# O R D E R

This matter is before the court on WIKA Instrument I, LP, f/k/a WIKA Instrument Corporation's ("WIKA") motion to exclude expert testimony of Gary Rathwell [Doc. No. 92], WIKA's motion to exclude expert testimony of Joseph H. Koo [Doc. No. 94], Ashcroft Inc.'s ("Ashcroft") motion to exclude expert testimony of Barry Newton [Doc. No. 96], and Ashcroft's motion to exclude expert testimony of Raimund Weissner [Doc. No. 97].

## I. Introduction

### A. Procedural Background

On January 4, 2013, WIKA filed this action against Ashcroft asserting federal and state law causes of action [Doc. No. 1]. WIKA asserted five claims in its complaint: (1) false and misleading advertising in violation of

§ 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); (2) violation of Georgia's Uniform Deceptive Trade Practices Act ("GUDTPA"), O.C.G.A. § 10-1-372; (3) violation of Connecticut's Unfair Trade Practices Act ("CUTPA"), C.G.S.A. § 42-110a *et seq.*; (4) tortious interference with current and prospective business relationships, and (5) costs and expenses, including attorney's fees, pursuant to O.C.G.A. § 13-6-11. On July 3, 2013, the court denied a motion to dismiss the complaint filed by Ashcroft [Doc. No. 20]. With leave of court, WIKA filed an amended complaint on April 18, 2014 [Doc. No. 40]. WIKA reasserted the same five claims in its amended complaint. On May 9, 2014, Ashcroft filed an answer to the amended complaint and counterclaim [Doc. No. 45]. Ashcroft set forth the following claims in its counterclaim: (1) false and misleading advertising in violation of § 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); (2) tortious interference with current and prospective business relationships; (3) violation of CUTPA, C.G.S.A. § 42-110a *et seq.*; and (4) violation of GUDTPA, O.C.G.A. § 10-1-372.

On October 10, 2014, the parties filed cross-motions for summary judgment [Doc. Nos. 98, 99, and 100] and motions to exclude expert testimony [Doc. Nos. 91, 92, 94, 96, and 97]. On November 24, 2014, Ashcroft filed an additional motion to exclude evidence contained in declarations by Stan

Schultz, Andrew Firestone, Jeffrey Placek, Michael Gerster, J. Cameron Reebals, and Damon Whitaker [Doc. No. 145]. On January 12, 2015, upon stipulation by the parties, the court entered a consent order resolving the challenges to the expert testimony of Robert A. Hutchins [Doc. No. 175].

B. **Factual Background**

WIKA is a Georgia limited partnership with its principal place of business in Lawrenceville, Georgia. WIKA is a manufacturer and supplier of pressure gauges and temperature measurement instruments, which it markets and sells throughout the United States and internationally. Ashcroft is a corporation organized and existing under the laws of the State of Delaware, and its principal place of business is located in Stratford, Connecticut. Ashcroft manufactures and sells pressure gauges and temperature measurement instruments throughout the world. WIKA and Ashcroft compete directly in marketing and selling pressure gauges to the refinery industry.

WIKA manufactures and sells a line of pressure gauges known as the WIKA XSEL® Process Gauge. The WIKA XSEL® Process Gauge is available in two types, one with a dry case and one with a liquid-filled case. Ashcroft manufactures and sells a comparable pressure gauge called the Ashcroft Type 1279 Duragauge®. In 2012, Ashcroft began disseminating advertising

materials comparing the WIKA XSEL® Process Gauge with the Ashcroft Type 1279 Duragauge®. Ashcroft set forth claims in the advertising materials that the Ashcroft Type 1279 Duragauge® has better flammability characteristics and is safer than the WIKA XSEL® Process Gauge based on tests conducted by Ashcroft. The advertising materials focus on the difference in case material between the two lines of gauges. In spring 2012, Ashcroft published a brochure making specific statements regarding the Ashcroft Type 1279 Duragauge® and the WIKA XSEL® Process Gauge. Compl. Ex. B [Doc. No. 1]. The brochure details the benefits of Ashcroft's gauge with a phenol case over WIKA's gauge with a thermoplastic case.

WIKA alleges that Ashcroft's advertising materials include false or misleading statements regarding the WIKA XSEL® Process Gauge and the Ashcroft Type 1279 Duragauge®. WIKA further alleges that Ashcroft's conduct has interfered with WIKA's business relations with current customers and prospective consumers, and that Ashcroft's conduct has injured WIKA. Ashcroft alleges similar conduct by WIKA in its answer and counterclaim to WIKA's complaint.

II. **Discussion**

The parties have filed four motions to exclude expert testimony. To adjudicate the motions to exclude, the court held an evidentiary hearing from

January 7, 2015, through January 9, 2015. The court's decision with respect to the motions, set forth below, is based on the evidence presented at the hearing in addition to the parties' briefs filed in support of and in opposition to the motions to exclude.

### A. Legal Standard

Federal Rule of Evidence 702 governs the admission of expert testimony in federal courts, which states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Determinations regarding the admissibility of purported expert testimony are controlled by Federal Rule of Evidence 702, as explained by the Supreme Court in *Daubert* and its progeny. *City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 562 (11th Cir. 1998); s*ee also Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 585–97 (1993). District courts are obligated to act as a gatekeeper to the admission of expert

testimony by ensuring that it "both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597. "The focus . . . must be solely on principles and methodology, not on the conclusions that they generate." *Id.* at 595. And the proponent of expert testimony bears the burden of demonstrating that the expert "is qualified to render an expert opinion, that the opinion is reliable, and that the opinion would assist the trier of fact in resolving a disputed issue of material fact." *McDowell v. Brown*, 392 F.3d 1283, 1298 (11th Cir. 2004).

Under these rules, the district court generally engages in a three-part inquiry to determine the admissibility of expert testimony. Specifically, the court considers whether (1) the expert is qualified to testify competently regarding the matters he intends to address, (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*, and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *Quiet Technology DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1340-41 (11th Cir. 2003). The same standard applies to all expert testimony, including testimony regarding scientific, technical, and other specialized matters. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). The Supreme Court

6

has indicated, however, that "'[t]hose factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony.'" *Id.* at 151 (citation omitted). In fact, with regards to expert testimony other than "scientific" testimony, the Supreme Court has held, "[T]he relevant reliability concerns may focus upon personal knowledge or experience." *Id.* at 150.

With respect to the reliability of scientific expert testimony, the Supreme Court has identified certain factors to consider: (1) Whether the expert's technique or theory can be or has been tested, (2) whether the technique or theory has been subject to peer review and publication, (3) the known or potential rate of error of the theory or technique and the existence and maintenance of standards controlling its operation, and (4) whether the technique or theory has been generally accepted in the scientific community. *Daubert*, 509 F.3d at 593–94. The factors noted above do not comprise an exhaustive list. *Quiet Technology*, 326 F.3d at 1341. The court may consider other factors to determine the reliability of a purported expert's opinion. *Id.*

In the end, it is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence. *Id.* Indeed, a district court's gatekeeper role is not intended to supplant the adversary system or the role of the jury. *Id.* Quite the contrary, vigorous cross-

examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence. *Id.* The "overarching" goal of *Daubert's* gatekeeping requirement is simply to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field. *Kumho*, 526 U.S. at 152.

**B.** **Motion to Exclude Expert Testimony of Gary Rathwell**

Ashcroft has retained Rathwell to testify as an industry expert in this matter. Rathwell is a process control engineer.[1] In its briefing, and during the evidentiary hearing, Ashcroft has identified the following four topics that it intends to have Rathwell testify on as an expert.

1. the perception that process control engineers and designers have of the safety and durability of phenolic gauges versus thermoplastic gauges;

2. the expectations of control systems engineers with regards to specifying and procuring pressure gauges, and evaluating exceptions to specifications;

3. the expectations of specifying engineers regarding the composition of phenolic cases; and

4. the factors that motivate the purchasing decisions of engineers and procurement personnel.

---

[1] As a process control engineer, Rathwell designs automation systems, instrumentation, and controls for process plants.

Pl.'s Br. in Opp'n to Mot. to Exclude Rathwell at 3 [Doc. No. 113]. Based on the standard set forth by Federal Rule of Evidence 702 and *Daubert*, the court finds that Rathwell is qualified to testify as an expert regarding only a modified form of the second topic. Rathwell may testify as an expert on the following topic: "The process of specifying and procuring pressure gauges, and evaluating exceptions to specifications." With respect to the second topic, as modified by the court, the court finds that the elements of the *Daubert* test are met. The first requirement under the court's analysis is that the expert witness must be qualified to testify competently on the matters he intends to address. The court has held, "Federal Rule of Evidence 702 takes a liberal view of expert witness qualifications." *Leathers v. Pfizer, Inc.*, 233 F.R.D. 687, 692 (N.D. Ga. 2006). Rathwell is a process control engineer with considerable experience within the industry; his background qualifies him to testify regarding the matters he intends to address. The second requirement is that Rathwell must have used a reliable methodology in reaching his conclusions. Rathwell has written a book on the second topic, has taught courses on the second topic, and has reviewed documents provided to him in this case. It is through the application of his knowledge and experience to the facts of this case that he has formed his expert opinion as to the second

topic. Thus, the court finds that the methodology used by Rathwell to reach his conclusions concerning the second topic, as modified by the court, is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*. The third requirement is that the expert testimony must assist the trier of fact to understand the evidence or to determine a fact in issue. The procurement process is an issue in this case that is relevant to both liability and damages. Therefore, the court finds that Rathwell's testimony as to the second topic, as modified by the court, assists the trier of fact to understand the evidence and to determine a fact in issue.

With respect to the remaining topics, the court finds that Rathwell may not testify as an expert. Rathwell's proposed expert opinion regarding the first topic is based on anecdotal evidence that undermines the reliability of his opinions. His opinion is based on his observation of a refinery fire that occurred in 1974 and undocumented conversations with a few process control engineers. The methodology used to form his opinion is insufficient. In addition, Rathwell's experience does not qualify him to testify regarding the perception process-control engineers and designers have of the safety and durability of phenolic gauges versus thermoplastic gauges. He can offer his own perception as a lay witness, but he may not testify regarding the perception of process-control engineers and designers generally. Similarly,

the methodology used by Rathwell to reach his conclusions regarding the third and fourth topics is insufficient. Ashcroft has not identified any basis on which Rathwell may opine as to the expectations of specifying engineers regarding the composition of phenolic cases, or the factors that motivate the purchasing decisions of engineers and procurement personnel. Rathwell has not performed or cited any studies or surveys that support his conclusions as to these topics. While Rathwell is not qualified to testify as an expert on topics one, three, and four, he may offer lay witness testimony based on his personal experience. Consistent with the analysis set forth above, the court GRANTS IN PART and DENIES IN PART WIKA's motion to exclude expert testimony of Rathwell [Doc. No. 92].

### C. Motion to Exclude Expert Testimony of Joseph H. Koo

Koo is a senior research scientist at the University of Texas at Austin. Ashcroft retained Koo to evaluate certain characteristics of Ashcroft's 1279 Duragauge® and WIKA's XSEL® Process Gauge—elevated temperature resistance and flammability.[2] WIKA seeks to exclude certain expert testimony of Koo based on its contention that his opinions fail to meet the

---

[2] Ashcroft states in response to the motion to exclude that Koo was engaged "to test the reliability of the statements made in Ashcroft's product information sheet." Def.'s Resp. to Mot. to Exclude Koo at 11 n.4 [Doc. No. 112].

11

requirements of Federal Rule of Evidence 702 and *Daubert*, as well as Federal Rules of Evidence 402 and 403. Summarizing its objection to Koo's expert testimony, WIKA states the following:

> Certain opinions offered by Dr. Koo are tainted by Ashcroft's failure to provide him sufficient facts and data to offer a valid opinion. Other opinions are internally inconsistent with Dr. Koo's deposition testimony, calling into question their reliability, while still other opinions are either irrelevant to the determination of the claims and counterclaims in this action or would confuse and mislead a jury.

Pl.'s Br. in Supp. of Mot. to Exclude Koo at 1–2 [Doc. No. 94-1]. More specifically, WIKA notes the following issues, amongst others, with Koo's expert report:

> In his reports, Dr. Koo spends an inordinate amount of time attempting to validate false "test prove" claims made by Ashcroft in a 2012 product information sheet ("PI Sheet") that compares the Ashcroft 1279 Duragauge to the WIKA XSEL process pressure gauge. To support his opinions, Dr. Koo conducts tests never conducted by Ashcroft and makes no attempt to replicate the "tests" actually conducted by Ashcroft to support its claims in the PI Sheet. Moreover, Ashcroft provided Dr. Koo with non-comparable gauges for purposes of his testing and failed to disclose critical facts regarding its PI Sheet and the tests Ashcroft conducted.

Pl.'s Br. in Supp. of Mot. to Exclude Koo at 2–3 [Doc. No. 94-1]. WIKA also argues that one of the tests performed by Koo—direct impingement flame test—was not conducted pursuant to any standards, thus it is unreliable, and

that the TGA and MCC testing are not the proper tests to measure "flame spread." Pl.'s Br. in Supp. of Mot. to Exclude Koo at 16–17 [Doc. No. 94-1].

All three requirements for Koo's testimony to be admissible as expert testimony—qualifications of the witness, reliability of the methodology, and assistance to the trier of fact—are satisfied as to his proffered testimony. He has substantial, personal experience in developing, testing, and evaluating polymer materials for extreme environments. While Koo did not replicate the actual tests performed by Ashcroft in developing its product information sheet, case law does not indicate that parties must replicate the actual tests. The Eleventh Circuit Court of Appeals has held that the plaintiff in a "tests prove" or "establishment" case has the burden of proof to show that the results of the underlying tests do not support the conclusions drawn from those tests. *Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1310 (11th Cir. 2010). Ashcroft's decision to not replicate the actual tests performed to develop the product information sheet may affect whether they meet their burden on this issue. But Ashcroft's decision to not replicate the actual tests does not require the court to exclude Koo from testifying as an expert witness. While WIKA specifically challenges the standards, or lack of standards, for the direct impingement flame test performed by Koo, the issues it raises go to weight of the testimony rather than admissibility. The

methodology underlying the direct impingement flame test performed by Koo is sufficiently reliable to satisfy *Daubert*. Finally, the proffered testimony of Koo will assist the trier of fact to understand the evidence or to determine a fact in issue.

Rather than undercutting the propriety of treating Koo as an expert witness, the objections raised by WIKA pertain to the amount of weight that should be afforded his testimony. The objections are not sufficient to prevent the court from finding that Koo is qualified to testify as an expert on the flammability characteristics of the pressure gauges at issue. WIKA may address its concerns through cross-examination of the expert witness.

With respect to Federal Rules of Evidence 402 and 403, the court cannot find based on the record that Koo's challenged testimony should be excluded because of relevancy and prejudice. While the purported testimony is not perfect, it is not so prejudicial that it must be excluded. WIKA may address its concerns regarding the testimony of Koo during its cross-examination of the witness.

The court finds that Koo is qualified to testify as an expert on the issue of the flammability characteristics of the pressure gauges at issue in this matter based on the standard set forth by Federal Rule of Evidence 702 and *Daubert*. Koo is qualified to testify regarding the matters he intends to

address, the methodology by which he reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*, and the testimony assists the trier of fact to understand the evidence or to determine a fact in issue. The court also finds that the purported testimony of Koo does not need to be excluded based on Federal Rules of Evidence 402 and 403. WIKA may address its concerns regarding the testimony during cross-examination of the witness. Accordingly, the court DENIES WIKA's motion to exclude expert testimony of Koo [Doc. No. 94].

### D. Motion to Exclude Expert Testimony of Barry Newton

Newton has a Bachelor of Science degree and a Ph.D. in mechanical engineering. He works as a licensed engineer and his field of specialty is fire analysis, fire investigation, and materials analysis. Newton has been retained by WIKA as an expert witness to conduct testing and materials analysis on process pressure gauge materials and the gauges themselves. WIKA states the following with respect to Newton's testimony:

> Dr. Newton will testify about the testing Ashcroft conducted on Ashcroft's and WIKA's process pressure gauges, the underlying protocols and methods used to do so, the results obtained, the documentation of those results, including whether the testing contradicts or supports the advertising claims made in the [product information sheet], as well as the results of Dr. Newton's own flammability and flame spread testing.

Pl.'s Resp. in Opp'n to Mot. to Exclude Newton at 1–2 [Doc. No. 111]. Ashcroft objects to Newton's purported expert testimony on the following basis:

> [Barry Newton] offers numerous legal opinions, and opines on "industry standards" in an industry in which he has little to no experience, and offers improper commentary on topics that do not require expertise and in areas that he is not an expert. Mr. Newton is unqualified to render his proffered opinions, and Plaintiff cannot show that certain of Mr. Newton's opinions are reliable and assist the trier of fact as required by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786 (1993).

Def.'s Mot. to Exclude Newton at 1–2 [Doc. No. 96]. Ashcroft argues that whether the product information sheet at issue in this case was "misleading" or "literally false" is an issue for the trier of fact to decide, thus it is inappropriate for Newton to offer expert testimony as to these conclusions.

In response to the motion to exclude, WIKA states, "Dr. Newton's testimony and opinions center around whether the tests upon which the [product information] sheet was based were valid and whether the results were documented and reported properly." Pl.'s Resp. to Motion to Exclude Newton at 2 [Doc. No. 111]. WIKA also identifies the specific opinions that will be offered by Newton should he be qualified as an expert.

> Dr. Newton will testify about the flammability and temperature tolerance testing performed by the parties, and in particular by Ashcroft, to support the claims set forth in the PI Sheet, the

> reliability of such testing, and the accuracy of the data reported in the PI Sheet. Dr. Newton will also testify regarding the proper selection and design of tests to assess the flammability and the risk of flame spread related to products, such as pressure gauges, which incorporate thermoplastic and thermoset polymers in their component parts and which are used in industrial settings, including refineries, where flammability risks are significant.
>
> Next, Dr. Newton will offer testimony on the testing he conducted on Ashcroft's and WIKA's gauges, the results of those tests, and his conclusions from those tests as to the relative flammability of the competing gauges, their associated risks for the spread of fire, and the accuracy of Ashcroft's claims made in the PI Sheet with respect to such characteristics. Finally, Dr. Newton will opine on the appropriateness, relevance, and reliability of the testing performed by Dr. Joseph Koo, Ashcroft's proffered flammability expert, and the conclusions offered by Dr. Koo.

Pl.'s Resp. to Motion to Exclude Newton at 2–3 [Doc. No. 111]. In essence, WIKA argues that Ashcroft's objections stem from a misunderstanding of the testimony it intends to offer via Newton.

The testimony Newton proffered at the evidentiary hearing was tailored in a manner that addresses the objections raised by Ashcroft in its motion to exclude. Newton did not offer legal opinions during his proffered testimony, which he would not be qualified to offer. WIKA has represented to the court that the witness will not use the words "false" or "misleading" in reference to Ashcroft's advertisements, the witness will not testify as to the mens rea or intent of any of Ashcroft's witnesses, and the witness will not

17

testify regarding the components of a pressure gauge beyond the standards he discussed at the evidentiary hearing. Furthermore, during his testimony proffered at the evidentiary hearing, Newton did not provide an improper interpretation of the claims asserted in the product information sheet.

The court finds that Newton is qualified to testify as an expert on the issue of testing and materials analysis on process pressure gauge materials as well as the actual gauges based on the standard set forth by Federal Rule of Evidence 702 and *Daubert*. With respect to the specific factors the court considers, Newton is qualified to testify regarding the matters he intends to address, the methodology by which he reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*, and the testimony assists the trier of fact to understand the evidence or to determine a fact in issue. The court also finds that the purported testimony of Newton concerning the testing and materials analysis does not need to be excluded based on Federal Rules of Evidence 402 and 403. Ashcroft may address its concerns regarding the testimony during cross-examination of the witness. Accordingly, the court DENIES Ashcroft's motion to exclude expert testimony of Newton [Doc. No. 96].

E.  **Motion to Exclude Expert Testimony of Raimund Weissner**

On December 22, 2014, WIKA filed a notice of withdrawal of its prior designation of Weissner as an expert witness [Doc. No. 157]. Because WIKA has withdrawn its designation of Weissner as an expert witness, the court DISMISSES Ashcroft's motion to exclude expert testimony of Weissner as moot [Doc. No. 97].

III. **Conclusion**

The court GRANTS IN PART and DENIES IN PART WIKA's motion to exclude expert testimony of Rathwell [Doc. No. 92]. The court DENIES Ashcroft's motion to exclude expert testimony of Koo [Doc. No. 94]. The court DENIES Ashcroft's motion to exclude expert testimony of Newton [Doc. No. 96]. The court DISMISSES Ashcroft's motion to exclude expert testimony of Weissner as moot [Doc. No. 97].

**SO ORDERED** this 2nd day of February, 2015.

/s/ Charles A. Pannell, Jr.
CHARLES A. PANNELL, JR.
United States District Judge