# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| **WIKA INSTRUMENT, LP,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil File No. 1:13-cv-00043-CAP** |
| **v.** | ) | |
| | ) | **REQUEST TO BE HEARD AT** |
| **ASHCROFT, INC.,** | ) | **MARCH 17, 2016 HEARING** |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## EMERGENCY MOTION FOR SANCTIONS AND TO COMPEL ADDITIONAL DISCOVERY DUE TO ASHCROFT PRODUCTION OF 211 UNDISCLOSED PHOTOGRAPHS OF THE OVEN TEST GAUGES

On March 1, 2016, Ashcroft produced for the first time 211 photographs documenting the photo session that resulted in the photo shown on page 3 of Ashcroft's flammability advertisement ("Flame Ad").  That photo is at the heart of WIKA's claims.

The newly disclosed photos are critical to establishing Ashcroft's deliberate intent in presenting only a manipulated, cleaned 1279 Duragauge in the Flame Ad when the actual results were different, and call into question Ashcroft's compliance with its discovery obligations.  Ashcroft's explanation for the late production demonstrates Ashcroft did not conduct an adequate search

for these photos in discovery, and may have misled WIKA about their existence and the creation of the Flame Ad.

WIKA asks that this motion be heard on an expedited basis so the requested relief can have effect well in advance of the April 11 trial date.

**INTRODUCTION AND SUMMARY OF RELIEF SOUGHT**[1]

The 211 photographs appear to be a pictorial narrative of how Ashcroft created the purported "after" photo of the elevated temperature tests ("Oven Test") in the Flame Ad that WIKA contends is false.

Before March 1, 2016, Ashcroft had only produced 35 non-duplicative photographs of the Oven Test gauges, shown before and immediately post-testing.  In the attached correspondence, attached as Exhibit A, Ashcroft claims these new photos were found on the hard drive of Mrs. Sue Urbinati, an Ashcroft employee, and were taken by Ashcroft employee John Carissimi, <u>at</u>

---

[1] The photos show Ashcroft only chose to photograph one of the two Ashcroft gauges tested, and it posed the gauge with and without a debris-smeared gauge window that does not appear in the Flame Ad, and without the debris that melted off the gauge, and therefore appear to document Ashcroft's deliberate choice to show only a cleaned gauge (unlike the WIKA and U.S. Gauge gauges shown).  In fairness, WIKA should be permitted to question Ashcroft on the photos, including, <u>inter alia</u>, which one of the two tested gauges was photographed and why; why the debris-smeared window was not shown in the Flame Ad; why Ashcroft chose the photo it chose; and the genesis of these photos and why they are only being disclosed now.

<u>her direction</u>.  There is no explanation of why the photos were not located or produced before last Tuesday.

When asked whether Ashcroft had "lost or destroyed" materials documenting the creation of the Flame Ad, Ashcroft's Rule 30(b)(6) witness for the Oven Test, Eugene Urbinati (Mrs. Urbinati's husband) replied: "Not that I'm aware." (Deposition of Eugene Urbinati, at pg. 32:4-7, attached at Exhibit B.)  However, Ashcroft is now positing that one of the four tested gauges was disposed of at or about the time of testing, while a decision was made to retain the other three tested gauges.  Further, as to the photos, the question remains: did Mr. Urbinati, the corporate designee charged with investigating and testifying about the Flame Ad and a key figure in Ashcroft's defense of this case, not even ask his wife and colleague to search her hard drive for documents responsive to WIKA's discovery requests?

Another Ashcroft employee (Lou Altieri) testified that **<u>he</u>** had directed the taking of the photo shown in the Flame Ad.  (Deposition of Lou Altieri at 225:7-13, attached as Exhibit C.)  Mrs. Urbinati's newly disclosed involvement in "directing" the creation of the photos and keeping them on her computer is at odds with Ashcroft's testimony and document production as:  a.) Ashcroft produced only **<u>one</u>** (1) email from Mrs. Urbinati concerning the Flame Ad; b.) Ashcroft's witnesses testified that Mrs. Urbinati had no substantive

3

involvement with the Flame Ad other than to send it to Ashcroft's distributors;[2] and c.) Ashcroft produced **no** documents from Mr. Carissimi, the photographer.

Ashcroft's failure to timely produce the 211 photographs, and what appears to be an inadequate investigation and document production, prevented WIKA from properly questioning Ashcroft witnesses about the creation of the Flame Ad, cut off its ability to pursue additional discovery, prevented WIKA from properly presenting its claims at summary judgment, and likely caused WIKA considerable expense in developing factual theories based on the limited information provided in discovery. That it comes on the heels of Ashcroft informing WIKA, contrary to its previous representations, Ashcroft destroyed one of the gauges used in the Oven Test, compounds WIKA's concerns.

In short, Ashcroft's failure to timely produce the 211 photographs taints this case, and warrants relief. It is submitted that remedial actions should

---

[2] (Ex. B (Depo. of E. Urbinati) at pg. 48:2-5.) WIKA was told that Mrs. Urbinati only approved "grammatical" aspects of the Flame Ad before it was published and "laying it out, making sure it makes sense" and she would not have changed any of the "substance" of the Ad. There was no testimony stating or suggesting that she kept the documentation of the photo session or chose which photo to put in the Flame Ad, though now these photos call Ashcroft's previous testimony into doubt. (Id. at 59:6-23 & 60:1-8.)

occur in the very near term, and comfortably before trial, April 11, 2016, and the costs should be borne by Ashcroft.

**FACTS REGARDING THE NEW PRODUCTION**

**A.      The Flame Ad Photo And Discovery.**

WIKA filed this 2013 lawsuit due to Ashcroft's publication of an advertisement with the following photo, which WIKA contends is false:



Before Ashcroft's production of the 211 photographs, Ashcroft had produced only 35 photographs, from January 2012, which were taken immediately before and after the Oven Test.  These photos were not used in the Flame Ad.  Before last Tuesday, Ashcroft had produced only one copy of the above photo:  the Flame Ad itself.[3]

---

[3]  As noted above, last week, WIKA was informed that one of the Ashcroft gauges used in the Oven Test apparently was destroyed immediately after

During deposition, Mr. Urbinati (as corporate designee) testified:

Q.      Have any documents or materials Ashcroft had memorializing this testing, has any of that been lost or destroyed?

A.      Not that I'm aware of.

(Exhibit B at pg. 32:4-7.)  Mr. Urbinati further stated that Lou Altieri was the Ashcroft employee ultimately responsible for the Ad.  The next day, Mr. Altieri testified that the above photo in the Flame Ad was taken <u>at his direction</u>, by Mr. Carissimi.  (Exhibit C at 188 & 224-25.)  <u>No</u> mention of the newly-disclosed photos was made by Mr. Altieri.

<u>No</u> mention was made of Sue Urbinati being involved in taking any photographs.  To the contrary, Mr. Urbinati (the corporate designee) claimed that his wife only approved "grammatical" aspects of the Flame Ad before it was published, such as "laying it out, making sure it makes sense" and she did not change the "substance" of the Ad.  (Exhibit B at 59:6-23 & 60:1-8.) Mr. Altieri characterized Mrs. Urbinati as merely someone who did "just another review" of the Ad.  (Exhibit C at pgs. 56-57 & 225.)  Ashcroft did not produce <u>any</u> documents from Mr. Carissimi.

testing.  This contradicts Ashcroft's representation that that it had "preserved the pressure gauges that were the subject of their elevated temperature test." Attached as Exhibit D (10/25/2013 Letter of Caroline Tanner).  Nor was the destruction mentioned by Ashcroft's Rule 30(b)(6) witness when he testified that he was not aware of any materials being destroyed.  This is material, as Ashcroft is now seeking to add the 3 gauges it did retain to its Exhibit List.

In short, before last Tuesday, WIKA had not been informed of the 211 photos, that a photo session involving the tested gauges occurred, that the photos were taken at the direction of Mrs. Urbinati or that Ashcroft had staged and photographed three of the four Oven Tested gauges a few weeks before the release of the Flame Ad, but had only chosen to show the cleanest photo of its gauge after it had been manipulated several times.

**B.     The Relevance Of The Newly-Disclosed Photos.**

The new photographs show that Ashcroft posed one of the 1279 gauges in various ways, with and without a debris-smeared window, which WIKA assumes is the window that fell off the gauge during the Oven Test.  Sample photos are attached at Exhibit E.  Included are the 1279 gauge with the window, the 1279 on different types of pedestals, and also a photo comparing the 1279 with the melted window compared to WIKA and U.S. Gauge products.  A comparison between it, the Oven Testing photos and the Flame Ad is attached at Exhibit F.

**1.     The Photos Are Relevant At Trial To Show Ashcroft's Deliberate Deception.**

The photos are relevant here to show Ashcroft deliberately posed and chose a "clean" photo of the 1279 gauge after considering several different iterations.  As the Court knows, "willful deception" triggers certain evidentiary

presumptions in this false advertising case, and can also be one basis on which the jury can choose to award Ashcroft's profits.  See, e.g., Trilink Saw Chain, LLC v. Blount, Inc., 583 F. Supp. 2d 1293 (N.D.Ga. 2008).  In short, these photographs show Ashcroft's state of mind when it created the photo ultimately chosen for the Flame Ad, and WIKA is entitled to investigate why Ashcroft selected the photo it did, and present that intent to the jury.

> ### 2.  Ashcroft's Explanation For How It Found The Photos Also Contradicts Mr. Altieri's Testimony.

In its letter to WIKA's counsel, attached at Exhibit A, Ashcroft represented that the 211 new photos "were taken on or around February 23 and 29, 2012 by John Carissimi at the direction of Sue Urbinati."  Ashcroft testified very differently in discovery:  Mr. Altieri testified that the photo in the Flame Ad was taken at his direction:

> Q.      … Who was it that directed the taking of the photograph in the manner in which it appears in the product information sheet of the Ashcroft gauge?
>
> A.      Probably me.
>
> Q.      That would have been you?
>
> A.      Yeah.

(Exhibit C at 225:7-13.)  Either Ashcroft's representation in its March 4 letter

is false, or Mr. Altieri's testimony is false.  WIKA is entitled to investigate this

discrepancy.

### 3.      The Photos Contradict Ashcroft's Litigation Position

In its statement of facts and testimony from Mr. Altieri, Ashcroft

disputed that the 1279 gauge was "manipulated and cleaned" stating:

> … Indeed, there is no admissible evidence in the record that the 1279
> that was part of the 2012 Elevated Temperature Test was
> manipulated or cleaned. …

(Ashcroft response to Statement of Fact 120, Doc. 126.)  The newly disclosed

photographs contradict this representation.

Mr. Altieri further testified that the Flame Ad photo was used because:

> A.      I think when we took – when we took the pictures, we wanted
> them to be – we wanted them to be as crisp as possible.  So if we look
> at the pictures from the oven, we didn't feel as though the quality
> was good enough to present.  So we presented them in the way that
> we did on the product information page.

(Exhibit C at pgs. 224:22-25 &-225:1-3).  The 211 new photos suggest a far

different motive, which WIKA should be entitled to investigate and present to

the jury.

Finally, Mr. Altieri testified that Ashcroft did not show any melted

debris in the Flame Ad because "the focus was on the case."  (Exhibit C at pg.

225:4-6.)  The newly disclosed photos, however, evidence that Ashcroft believed

the debris-smeared window was relevant (as it was photographed), and yet decided to not show this window.  WIKA is entitled to discover why, and present that reason to the jury as well.

### C.    Ashcroft's Proposed Resolution.

WIKA tried to resolve this issue without bringing it to the Court.  As shown in Exhibit A, Ashcroft's proposed resolution for its new document production and factual representation is that WIKA can add the photos to its Exhibit List, and "utilize these photographs at trial."  WIKA does not agree that simply letting WIKA use documents on which it has had no discovery, with witnesses that Ashcroft previously represented had no substantial involvement with the Flame Ad, remedies the untimely disclosures.[4]

Given the short time before trial, and the March 17, 2016 hearing before the Court, WIKA hastens to bring this motion and seek relief.

---

[4] Ashcroft did not propose anything to remedy the evidentiary prejudice WIKA has suffered (such as offering any witnesses for testimony).  Instead, Ashcroft misrepresented its discovery responses (which include no mention of the newly disclosed photographs), denied that the photos have any probative value, and seemed to blame WIKA for not pushing Ashcroft to search for these photos (when WIKA had no reason to believe they existed), ignoring the apparently mistaken testimony about Mrs. Urbinati's involvement with the Flame Ad and the photos referenced above.

## THE LATE DISCLOSURE VIOLATES THE RULES

**A.    Ashcroft's Conduct Violates The Federal Rules Governing Discovery And Warrants Sanctions Under Fed. R. Civ. P. 26(g).**

Fed R. Civ. P. 26(g) "curbs[s] discovery abuse by explicitly encouraging the imposition of sanctions." <u>Malautea v. Suzuki Motors Co.</u>, 987 F.2d 1536, 1545 (11th Cir. 1993) (quoting Fed. R. Civ. P. 26(g) advisory committee's note). <u>See</u> <u>In re Delta/Airtran Baggage Fee Antitrust Litigation</u>, 846 F. Supp. 2d 1335,1349-53 (N.D.Ga. 2012) (imposing sanctions, including levying costs and fees, when Delta did not adequately search its hard drives for responsive documents.)  As discussed by Judge Batten in the <u>Delta</u> decision, "mere carelessness" is not an excuse.  <u>Id</u>. <u>at</u> 1352-53.

The 211 photographs Ashcroft produced on March 1, 2016 should have been identified and/or produced at various times during this litigation:

1.    The documents should have been disclosed in Ashcroft's Federal Rule of Civil Procedure 26(a) initial disclosures and supplements thereto, but were not, see Exhibit G;

2.    The documents should have been produced pursuant to Ashcroft's response to WIKA's Interrogatory No. 13, and Ashcroft's response to Requests for Production 25, 28 and 29, all of which covered within their scope the newly-produced photos; see Exhibit H;

3.    The documents and photo session should have been disclosed when WIKA requested that Ashcroft produce a Rule 30(b)(6) witness with knowledge of the Oven Testing, and included at least five topics that relate to the photographs, A(4), A(5), A(9), A(12), and C(2) and

one topic regarding Ashcroft's efforts gather and produce documents responsive to WIKA's requests for production; and

4.     The documents should have been searched for after Mr. Altieri testified that a photographer was used to create the photo shown in the Flame Ad and/or when Ashcroft determined that instead, contrary to Mr. Altieri's testimony, that Mrs. Urbinati was responsible for them.

As shown in Exhibit I, Ashcroft represented that its document production was "complete" in April 2014, before depositions were taken.  Not once in discovery did an Ashcroft witness discuss these photos, and none were produced.  Nor did Ashcroft produce any emails from Mrs. Urbinati concerning the Flame Ad other than a 2013 email showing that she had forwarded the Flame Ad to distributors in 2012; and it produced no emails at all from Mr. Carissimi.  All of these facts strongly suggest Ashcroft did not search either Mrs. Urbinati's or Mr. Carissimi's hard drives in discovery, and did not conduct a reasonable inquiry into whether its document production was complete.  Further, it has not offered any reasonable justification for this late disclosure.

As a result, this failure warrants the levy of sanctions under Fed. R. Civ. P. 26(g), in a form determined by the Court.  See Delta, supra, 846 F. Supp. 2d at 1349-53 (imposing sanctions under Rule 26(g) when Delta did not search all its relevant hard drives for documents.)

## B.     Sanctions Are Warranted Under Fed. R. Civ. P. 37(c)(1).

The Court should also impose sanctions under Rule 37(c)(1) for

Ashcroft's conduct.  See <u>Delta</u>, <u>supra</u>, 846 F. Supp.2d at 1356-59 (examining

remedies available under Rule 37 for late disclosure of evidence and failure to

adequately search company hard drives for relevant documents).

The Court has several useful remedies available to it.[5]  Save for the

sanction of default or dismissal, a finding of "bad faith" or willfulness is not

required.   <u>Bank Atlantic v. Blythe Eastman Paine Webber, Inc.</u>, 12 F.3d

1045, 1051 (11th Cir. 1994) (affirming sanction of reopening discovery after

production of new documents and requires party to "bear equally the

reasonable costs of [the other party's] time and preparation in filing the

motion to strike and in preparing for the new trial date, including the cost of

expedited discovery.")

Further, as in the <u>Delta</u> case (which bears similarity to the situation

here), re-opening limited discovery to remedy Ashcroft's late disclosure is

appropriate, as it appears that Ashcroft never searched Mrs. Urbinati's hard

drive until preparing for the upcoming trial in this action.  See <u>Delta</u>, <u>supra</u>,

---

[5] For example, the Court may (a) order payment of the reasonable expenses, including attorney's fees, caused by Ashcroft's conduct; (b) may inform the jury of the party's failure to timely produce; and (c) impose other appropriate sanctions, including any of the remedies listed in Rule 37(b)(2)(A)(i)-(vi).

846 F. Supp. 2d at 1356-59-62 (imposing sanctions under Rule 37 on

Defendant and permitting Plaintiff to reopen discovery as to late-produced

documents);  see also BankAtlantic, supra, 12 F.3d at 1050-52; accord Hill v.

Morehouse Med. Associates, Inc., 236 F.R.D. 590, 594-96 (N.D. Ga. 2006).

(Defendant's failure to complete production of documents warranted

sanctions and reopening of discovery pertaining to newly discovered

documents).

### C.    WIKA Seeks Expedited Discovery And Further Sanctions.

In sum, WIKA requests the following sanctions.  First, it seeks the

following discovery:

- Depose a Rule 30(b)(6) witness as to the circumstances surrounding, and the creation of, the photographs, Ashcroft's present representation that Mrs. Urbinati (and not Mr. Altieri), directed the taking of the photographs and whom made the decision to use the photograph in the Flame Ad, and why;

- Depose a Rule 30(b)(6) witness on Ashcroft's gathering of materials to be produced in response to WIKA's discovery requests generally, and specifically why the photographs were not found and produced during the discovery period;

- Depose a Rule 30(b)(6) witness on the circumstances surrounding the claimed destruction of 1 of the 4 tested gauges, and the decision to retain the other 3 tested gauges;

- Depose Mrs. Sue Urbinati regarding the 211 photographs and related facts;

14

- Depose Mr. Carissimi regarding the 211 photographs and related facts;

- Conduct appropriate forensic examination of Mrs. Urbinati's and Mr. Carissimi's hard drives to ensure all relevant documents were produced; and

- Report back to the Court its findings to determine if further measures are warranted.

Second, consistent with Judge Batten's approach in the <u>Delta</u> litigation, <u>supra</u>, Ashcroft should have to bear the costs of WIKA filing this motion and all attendant discovery.

Finally, the Court should consider instructing the jury as to a negative inference on account of Ashcroft's late production, and destruction of the fourth oven-tested gauge, in light of the prior testimony and other discovery related activity referenced above, with such inference being that the subject photograph in the Flame Ad inaccurately conveys the results of the Oven Testing.

### III.   Conclusion

For the foregoing reasons, WIKA respectfully requests the Court to grant WIKA's Motion and allow the relief requested and such other relief as it deems appropriate, and require Ashcroft to bear the cost of all such relief.

Respectfully submitted this 7th day of March, 2016.

**/s/ Eric P. Schroeder**

**BRYAN CAVE LLP**
One Atlantic Center, 14th Floor
1201 West Peachtree Street, NW
Atlanta, Georgia 30309

Telephone:  (404) 572-6600
Facsimile:   (404) 572-6999

Eric P. Schroeder
Georgia Bar No. 629880
eric.schroeder@bryancave.com
Christopher P. Galanek
Georgia Bar No. 282390
chris.galanek@bryancave.com
Curtis J. Romig
Georgia Bar No. 613990
curtis.romig@bryancave.com
Damon J. Whitaker
Georgia Bar No. 752722
damon.whitaker@bryancave.com
C. Angelia. Duncan
Georgia  Bar No. 682649
angelia.duncan@bryancave.com

Aiten M. McPherson
Georgia Bar No. 439899
aiten.mcpherson@bryancave.com

One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, Missouri 63102
(314) 259-2000   phone

J. Bennett Clark
ben.clark@bryancave.com
(*Admitted Pro Hac Vice*)

*Attorneys for WIKA Instrument, LP*

## Local Rule 7.1(D) Certification of Compliance

I hereby certify that the foregoing pleading has been prepared with Century Schoolbook font, 13 point, one of the font and point selections approved by the Court in L.R. 5.1B, N.D. Ga.

**/s/ Eric P. Schroeder**
Eric P. Schroeder
Georgia Bar No. 629880

## <u>Fed. R. Civ. P. 37(a)(1) Certification</u>

I hereby certify that I have in good faith conferred or attempted to confer with Defendant's counsel in an effort to obtain the relief requested herein without Court action, as shown in Exhibit A hereto.

**/s/ Eric P. Schroeder**
Eric P. Schroeder
Georgia Bar No. 629880

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date, I electronically filed the foregoing **WIKA's Motion for Sanctions and to Compel Additional Discovery Due to Ashcroft's Production of 211 Undisclosed Photographs of the Oven Test Gauges** with the Clerk of Court using the CM/ECF system which will send email notification of such filing to all counsel of record.

This 7th day of March, 2016.

**/s/ Eric P. Schroeder**
Eric P. Schroeder
Georgia Bar No. 629880

#6507379_1