UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| WIKA INSTRUMENT, LP,<br><br>        Plaintiff,<br><br>v.<br><br>ASHCROFT, INC.,<br><br>        Defendant. | CIVIL ACTION NO.<br><br>1:13-CV-00043-CAP |

# FINAL JUDGMENT

On April 22, 2016, the jury returned its verdict. Mindful of the verdict and advisory answers rendered by the jury in this matter, and based upon the court's own consideration of the testimony and other evidence offered at trial with respect to equitable issues, it is ORDERED, ADJUDGED, and DECREED that:

1. Judgment is hereby entered in favor of WIKA and against Ashcroft on Count One (Lanham Act) of WIKA's First Amended Complaint with respect to WIKA's claim for monetary relief relating to the Product Information Page/Flammability Advertisement (Joint Exhibit 1) in the amount of $12,189.46 (representing the jury award of actual damages), and WIKA is awarded $3,300,000 of Ashcroft's profits.

2. WIKA is also entitled to equitable relief/corrective advertising relating to the Product Information Page/Flammability Advertisement (Joint Exhibit 1) and the 1279 Data Sheets (Joint Exhibit 18) by establishing violations of: the Lanham Act (Count One of WIKA's First Amended Complaint), the Georgia Uniform Deceptive Trade Practices Act (Count Two of WIKA's First Amended Complaint), the Connecticut Unfair Trade Practices Act (Count Three of WIKA's First Amended Complaint), and tortious interference under Georgia law (Count Four of WIKA's First Amended Complaint).

3. The court issues the following equitable relief:

- <u>Corrective Advertising</u>:  Ashcroft is ordered to place the following message on its website for six months from the date of this judgment.  Each visitor to the website must click a submit or accept button after reading the message to then be able to view Ashcroft's original and normal website.  The statement may be placed on the website in the form of a pop-up window or as a new homepage that would then allow users to be redirected to the original website following acceptance of the statement.  Users must view the corrective advertising statement each separate time the site is visited.  Ashcroft must use the following

language:

In March 2012, Ashcroft, Inc. ("Ashcroft") created and distributed an advertisement identified as "Page:DU/PI-74" that purported to provide a comparison of the flammability and safety characteristics of the Ashcroft 1279 Duragauge process gauge, the WIKA XSEL process gauge, and a competing U.S. Gauge model 1981 process gauge ("the Product Information Page/Flammability Advertisement"). Additionally, Ashcroft has for many years published a data sheet that asserts that the Ashcroft 1279 Duragauge process gauge case is made entirely of phenolic material ("the 1279 Data Sheets").

On January 1, 2013, WIKA brought suit against Ashcroft in federal court alleging that the Product Information Page/Flammability Advertisement and 1279 Data Sheets constitute false advertising in that: (1) the Product Information Page/Flammability Advertisement falsely misrepresents the flammability and safety characteristics of both Ashcroft's 1279 gauge and WIKA's XSEL gauge to the benefit of Ashcroft and the detriment of WIKA and (2) the 1279 Data Sheets falsely misrepresent that the case of the 1279 Duragauge is made

3

entirely of phenolic material.  A trial was held in April 2016 in which the jury and court found in favor of WIKA on WIKA's false advertising claims and awarded WIKA monetary damages and other relief, including corrective advertising.  Judgment has been entered on those claims in WIKA's favor, and Ashcroft was further ordered by the court to issue corrective advertising to address the harm created by its false advertising.

Pursuant to that judgment, Ashcroft informs you that the claims Ashcroft made in the Product Information Page/Flammability Advertisement about the flammability and safety of WIKA's XSEL process gauge were not true and the truth is that:

(a) The Pocan thermoplastic material used by WIKA for the case of its XSEL gauges does not create a pool of burning liquid or spatter burning molten plastic when exposed to an open flame;

(b) Ashcroft's open flame tests did not show that the WIKA XSEL gauge or its case material poses the risk of spreading fire;

(c) Ashcroft's open flame tests showed the Pocan case used in WIKA's XSEL gauge immediately self-extinguished;

(d) The polypropylene material used in the rear cover of Ashcroft's 1279 Duragauge case burns, does not self-extinguish, and poses the risk of spreading a fire when exposed to an open flame; and

(e) The tests cited in the Product Information Page/Flammability Advertisement do not support the claim that WIKA's XSEL brand gauge poses a greater risk of spreading a fire when exposed to an open flame than Ashcroft's 1279 Duragauge process gauge or that Ashcroft's 1279 Duragauge process gauge is safer than WIKA's XSEL brand gauge.

    Ashcroft further informs you that the photographs of its 1279 Duragauge process gauge shown in the Product Information Page/Flammability Advertisement did not convey the true results of Ashcroft's elevated temperature testing, as the product shown was not tested with its polypropylene front ring and rear cover.

    Also, pursuant to that judgment, Ashcroft informs you that the statement in its 1279 Data Sheets that the case of its Duragauge process gauge is solely phenolic is not true.  The rear cover of Ashcroft's gauge case is not made of phenolic material, but from polypropylene, a thermoplastic material.

Ashcroft requests that you note the above corrections and return any and all copies of the Product Information Page/Flammability Advertisement and/or 1279 Data Sheets to Ashcroft, and cease and desist in distributing, publishing, citing, referring to, or otherwise disseminating the Product Information Page/Flammability Advertisement and/or 1279 Data Sheets.

- <u>Injunctive Relief (Product Information Page/Flammability Advertisement)</u>:  Ashcroft, and Ashcroft's agents, employees, representatives, attorneys, and all other persons in active concert or participation with them (collectively "the Enjoined Parties"), are permanently enjoined and restrained from distributing, publishing, citing, referring to, or otherwise disseminating the Product Information Page/Flammability Advertisement, as well as any pictures, statements, or claims contained therein, and are further ordered to request the return of all copies of the Product Information Page/Flammability Advertisement from all persons and entities to whom Ashcroft or any of the other Enjoined Parties distributed such advertisements and are further ordered to instruct all persons and entities to whom Ashcroft or any of the Enjoined Parties distributed such advertisement to similarly

desist in distributing, publishing, citing, referring to, using or otherwise disseminating the Product Information Page/Flammability Advertisement.  Ashcroft is further ordered to destroy all copies of the Product Information Page/Flammability Advertisement in its possession and that are returned to it.

- <u>Injunctive Relief (1279 Data Sheets)</u>:  Ashcroft, and Ashcroft's agents, employees, representatives, attorneys, and all other persons in active concert or participation with them (collectively "the Enjoined Parties"), are permanently enjoined and restrained from distributing, publishing, citing, referring to, or otherwise disseminating the 1279 Data Sheets in the form(s) existing as of April 22, 2016, or otherwise claiming or suggesting that the Ashcroft 1279 Duragauge process gauge is made entirely of phenolic material and are further ordered to request the return of all copies of the 1279 Data Sheets from all persons and entities to whom Ashcroft or any of the Enjoined Parties distributed such advertisement and to instruct such recipients to similarly desist in distributing, publishing, citing, referring to, using, or otherwise disseminating the 1279 Data Sheets.  Ashcroft is

further ordered to destroy all copies of the 1279 Data Sheets in its possession and that are returned to it.

- Report:  Within sixty days after entry of this judgment, Ashcroft shall file with this court and serve on WIKA a written report, prepared under oath, setting forth in detail the manner and form in which Ashcroft has complied with the court's injunction and corrective advertising.

4.  In addition to the amount of attorneys' fees and other litigation costs to be set by the court, WIKA shall recover its costs of suit subject to WIKA's filing a Bill of Costs.

5.  Post-judgment interest on the above-listed amounts shall accrue at 0.52% per annum, as calculated by 28 U.S.C. § 1961.

6.  All relief not expressly granted is denied.  With the exception of the attorneys' fees to be awarded in favor of WIKA, this FINAL JUDGMENT disposes of all claims and counterclaims.

This 22nd day of July, 2016.

/s/ Charles A. Pannell, Jr.
CHARLES A. PANNELL, JR.
United States District Judge