## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **WIKA INSTRUMENT, LP,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | **Civil File No. 1:13-cv-00043-CAP** |
| | ) | |
| **ASHCROFT, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## WIKA'S OPPOSITION TO ASHCROFT'S MOTION FOR RENEWED JUDGMENT AS A MATTER OF LAW, NEW TRIAL OR REMITTITUR

**BRYAN CAVE LLP**
Eric Schroeder (Ga Bar 629880)
Christopher Galanek (Ga Bar 282390)
Damon Whitaker (Ga Bar 752722)
Angelia Duncan (Ga Bar 682649)
Aiten McPherson (Ga Bar 439899
One Atlantic Center, 14th Floor
1201 West Peachtree Street, NW
Atlanta, Georgia 30309
Telephone:  (404) 572-6600
eric.schroeder@bryancave.com
chris.galanek@bryancave.com
damon.whitaker@bryancave.com
angelia.duncan@bryancave.com
aiten.mcpherson@bryancave.com


J. Bennett Clark
*Admitted Pro Hac Vice*
211 North Broadway, Suite 3600
St. Louis, Missouri 63102

**HAYNES AND BOONE, LLP**
Felicity Fowler
Mark Trachtenberg
*Admitted Pro Hac Vice*
1221 McKinney Street
Suite 2100
Houston, TX 77010
Telephone: (713) 547-2000


*Attorneys for WIKA Instrument, LP*

# <u>TABLE OF CONTENTS</u>

FACTUAL BACKGROUND ................................................................ 1

LEGAL STANDARD ..................................................................... 1

I.   Standard Of Review Under Fed. R. Civ. P. 50(b). .............................. 1

II.  Standard Of Review Under Fed. R. Civ. P. 59(a). .............................. 2

ARGUMENT ............................................................................ 3

I.   The Verdict On WIKA's Claims Is Supported By The Evidence
     And Does Not Warrant A New Trial. ........................................... 3

   A. Ashcroft Does Not Challenge The Data Sheets Verdict. ...................... 3

   B. The Jury Properly Found Deception And Injury From The Flame Ad.  3

   C. The Jury Properly Found The Flame Ad Literally False. ..................... 8

   D. The Evidence Supported The GUDTPA And CUTPA Verdicts. .......... 12

   E. The Jury's Findings Of Tortious Interference Are Proper. ................. 13

   F. The Jury Properly Found Bad Faith Under O.C.G.A. § 13-6-11. ........ 13

II.  The Jury's Monetary Awards Are Supported By The Evidence,
     Cannot Be Remitted, And Do Not Warrant A New Trial. .............. 16

   A. The Jury's Disgorgement Award Is Proper. ........................................ 16

   B. The Actual Damages Award Is Supported By The Evidence. .............. 21

III. This Court's Evidentiary Rulings Were Correct And Under No
     Circumstances Resulted In Reversible Error. ................................ 24

   A. Ashcroft Waived Any Complaint About Reebals' Testimony. .............. 24

   B. The Chevron Emails Were Properly Admitted And, Even If Not, Their
      Admission Was Harmless. ....................................................... 27

IV.  The Court Did Not Create An Unlawful "Uneven Playing Field."
     ............................................................................... 31

   A. Ashcroft Identifies No Error In The Jury Charge. .............................. 31

   B. The Court Properly Excluded The Irrelevant Testimony Ashcroft
      Sought To Offer Through Dr. Koo. ........................................... 33

C. Summary Judgment On Ashcroft's Disgorgement And Enhanced Damages Remedies Was Proper. ........................................... 35

**V.  Ashcroft Is Not Entitled To A New Trial On Its Tortious Interference Counterclaim.................................................. 36**

A. Ashcroft Does Not Meet Its Burden Under Rule 59. ........................... 36

B. This Court's Summary Judgment Ruling Is Correct........................... 38

**VI. Ashcroft Is Not Entitled To A New Trial On Its Lanham Act Counterclaims. ...................................................... 39**

A. Ashcroft's Argument Is Immaterial, Given The Other Independent Bases For The Take Nothing Judgment On Its Counterclaims. ......... 39

B. Ashcroft's Literal Falsity Argument Fails. ........................................... 40

C. Ashcroft's Materiality Argument Fails. ............................................... 43

**CONCLUSION .................................................. 45**

Case 1:13-cv-00043-CAP   Document 460   Filed 09/16/16   Page 4 of 53

# TABLE OF AUTHORITIES

## Cases

*Abbott Labs. v. Unlimited Beverages, Inc.,*
218 F.3d 1238 (11th Cir. 2000) .................................................................... 19

*Action Marine, Inc. v. Cont'l Carbon Inc.,*
481 F.3d 1302 (11th Cir. 2007) .................................................................... 23

*Alpo Petfoods, Inc. v. Ralston Purina Co.,*
720 F. Supp. 194 (D.D.C. 1989) .................................................................... 33

*Arford v. Blalock,*
199 Ga. App. 434 (1991) ................................................................................ 37

*Arthur v. King,*
500 F.3d 1335 (11th Cir. 2007) .................................................................... 36

*BFS Retail & Commercial Operations, LLC v. Harrelson,*
701 F. Supp. 2d 1369 (S.D. Ga. 2009)........................................................ 34

*Brokaw v. Boeing Co.,*
137 F. Supp. 3d 1082 (N.D. Ill. 2015) ........................................................ 29

*Brown v. Alabama Dep't of Transp.,*
597 F.3d 1160 (11th Cir. 2010) ...................................................................... 1

*Burger King Corp. v. Mason,*
855 F.2d 779 (11th Cir. 1988) ...................................................................... 18

*Burger King Corp. v. Weaver,*
169 F.3d 1310 (11th Cir. 1999) .................................................................... 19

*Cardinal Health 5, LLC,*
887 F. Supp. 2d 1240 (N.D. Ga. 2012)........................................................ 12

Castrol, Inc. v. Quaker State Corp.,
977 F.2d 57 (2d Cir. 1992).......................................................................... 8, 9

*Chaney v. City of Orlando, Fla.,*
483 F.3d 1221 (11th Cir. 2007) ...................................................................... 1

*Cleveland v. Home Shopping Network, Inc.,*
369 F.3d 1189 (11th Cir. 2004) ...................................................................... 2

*Complete Auto Transit, Inc. v. Wayne Broyles Eng'g Corp.,*
351 F.2d 478 (5th Cir. 1965) ........................................................................ 24

*Costa v. Sam's East, Inc.*,
   2012 WL 5386921 (S.D.Ala. 2012) ................................................ 25

*Davis v. Wal-Mart Stores, Inc.*,
   967 F.2d 1563 (11th Cir. 1992) .................................................... 26

*Dixon v. Wallowa Cty.*,
   336 F.3d 1013 (9th Cir. 2003) ...................................................... 38

*Dunkin' Donuts of Am., Inc. v. Minerva, Inc.*,
   956 F.2d 1566 (11th Cir. 1992) .............................................. 17, 32

*Electro Servs., Inc. v. Exide Corp.*,
   847 F. 2d. 1524 (11th Cir. 1988). ......................................... 17, 32

*Fraiser v. Stanley Black & Decker, Inc.*,
   109 F. Supp. 3d 498 (D. Conn. 2015) ............................................ 12

*Frederick v. Kirby Tankships, Inc.*,
   205 F.3d 1277 (11th Cir. 2000) .................................................... 21

*Fulton Cty. v. Legacy Inv. Grp., LLC*,
   296 Ga. App. 822 (2009) ............................................................. 14

*Goldsmith v. Bagby Elevator Co.*,
   513 F.3d 1261 (11th Cir. 2008) .................................................... 30

*Gowski v. Peake*,
   682 F.3d 1299 (11th Cir. 2012) ................................................. 2, 7

*Griffin v. City of Opa-Locka*,
   261 F.3d 1295 (11th Cir. 2001) .................................................... 26

*Hall v. Norfolk S. Ry. Co.*,
   829 F. Supp. 1571 (N.D. Ga. 1993) ......................................... 22, 23

*Iervolino v. Delta Air Lines, Inc.*,
   796 F.2d 1408 (11th Cir. 1986) .................................................... 17

*Iler Grp., Inc. v. Discrete Wireless, Inc.*,
   90 F. Supp. 3d 1329 (N.D. Ga. 2015) ............................................ 12

*Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*,
   299 F.3d 1242 (11th Cir. 2002) .......................................... 4, 8, 44

*Keg Techs., Inc. v. Laimer*,
   436 F. Supp. 2d 1364 (N.D. Ga. 2006) .......................................... 19

*Kin Chun Chung v. JPMorgan Chase Bank, N.A.*,
   975 F. Supp. 2d 1333 (N.D. Ga. 2013) .......................................................... 14

*LaRoche Indus., Inc. v. AIG Risk Mgmt., Inc.*,
   959 F.2d 189 (11th Cir. 1992) ...................................................................... 15

*Lattimore v. Wells Fargo Bank, N.A.*,
   2014 WL 11858150 (N.D. Ga. May 6, 2014) ................................................ 36

*Lipphardt v. Durango Steakhouse of Brandon, Inc.*,
   267 F.3d 1183 (11th Cir. 2001) ...................................................................... 3

*Litsky v. G.I. Apparel, Inc.*,
   156 Fed. Appx. 107 (11th Cir. 2005) ............................................................. 14

*Mays v. U.S. Postal Serv.*,
   122 F.3d 43 (11th Cir. 1997) ........................................................................ 37

*McCaslin v. Birmingham Museum of Art*,
   384 Fed. Appx. 871 (11th Cir. 2010) ............................................................. 24

*Merck Eprova AG v. Gnosis S.p.A.*,
   760 F.3d 247 (2d Cir. 2014) ..................................................................... 5, 19

*Michael Linet, Inc. v. Vill. of Wellington, Fla.*,
   408 F.3d 757 (11th Cir. 2005) ...................................................................... 36

*Montgomery Ward & Co. v. Duncan*,
   311 U.S. 243 (1940) ...................................................................................... 27

*N.L.R.B. v. McClain of Georgia, Inc.*,
   138 F.3d 1418 (11th Cir. 1998) .................................................................... 32

*Nebula Glass Int'l, Inc. v. Reichhold, Inc.*,
   454 F.3d 1203 (11th Cir. 2006) ...................................................................... 2

*Optimum Techs., Inc. v. Home Depot U.S.A., Inc.*,
   217 Fed. Appx. 899 (11th Cir. 2007) ............................................................. 17

*Osmose, Inc. v. Viance, LLC*,
   612 F.3d 1298 (11th Cir. 2010) ..............................................................passim

*Parker v. Four Seasons Hotels, Ltd.*,
   12 C 3207, 2014 WL 1292858 (N.D. Ill. Mar. 31, 2014) .............................. 29

*Porous Media Corp. v. Pall Corp.*,
   110 F.3d 1329 (8th Cir. 1997) ................................................................... 5, 6

*Raulerson v. Wainwright,*
    753 F.2d 869 (11th Cir. 1985) ....................................................... 26

*Resolution Trust Corp. v. Dunmar Corp.,*
    43 F.3d 587 (11th Cir. 1995) ........................................................ 35

*Rosa v. City of Fort Myers, FL,*
    297 Fed. App'x 830 (11th Cir. 2008) ............................................ 30

*Rosenfield v. Wellington Leisure Products, Inc.,*
    827 F.2d 1493 (11th Cir. 1987) ...................................................... 2

*S.E.C. v. Daifotis,*
    874 F. Supp. 2d 870 (N.D. Cal. 2012) .......................................... 29

*Sowell v. Blackman,*
    236 Ga. App. 705 (1999) ............................................................... 37

*Sykes v. McDowell,*
    786 F.2d 1098 (11th Cir. 1986) ............................................... 21, 23

*Time Warner Cable, Inc. v. DIRECTV, Inc.,*
    497 F.3d 144 (2d Cir. 2007) ............................................................ 8

*Trilink Saw Chain, LLC v. Blount, Inc.,*
    583 F. Supp. 2d 1293 (N.D. Ga. 2008) ................................. 4, 22, 39

*Tyler v. Lincoln,*
    527 S.E.2d 180 (Ga. 2000) ............................................................ 15

*U.S. S.E.C. v. Big Apple Consulting USA, Inc.,*
    783 F.3d 786 (11th Cir. 2015) ................................................ 31, 32

*United States v. Frank,*
    599 F.3d 1221 (11th Cir. 2010) .................................................... 33

*United States v. Gibson,*
    708 F.3d 1256 (11th Cir. 2013) .................................................... 33

*Victoria Cruises, Inc. v. Changjiang Cruise Overseas Travel Co.,*
    630 F. Supp. 2d 255 (E.D.N.Y. 2008) .......................................... 19

*Wesco Mfg., Inc. v. Tropical Attractions of Palm Beach, Inc.,*
    833 F.2d 1484 (11th Cir. 1987) .................................................... 18

*Wynn Oil Co. v. Am. Way Serv. Corp.,*
    943 F.2d 595 (6th Cir. 1991) ........................................................ 19

## <u>Statutes</u>

15 U.S.C.A. § 1117 ........................................................................... 18

O.C.G.A. § 10-1-373 ......................................................................... 12

O.C.G.A. § 13-6-11 ................................................................ 13, 14, 15

O.C.G.A. § 9-5-1 ............................................................................... 13

## <u>Rules</u>

Fed. R. Civ. P. 50 ......................................................................... 1, 36

Fed. R. Civ. P. 59 ......................................................................... 2, 36

Fed. R. Civ. P. 61 ............................................................... 24, 29, 35

Fed. R. Evid. 807 ..................................................................... 27, 29

L.R. 7 ................................................................................................ 35

## <u>Other Authorities</u>

5 McCarthy § 27:35 ......................................................................... 44

5 McCarthy § 30:64 ......................................................................... 19

5 McCarthy § 27:42 ........................................................................... 4

Eleventh Circuit Pattern Jury Instruction 10.1 ............................ 16

After a two week trial, the jury and Court both found Ashcroft's advertisements (the "Flame Ad" and "Data Sheets") to be literally false, that Ashcroft's conduct was knowing, deliberate, malicious, fraudulent, willful, unethical, and immoral, and that WIKA was injured thereby. (*See* Dkt. 426.)

Ashcroft faces a heavy evidentiary burden to vacate that verdict. Ashcroft's motion (Dkt. 446, "Mtn.") does not meet that burden, largely because Ashcroft ignores any evidence it does not like; instead, it only recites the same factual arguments rejected by the jury. As to legal issues, Ashcroft offers a plethora of arguments that were made at or before trial, and rejected, or were not made, and thus waived. The Motion should be denied.

## FACTUAL BACKGROUND

The Court is well aware of the facts and evidence in this action. If necessary, rather than rely on Ashcroft's proffered facts, WIKA respectfully refers the Court to WIKA's proposed findings of fact, Dkt. 409-1.

## LEGAL STANDARD

### I.   Standard Of Review Under Fed. R. Civ. P. 50(b).

Under Rule 50, the Court need only determine "whether there was sufficient evidence in the record to support the jury's finding." *Chaney v. City of Orlando, Fla.*, 483 F.3d 1221, 1228 (11th Cir. 2007); *accord Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1173 (11th Cir. 2010). Thus, the Court must

affirm the jury's verdict "unless there is no legal basis upon which the jury could have found for [the prevailing party]." *Nebula Glass Int'l, Inc. v. Reichhold, Inc.*, 454 F.3d 1203, 1210 (11th Cir. 2006).

In conducting this inquiry, the Court must "review all of the evidence in the record and must draw all reasonable inferences in favor of the nonmoving party." *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1192–93 (11th Cir. 2004). The Court may not make credibility determinations, and must "disregard all evidence favorable to the moving party the jury is not required to believe." *Gowski v. Peake*, 682 F.3d 1299, 1311 (11th Cir. 2012) (*per curiam*).

## II.   Standard Of Review Under Fed. R. Civ. P. 59(a).

"A district judge may grant a motion for a new trial if he believes the verdict rendered by the jury was contrary to the great weight of the evidence." *Rosenfield v. Wellington Leisure Prods., Inc.*, 827 F.2d 1493, 1497–98 (11th Cir. 1987). While the trial judge should consider the evidence favoring the moving party as well as the evidence favoring the jury verdict, it may not disavow reasonable credibility choices and inferences made by the jury. *Id.* at 1498. Thus, the court cannot merely substitute its judgment for the jury, as "new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great – not merely greater – weight

2

of the evidence." *Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267

F.3d 1183, 1186 (11th Cir. 2001).

## ARGUMENT

### I.   The Verdict On WIKA's Claims Is Supported By The Evidence And Does Not Warrant A New Trial.

Ashcroft's Motion can be denied for an obvious reason: the Court's

Findings of Fact and Conclusions of Law, Dkt. 426, thoroughly explain why

the jury was correct, and that sufficient evidence supported its verdict.

Nevertheless, WIKA will address each argument by Ashcroft below.

#### A.   Ashcroft Does Not Challenge The Data Sheets Verdict.

Ashcroft's Motion does not address the jury's verdict, or the judgment,

regarding the Data Sheets.  That verdict will therefore remain undisturbed

regardless of the disposition of this Motion.

#### B.   The Jury Properly Found Deception And Injury From The Flame Ad.

In challenging the jury's findings on deception and injury, Mtn. at 4-7,

Ashcroft ignores that it had the burden to rebut the legal presumption of

deception and injury resulting from the jury's finding that the Flame Ad was

both a literally false and willfully deceptive, comparative advertisement.

*First*, Ashcroft's argument that WIKA was required to prove deception

through consumer surveys and customer testimony, Mtn. at 4, is wrong, and

ignores that deception is presumed if an advertisement is literally false.  *See*
Dkt. 191 at 11; *Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1319 (11th Cir.
2010); *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d
1242, 1247 (11th Cir. 2002); *Trilink Saw Chain, LLC v. Blount, Inc.*, 583 F.
Supp. 2d 1293, 1320 (N.D. Ga. 2008); 5 MCCARTHY ON TRADEMARKS AND
UNFAIR COMPETITION § 27:42 (4th ed.) (4th ed.).

The jury found that the Flame Ad was "literally false," and therefore
consumers are presumed to have been deceived.  (Dkt. 388 at No. 1; Dkt. 407
at 141-142.)  Ashcroft could have, but did not rebut that presumption of
deception at trial by producing consumer surveys or other evidence indicating
that consumers were not deceived by the literally false Flame Ad.  The fact
that it did not is shown by the jury's verdict and the Court's ruling.

*Second*, Ashcroft's claim that WIKA did not produce sufficient evidence
of injury, Mtn. at 4, ignores that: (1) injury sufficient to support injunctive
relief is presumed for literally false statements; and (2) injury sufficient to
support an award of monetary damages is presumed for ads that are willfully
deceptive, comparative advertisements.  *E.g.*, *Trilink*, 583 F. Supp. 2d at
1320–22 ("a presumption of causation and harm should apply to claims for

actual damages when a defendant disseminates willfully deceptive, comparative advertising").[1]

Here, injury is presumed for injunctive relief based on literal falsity. (Dkt. 388 at No. 1; § I.B, *infra*.)  The Court properly instructed the jury that the Flame Ad was comparative, and the jury (and the Court) properly found the ad was willfully deceptive, triggering a presumption of injury.  (Dkt. 407 at 141:15-24; Dkt. 388 at Nos. 14, 18, 23, 26; Dkt. 426 at 14, 15, 17-18, 19.) Thus, Ashcroft's complaint about ***WIKA's*** alleged failure to produce evidence of deception and injury, instead of ***Ashcroft's*** own failure to produce evidence rebutting these presumptions, is misguided.

Furthermore, the evidence supports the finding that Ashcroft's false advertising was willful and in bad faith.  For example:

- Ashcroft wanted to "kill WIKA" and address the threat to the "family jewels" of its business posed by WIKA's "improved" gauge, but because it could not challenge the XSEL's durability, it decided to attack its safety.  (PTX 33; PTX 164; Dkt. 399 at 184:19–188:19, 190:23–192:14, 194:1-4, 198:1–199:13, 201:10–202:14, 249:8-14; PTX 37-38.)

- Ashcroft knew fire safety was a critical customer concern, so despite not challenging Pocan during the 25 years WIKA had used this material, Ashcroft rigged new oven tests for a predetermined outcome

---

[1] *Osmose,* 612 F.3d at 1320 (citing cases where presumption of irreparable harm applied to literally false, comparative advertisements); *accord Merck Eprova AG v. Gnosis S.P.A.*, 760 F.3d 247, 260 (2d Cir. 2014); *Porous Media Corp. v. Pall Corp.*, 110 F.3d 1329, 1333 n.6 & 1336 (8th Cir. 1997).

of supposedly showing that Pocan was a safety risk, and then later misrepresented the test results in the Flame Ad. (Dkt. 390 at 141–142; Dkt. 406 at 194:4-13; Dkt. 398 at 58:17–59:2, 159:19-23.)

- The Flame Ad also accused the WIKA gauge of dripping or spattering burning melted plastic and creating a pool of burning liquid, but Ashcroft's own flame tests showed that Pocan self-extinguished, and instead the back of Ashcroft's gauge case was highly flammable and posed the greater risk of spreading a fire. (JTX 3-7 (now JTX 62), JTX 12; Dkt. 398 at 82:10-20, 83:2-4, 84:18-24, 88:1–91:22, 157:14-21, 158:10-159:13, 196:16–197:10, 203:4–204:1, 211:12–217:2; Dkt. 405 at 256:11-15.)

- Ashcroft knew it never flame tested "gauges", but claimed it had and made tests prove claims about "gauges" based on testing tiny fragments of one part of the gauge. (Id.; Dkt. 406 at 95:12–96:7; Dkt. 398 at 205:17–206:10; JTX 3–7 (now JTX 62), JTX 12.)

- Ashcroft continued to claim at trial that its phenolic material does not burn, which was not true. (Dkt. 406 at 66:22–67:7, 68:20–69:14, 71:6-25, 86:18–88:3; JTX 7 (now JTX 62); DTX 356.)

- Ashcroft knew the oven test results were falsely presented in the Flame Ad because, among other things, Ashcroft admitted the ad photos do not show the actual results for the entire 1279 gauge, and its references to the 1279's "case" omitted its rear cover (when the rear cover, based on all objective evidence, is part of the "case"). (Dkt. 398 at 70:1–71:1, 97:3–101:20, 133–137, 143:15–144:6, 199:5-12, 221:2-8; Dkt. 405 at 211:15–212:11, 216:1-9, 221:5-10, 222:11-13, 222:22–223:6; Dkt. 406 at 19:2–20:6; JTX 8; PTX 24; DTX 9 at 7.)

- Ashcroft continued using the Flame Ad for 18 months after the lawsuit was filed despite having additional post-publication tests showing its claims were false. (Dkt. 398 at 164:6–171:23; Dkt. 406 at 71:6 -25; JTX 60; PTX 56 & 58; DTX 356 at 8.)

There was more than sufficient evidence supporting the verdict.

Even without the legal presumption, the evidence establishes that customers considered the Flame Ad in making purchasing decisions and that WIKA suffered actual injury – specifically by the lost PES sale.  First, Ashcroft itself confirmed that Chevron, the agent for PES, and other customers considered the false advertising claims.  (Dkt. 399 at 243:12–247:21.)  Second, actual injury to WIKA is shown by Mr. Donat's testimony and related exhibits: PES did not require phenolic gauges, WIKA was initially an approved bidder, and PES used the Flame Ad to disqualify WIKA from the bid.  (*See* Dkt. 404 at 271:8-23, 271:24–274:16, 275:11–278:10, 278:25–283:2; JTX 33–36; PTX 128.)  There was also additional evidence of injury, as Aschroft's witnesses testified that Ashcroft used the false claims to get business from WIKA customer Valero, and WIKA offered evidence regarding its disqualification from the Chevron bid due to the Flame Ad, but actual damages could not be quantified.[2]

Ashcroft attacks Mr. Donat's testimony, Mtn. at 5-6, but this asks the Court to determine credibility or draw certain inferences in Ashcroft's favor, which the Court cannot do under Rule 50.  *E.g.*, *Gowski*, 682 F.3d at 1311.  Ashcroft's assertion that the lost PES sale is not injury ***to WIKA*** because

---

[2] Dkt. 400 at 117:15-19, 118:15–119:6, 168:9-11, 198:15–199:4 & PTX 223, DTX 128; Dkt. 399 at 245:15–247:21 & PTX 54; Dkt. 406 at 6:11–8:15.

PES did not buy Ashcroft's gauge is nonsensical.  Ashcroft cites no authority for the perverse principal that injury from false advertising requires a redirected sale to the culprit rather than a sale lost by the victim whose product is subject to false accusations.

### C.   The Jury Properly Found The Flame Ad Literally False.

Ashcroft's attack on the jury's "literally false" finding is meritless.

The Flame Ad could be found "literally false" if, considering the ad in its entirety, it: 1) unambiguously makes a statement that is "false on its face"; 2) conveys one or more false messages, statements or claims, and the audience would recognize such message, statement or claim as if it had been explicitly stated; or 3) is premised on and expressly references product testing that does not support the advertised claim or claims.  *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 158 (2d Cir. 2007); *Johnson & Johnson Vision Care, Inc.*, 299 F.3d at 1248; *Castrol, Inc. v. Quaker State Corp.*, 977 F.2d 57, 63 (2d Cir. 1992)); *Osmose, Inc.*, 612 F.3d at 1309.

Ashcroft defies the Eleventh Circuit's definition for literal falsity when it claims that the Flame Ad "accurately stated that phenolic components are safer than thermoplastic components in a fire" and that the Flame Ad could be interpreted differently because a handful of documents indicated the back cover of the gauge case was a separate part of the complete case assembly.

8

(Mtn. at 7-10.)  These arguments dissect portions of the Flame Ad in isolation rather than in full context as the law requires, and ignores that the Flame Ad could be found false by necessary implication. (Dkt. 407 at 137.)  And it is beyond dispute that the jury was justified in finding that the term "case," as understood by consumers in the industry, included its rear cover.  (*Id.* at 139.)

WIKA's false advertising claim is generally that the Flame Ad as a whole (and specific statements) misrepresent: 1) the flammability of and materials comprising the 1279 gauge; 2) the flammability of WIKA's XSEL® gauge; and 3) the comparative safety of the gauges.  (*See* Dkt. 407 at 135:15-22.)  Part of WIKA's claims challenged the various "tests prove" statements in the ad, which were not supported – and in fact directly contradicted – by Ashcroft's cited tests.  The jury agreed with WIKA, and Ashcroft's mischaracterization of the testimony of WIKA expert witness Dr. Newton does not change the extensive evidence WIKA introduced regarding the numerous, undeniable falsities in the Flame Ad.[3]

---

[3] Ashcroft's argument can be rejected based on this single fact:  **Ashcroft claimed it flame tested complete gauges and was reporting such testing results, when Ashcroft admitted it never flame tested a single complete gauge.**  (Dkt. 406 at 95:12-96:7; JTX 3-7 (now JTX 62); <u>Cf.</u> JTX 1.)

This evidence includes the testimony and exhibits cited in § I.B. as evidence of Ashcroft's willful false advertising and bad faith, and the expert testimony and testing of flammability expert Dr. Newton, which prove:

- Ashcroft's cited tests did not support the claims in the Flame Ad.

- Ashcroft's gauge is not safer in a fire than WIKA's gauge, and it is Ashcroft's gauge that poses a greater risk of spreading a fire.

- WIKA's gauge and case material immediately self-extinguish, and do not drip or spatter flaming molten plastic or pool into burning liquid, **unlike the 1279**.

- Ashcroft's phenolic material burns when exposed to flame.

- Ashcroft's claims about "case integrity" were not supported by its testing, and were disproved by Dr. Newton's testing of complete gauges.

- The case of Ashcroft's gauge suffered "ill effects" in the oven tests.

- The purported oven test after-photos and related claims do not give the true results of the testing.

(Dkt. 398 at 268–274, 285–286; Dkt. 399 at 13–39, 61:10-25, 62:13-17, 62:21–63:4, 63:14-18, 71:14-21; JTX 9; PTX 70 & 75 (now JTX 62)).  Dr. Newton's expert opinion offered after cross-examination aptly sums up the issue:

> the WIKA gauge is safer in a fire, and the Ashcroft gauge is the only gauge that has materials that self-supports and continues burning for long periods of time after a flame exposure.

(Dkt. 399 at 108:6-16.)

10

Finally, Ashcroft's "the case does not include its rear cover" argument, Mtn. at 10, ignores the wealth of evidence that the objective understanding of the term "case" in the industry includes its rear cover.

- The ASME standard defines case as including the back cover, which Ashcroft tried to convince the Court and jury to ignore despite Ashcroft being part of the ASME standards committee, directing customers to consult and rely on the standard, and ultimately admitting it defines the case to include the back cover. (Dkt. 390 at 122–123, 133–134, 137-139, 171; Dkt. 398 at 124; Dkt. 404 at 22–29; JTX 19-20; PTX 3.)

- Ashcroft's documents and advertising confirm the 1279 back cover is part of the gauge case. (Dkt. 404 at 30-43, 46-47, 49-50, 59-60; PTX 1, 88-90, 101-104.)

- Ashcroft knew other gauge manufacturers follow the ASME definitions and advertise their gauge cases as including the back cover. (Dkt. 404 at 52-54; JTX 25; PTX 99).

- All third-parties testified the gauge case includes the back cover. (Dkt. 399 at 223–24, 226–31; Dkt. 400 at 239–42, 250–51, 257–59.)

"Case" in this context, and the way it was used in the Flame Ad, was not susceptible to more than one interpretation – and the way Ashcroft used it in the Flame Ad was literally false.

For all of these reasons, the jury's findings on the issue of literal falsity do not warrant a new trial or judgment as a matter of law in Ashcroft's favor.

### D.   The Evidence Supported The GUDTPA And CUTPA Verdicts.

The foregoing arguments also require rejection of Ashcroft's challenge to the GUDTPA and CUTPA verdict, which Ashcroft concedes duplicate its Lanham Act arguments.

Ashcroft's other argument, that GUDTPA cannot apply because Ashcroft's conduct did not occur in Georgia, is also meritless.  (Mtn. at 11.)[4] Liability under GUDTPA requires a showing of likely future injury. O.C.G.A. § 10-1-373; *Iler Grp., Inc. v. Discrete Wireless, Inc.*, 90 F. Supp. 3d 1329, 1342 (N.D. Ga. 2015).  Under the principles of *lex loci delicti*, the place where the injury occurred determines the parties' substantive rights.  *nVision Glob. Tech. Sols., Inc. v. Cardinal Health 5, LLC*, 887 F. Supp. 2d 1240, 1271 (N.D. Ga. 2012) (under *lex loci delicti*, Ohio law governed because injury occurred there).  Because WIKA is a Georgia corporation that experienced, and will continue to experience, harm from the Flame Ad in Georgia, GUDTPA applies to Ashcroft's conduct.

---

[4] Ashcroft does not dispute that CUTPA applies, nor can it, since that statute requires only that the unfair or deceptive "trade" or "commerce" inflicting the loss occur either "in the State" or be "'tied to a form of trade or commerce intimately associated with Connecticut'" (where Ashcroft is located). *Fraiser v. Stanley Black & Decker, Inc.*, 109 F. Supp. 3d 498, 504-05 (D. Conn. 2015).

### E.   The Jury's Findings Of Tortious Interference Are Proper.

Ashcroft's argument that there is no evidence it acted "improperly, wrongfully, or with malice or intent to injure," or that its actions caused a third party not to enter into a business relationship with WIKA, Mtn. at 11-12, is unsupported by the record.

As set forth in section I.B-C *supra*, there is ample evidence showing Ashcroft acted improperly, wrongfully, and with malice or intent to injure WIKA by creating, distributing, and using the Flame Ad.  As also shown in section I.B., there is sufficient evidence that the Flame Ad caused at least one customer (PES) not to enter into a business relationship with WIKA.

The jury also specifically found that WIKA was damaged by Ashcroft's unlawful interference.  (Dkt. 388 at No. 25.)  While the jury awarded no compensatory damages, WIKA is still entitled to injunctive relief, *e.g.*, O.C.G.A. § 9-5-1 – a fact Ashcroft does not dispute in its Motion.  Accordingly, judgment in WIKA's favor on the tortious interference claim must stand.

### F.   The Jury Properly Found Bad Faith Under O.C.G.A. § 13-6-11.

The Court should also reject Ashcroft's attempt to relitigate the merits of the award of attorneys' fees under O.C.G.A. § 13-6-11.

*First*, because Ashcroft's challenge to the tortious interference claim fails, its related challenge to the fee award also fails. Ashcroft also is wrong in contending that the § 13-6-11 award can only apply to the tortious interference claim, as it also applies to all of WIKA's other claims. *See Fulton Cty. v. Legacy Inv. Grp., LLC*, 296 Ga. App. 822 (2009) ("[t]here is no requirement that a viable state law claim exist in order for the jury to award litigation expenses pursuant to O.C.G.A. § 13-6-11"); Dkt. 407 at 157:14-17 (instructing jury that the § 13-6-11 is not limited to tortious interference claim). That is, § 13-6-11 is another ground to award fees on all of WIKA's claims – with the only restriction being that the amount awarded must not constitute a double recovery (which WIKA does not seek, *see* Dkt. 438).

*Second*, bad faith is the only basis here for the attorneys' fees award, Dkt. 407 at 157:11–158:2, so Ashcroft's argument regarding a "bona fide dispute", Mtn. at 14-15, is irrelevant. *E.g., Litsky v. G.I. Apparel, Inc.*, 156 Fed. Appx. 107, 110–11 (11th Cir. 2005) ("bona fide" dispute no defense to claim for bad faith under § 13-6-11).

*Finally*, "[q]uestions concerning bad faith under [§ 13-6-11] are … for the jury to decide, and the trial court may grant judgment as a matter of law … only in the rare case where there is absolutely no evidence to support the award of expenses of litigation." *Kin Chun Chung v. JPMorgan Chase Bank,*

*N.A.*, 975 F. Supp. 2d 1333, 1351 (N.D. Ga. 2013).  *Accord LaRoche Indus., Inc. v. AIG Risk Mgmt., Inc.*, 959 F.2d 189, 192 (11th Cir. 1992).  Ashcroft does not come close to meeting this high standard.

Ashcroft's liability for tortious interference and willful false advertising is sufficient to uphold the § 13-6-11 award.  *See*, *e.g.*, *Tyler v. Lincoln*, 527 S.E.2d 180, 183 (Ga. 2000).  Regardless, the same evidence showing that Ashcroft's false advertising was willful and deliberate, § I.B–C, is likewise sufficient to support the finding of bad faith.

Furthermore, the Court may not draw negative inferences from, nor can it accept Ashcroft's interpretation of, the slight evidence that Ashcroft argues shows its good faith.  To the contrary, the jury was justified in accepting the evidence WIKA offered on Ashcroft's motive and rejecting Ashcroft's contentions that: 1) WIKA instigated this entire dispute with its "Tech Brief"; and 2) that ad justified Ashcroft's false attack ad, particularly where the Tech Brief was 15 years old, did not attack the Ashcroft gauge or material as a safety hazard, and merely gave accurate test ratings for the materials.  (*Compare* JTX 1 *with* JTX 58; *see*, *e.g.*, Dkt. 398 at 148:15–151:3, 180:7–189:4; Dkt. 400 at 190:5–192:1; Dkt. 405 at 247:19–249:12, 252:6-20, 253:3-21, 255:2-19; Dkt. 406 at 77:2-5, 82:8–83:25; PTX 51; JTX 10; JTX 60.)

II.   **The Jury's Monetary Awards Are Supported By The Evidence, Cannot Be Remitted, And Do Not Warrant A New Trial.**

A.   **The Jury's Disgorgement Award Is Proper.**

Ashcroft's argument for vacating the disgorgement award rests on the flawed legal premise that WIKA had to prove a connection between its damages and Ashcroft's profits to be entitled to such an award. This argument fails because: 1) Ashcroft waived it by failing to object to the Court's instruction on disgorgement; and 2) it is wrong as a matter of law. (*See*, *e.g.*, Dkt. 380; Dkt. 409 at 4-10.)

1.   **Ashcroft Waived Its Argument By Not Objecting To The Jury Charge.**

At the charge conference, this Court rejected WIKA's proposed instruction on profit disgorgement and instead adopted the Eleventh Circuit's Pattern Jury Instruction 10.1.  (Dkt. 407 at 37:15-21.)  The Court made only one change to the pattern instruction *in Ashcroft's favor*—it omitted the "unjust enrichment" trigger for an award of profits over *WIKA's* objection. (*Id.* at 37:22-41:5.)  Ashcroft, however, never objected to the Court's use of the Eleventh Circuit's pattern instruction, and argued only *in support* of the Court's exclusion of the "unjust enrichment" trigger.  Thus, the Court's instruction—which did not include any requirement that WIKA prove a connection between its damages and Ashcroft's profits (Dkt. 407 at 146:9-

147:2)—is the "law of the case" and Ashcroft waived any argument that the Court's recitation of the law on profit disgorgement was improper.[5]  *Electro Servs., Inc. v. Exide Corp.*, 847 F. 2d. 1524, 1528-29 (11th Cir. 1988); *Dunkin' Donuts of Am., Inc. v. Minerva, Inc.*, 956 F.2d 1566, 1570 (11th Cir. 1992).[6]

### 2.   The Jury Charge Properly Stated Eleventh Circuit Law.

The Court's instruction correctly described the law of profit disgorgement in this Circuit, which is hardly a surprise given the Court's adoption of the Eleventh Circuit's pattern instruction.

This Court first instructed the jury that it could award profits if it found that "Ashcroft's conduct was willful and deliberate or an award of Ashcroft's profits is necessary to deter Ashcroft from future conduct." (Dkt. 146:9-14; *see Optimum Techs., Inc. v. Home Depot U.S.A., Inc.*, 217 Fed. Appx. 899, 902 (11th Cir. 2007)).

---

[5] Ashcroft appears to claim that error was preserved by the Court's rejection of its requested "Proposed Jury Charge No. 9." (Mtn. at 19.) Ashcroft, however, did not object to its omission at trial. (Dkt. 407 at 56:6-8.)  A party who offers a proposed instruction does not preserve a challenge to a different jury instruction absent a specific objection. *Exide*, 847 F. 2d. at 1528-29.

[6] Ashcroft's failure to object means the Court's instruction can be reviewed only for "plain error", *Exide*, 847 F. 2d. at 1529, which occurs "only in exceptional cases where the error is so fundamental as to result in a miscarriage of justice." *Iervolino v. Delta Air Lines, Inc.*, 796 F.2d 1408, 1414 (11th Cir. 1986).

The Court further instructed:

> In determining Ashcroft's profits, WIKA is only required to prove Ashcroft's gross sales.  Ashcroft may then prove the amount of sales made for reasons other than the infringement.  Ashcroft may also prove its costs or other deductions it claims should be subtracted from the amount of its sales to determine its profits on such sales.  Any costs and deductions that Ashcroft proves by a preponderance of the evidence are required to be subtracted from the sales attributable to the infringement, and the difference is the amount that you would award to WIKA.

(Dkt. 146:18-147:2.) This instruction is derived from the Eleventh Circuit's

decision in *Burger King Corp. v. Mason*, 855 F.2d 779, 781 (11th Cir. 1988).

Contrary to Ashcroft's argument, the Eleventh Circuit explicitly ***does***

***not*** require any actual damages as a prerequisite to an award of profits.

*Burger King*, 855 F.2d at 781 ("the law in this Circuit is well settled that a

plaintiff need not demonstrate actual damage to obtain an award reflecting

an infringer's profits under § 35 of the Lanham Act, 15 U.S.C.A. § 1117");

*Wesco Mfg., Inc. v. Tropical Attractions of Palm Beach, Inc.*, 833 F.2d 1484,

1487–88 (11th Cir. 1987) (reversing a district court's refusal to award profits

because plaintiff had not offered "sufficient proof of actual damages," holding

that "[a] plaintiff need not demonstrate actual damage to obtain an

accounting of an infringer's profits under section 35 of the Lanham Act.").

This is deliberate.  Congress recognized that it is often difficult to

determine actual damages in a Lanham Act case, so it provided for a profit

award to ensure a victim is fully compensated and the wrongdoer did not
receive a windfall from its false advertising. *See*, *e.g.*, *Victoria Cruises, Inc. v.
Changjiang Cruise Overseas Travel Co.*, 630 F. Supp. 2d 255, 262 (E.D.N.Y.
2008). Thus, disgorgement is an appropriate remedy, *Abbott Labs. v.
Unlimited Beverages, Inc.*, 218 F.3d 1238, 1242 (11th Cir. 2000), which
"further[s] the congressional purpose by making infringement unprofitable."
*Burger King Corp. v. Weaver*, 169 F.3d 1310, 1321 (11th Cir. 1999). This
remedy also protects the public through its deterrent effect. *Merck Eprova
AG*, 760 F.3d at 261–62; 5 MCCARTHY § 30:64; *see Wynn Oil Co. v. Am. Way
Serv. Corp.*, 943 F.2d 595, 606 (6th Cir. 1991) ("There may be a windfall to
the [plaintiff] where it is impossible to isolate the profits which are
attributable to the use of the infringing mark. But to hold otherwise would
give the windfall to the wrongdoer.")[7]

Furthermore, the Court removed "unjust enrichment" as a basis for
disgorgement. Accordingly, Ashcroft's argument that the award must be
overturned because WIKA did not prove Ashcroft reaped a $3.3 million

---

[7] Ashcroft misconstrues this Court's holding in *TriLink*. While this Court
cited *Keg Techs., Inc. v. Laimer*, 436 F. Supp. 2d 1364, 1373 (N.D. Ga. 2006)
for the proposition that "there should be some connection between harm and
recovery," *Keg* was focused on whether the awarded profits should be limited
to those derived from the product at issue, rather than **all** of defendants'
profits from **all** products. 436 F. Supp. 2d at 1373-74.

benefit from the Flame Ad is a red herring.  Instead – and as properly

charged by the Court – the law required Ashcroft to prove the amount of

profits not attributable to the false advertising, which it did not do.

### 3.    The Jury's Profit Award Should Not Be Disturbed.

Ashcroft also contends that there was no evidence to support the

specific amount of profits awarded ($3.3 million).  (Mtn. at 21-22.)  This

argument fails as this amount falls well within the range of the evidence

presented at trial.  (Dkt. 414 at 205:19-206:3; Dkt. 407 at 91.)[8]

Once WIKA's expert Rob Hutchins testified that Ashcroft had reaped

$13.279 million in profits from the 1279, the burden shifted to Ashcroft to

prove its costs or deductions, and Ashcroft offered testimony from its CFO,

Mr. Vuono.  The jury was entitled to credit none, some, or all of his

testimony.

The fact that the jury picked a damage number between Mr. Hutchins

and Mr. Vuono's testimony is understandable.  Ashcroft offers no legal

authority for the proposition that a jury must choose either of the competing

profit calculations offered by the parties and cannot choose an amount in

---

[8] Ashcroft's guess at how the jury may have calculated the award, Mtn. at 22,
is speculation.  The Court could just as readily guess that the jury awarded
WIKA $3.3 million as 25% of the $13.2 million in profits because WIKA is one
of four main competitors to Ashcroft.  (*See*, *e.g.*, Dkt.404 at 118:22–119:6).

between.  (Mtn. at 22.)  To the contrary, this Court can only grant a new trial or remittitur when the jury's damage award exceeds the amount established by the evidence, and even then, the appropriate remedy is to reduce the award "to the outer limit of the proof."  *Frederick v. Kirby Tankships, Inc.*, 205 F.3d 1277, 1284 (11th Cir. 2000); *see also Sykes v. McDowell*, 786 F.2d 1098, 1105 (11th Cir. 1986) (award must be so large as to "shock the conscience").  Since that outer limit is $13.279 million, the $3.3 million award cannot "shock the conscience" and Ashcroft's challenge fails.

### 4.    Evidence Supports The Jury's Findings Of Willfulness Or That Disgorgement Was Necessary To Deter Future Conduct.

As shown in section I *supra*, there is extensive evidence showing Ashcroft's false advertising was willful, deliberate, malicious, done in bad faith, and/or an award was needed to deter Ashcroft from similar future conduct.  (*See* Dkt. 426 at 11 ("The court finds that an award of Ashcroft's profits is necessary to deter Ashcroft's future wrongful conduct".)

### B.    The Actual Damages Award Is Supported By The Evidence.

The jury's award of $12,189.46 as actual damages for the lost sale to PES should be upheld because the verdict is not against the great weight of the evidence and there is no basis to support remittitur.

Ashcroft does not challenge the fact of actual damage, only the amount awarded. This challenge is disingenuous, given that Ashcroft did not object to the Court's jury charge on actual damages referencing the amount sought by WIKA as $12,189.46. (Dkt. 407 at 36:22–37:7, 144:25–145:21.) Regardless, Ashcroft's argument fails on the merits.

*First*, Ashcroft bases its challenge to the Lanham Act award on the wrong jury instruction—namely, the actual damages instruction for WIKA's tortious interference claim. (*See* Mtn. at 23; Dkt. 407 at 154:18–156:10.) The Lanham Act actual damages instruction, referenced below, was proper:

> You are not required to calculate actual damages with absolute exactness – you may make reasonable approximations. … The only sale to be considered for damages it the [PES] sale. WIKA contends the amount of that loss of sale was $12,189.46.

Dkt. 407 at 145:3 – 145:20.)

To establish the amount of damages awarded, WIKA was only required to present "some evidence from which its damages can be calculated." *Trilink*, 583 F. Supp. 2d at 1322 n.15; *see also Hall v. Norfolk S. Ry. Co.*, 829 F. Supp. 1571, 1579, 1584 (N.D. Ga. 1993) (proof needed to show amount of damages lower than that to show fact of damages). WIKA did just that, proffering its bid showing the total sales price of $12,189.46. (JTX 34 at 5.)

*Second*, the jury did not disregard any of the Court's instructions on actual damages, as shown by the fact it did not award more than what the evidence supports.  While Ashcroft argues that expenses were not deducted, it never cross-examined Mr. Donat as to potential expenses for the PES bid. (*See* Dkt. 400 at 283:6–292:16, 294:23–295:7.)  Similarly, Ashcroft never questioned any witness about the margin information it now asserts in JTX 38 (an exhibit Ashcroft cites now for the first time), and never brought the information to the jury's attention.  Hence, even if expenses should have been deducted from the bid amount, Ashcroft's failure to raise that argument to the jury bars its challenge now.  *See Action Marine, Inc. v. Cont'l Carbon Inc.*, 481 F.3d 1302, 1316–17 (11th Cir. 2007) (affirming denial of remittitur and new trial for defense's failure to raise issue to jury).

*Finally*, the jury's damages award is presumed correct, and cannot be reduced as clearly excessive, nor can a new trial be granted, unless the amount is "so large as to shock the conscience" and results from the jury being infected by bias and prejudice.  *E.g.*, *Sykes*, 786 F.2d at 1105; *Hall*, 829 F. Supp. at 1579, 1584.  This was no "runaway jury" acting in passion, but one painstakingly determining the facts and following the law as instructed.

### III.   This Court's Evidentiary Rulings Were Correct And Under No Circumstances Resulted In Reversible Error.

Ashcroft's challenges to the Court's various evidentiary and summary judgment rulings all fail, and the Court got it right on each of them.   Because the alleged errors would be harmless anyway under Rule 61, they do not provide a basis for disturbing the verdict, findings, and judgment.  Fed. R. Civ. P. 61; *McCaslin v. Birmingham Museum of Art*, 384 Fed. Appx. 871, 872 n.1 (11th Cir. 2010) (alleged error in granting summary judgment against one defendant harmless as plaintiff did not prove claims against any defendant).

### A.   Ashcroft Waived Any Complaint About Reebals' Testimony.

Ashcroft's argument for a new trial based on the stricken testimony of Cameron Reebals fails on procedural and substantive grounds.

*First*, Ashcroft waived any error in connection with Reebals' testimony because this Court granted the relief Ashcroft requested (striking Reebals' testimony) and even granted additional unrequested relief through the strong curative instruction referenced below.  Ashcroft never pursued an adverse ruling, which would have required either a request for a further or different curative instruction or a motion for mistrial.  Thus, there is no adverse ruling that Ashcroft can assign error to, and Ashcroft's complaint is waived.  *See Complete Auto Transit, Inc. v. Wayne Broyles Eng'g Corp.*, 351 F.2d 478, 482

(5th Cir. 1965) (trial court made no ruling adverse to appellant and as a result "such matters cannot be raised on appeal."); *Costa v. Sam's East, Inc.*, 2012 WL 5386921, *11 (S.D.Ala. 2012) (the time to object to a "curative instruction was at trial, not a month after the fact in a post-trial motion.").[9]

Second, the Court's strongly-worded curative instruction, repeated twice immediately following Reebals' testimony, not only struck the testimony but also effectively rebuked WIKA's counsel for sponsoring it:

> Ladies and gentlemen of the jury, let me give you this instruction. This last witness that we had that testified, outside your presence I have stricken his testimony. I found his testimony to not be -- I don't know that I can go into all the reasons, explain them to you, but he -- I found his testimony to be incredible considering how they were presenting him and his lack of personal knowledge about the details about some of the things he testified about.
>
> So I've stricken that testimony, and I wish to remove it from your consideration. And you are not to consider anything that witness testified about in making any decision in the case.
>
>                       ***
>
> This last witness, I've stricken his testimony. Remove it from your consideration. I found it incredible. I found that he lacked an investigation on some of the conclusions he came to. They presented him as a lay witness, and he tried to give expert opinions. So just remove -- don't consider anything he's testified about in making any decision in the case.

---

[9] In its brief Ashcroft complains about testimony appearing at Vol. V, pages 89-95, 114-19, and 125-27. The vast majority of this testimony, however, was offered without any contemporaneous objection by Ashcroft's counsel.

(Dkt. No. 401 at 171.)

If there was any prejudice to Ashcroft, it was cured by this instruction, *see Davis v. Wal-Mart Stores, Inc.*, 967 F.2d 1563, 1568–69 (11th Cir. 1992), and this Court must presume that the jury followed this Court's instruction. *See Raulerson v. Wainwright*, 753 F.2d 869, 876 (11th Cir. 1985) ("[j]urors are presumed to follow the law as they are instructed"); *see also Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1302 (11th Cir. 2001) (no prejudice where Court gave curative instructions and ultimately struck testimony of witness). Ashcroft's decision at trial not to seek further curative language or a mistrial demonstrates its awareness that it had suffered no prejudice.

Ashcroft's suggestion that Reebals' testimony somehow impacted the verdict is pure speculation.  WIKA introduced Reebals' testimony, based on similar types of evidence being allowed in other false advertising cases, to establish actual damages in the form of lost growth opportunity:  while sales of the XSEL rose since its introduction in 2012, such sales stalled after the Flame Ad was disseminated, and yet sales of all other WIKA products rose (on a year-to-year basis).  Reebals also testified as to the specific losses related to the Chevron bid and the PES bid.  But before the case was submitted to the jury, the Court expressly removed consideration of the Chevron loss, Dkt. 407 at 145:9-21, and the jury's actual damages award was

26

predicated only on the PES loss (which is sufficiently based on the Donat testimony and other exhibits). *See* §§ II.B. & III.B. No actual damages were awarded with regard to the decrease in forecasted XSEL sales or otherwise based on Reebals' stricken testimony.

### B. The Chevron Emails Were Properly Admitted And, Even If Not, Their Admission Was Harmless.

Under the guise of a Rule 59 motion, Ashcroft improperly seeks reconsideration of the Court's evidentiary ruling admitting PTX 222 and 223 (the "Chevron emails") under Fed. R. Evid. 807. (Dkt. 407 at 57–59.) The Court's ruling followed extensive briefing, oral argument, and a detailed offer of proof by the live testimony and cross-examination of Jeff Placek. (Dkt. 220, 276, 295, 315, 320, 327 (briefings); Dkt. 353 at 24–42 (hearing); Dkt. 400 at 6–57 (offer of proof).) Because the Court applied the proper law and considered all the facts, there is no basis to grant a new trial. *See*, *e.g.*, *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940) (motion for new trial based on evidentiary ruling must raise question of law).

Ashcroft challenges only the first requirement under Rule 807 – circumstantial guarantees of trustworthiness – arguing that Mr. Duarte or Ms. Tanojo needed to testify for the emails to be admissible. (Mtn. at 28-31.) That is not so.

27

The emails themselves, coupled with Mr. Placek's testimony and related evidence established the necessary circumstantial guarantees of trustworthiness:

- Before this evidence was even proffered, an Ashcroft witness testified that Chevron discussed the Flame Ad during the relevant time period. (Dkt. 399 at 243:17–244:22.)

- The entire content and context of the Chevron Emails show they attached the Flame Ad and that it was received from Chevron in connection with the pending 5-year contract bid.  (PTX 222 & 223.)

- As the point person for the XSEL, Mr. Placek's duties included communicating with the WIKA Singapore employees on the email chain, and as a result he knew who they were, what they did, that they were bidding on the Chevron contract, and that Mr. Duarte (nicknamed "Danny CD") was the outside sales agent.  (Dkt. 400 at 8–15–18, 25–27, 62–68, 70–80, 97–98.)

- Placek authenticated and laid the foundation for the emails, confirmed that he saved them consistent with his ordinary business practice, and that they had not been altered in any way.  (Dkt. 400 at 10–11, 21, 28–29, 31, 65–66, 74–78, 83–84.)

- Placek confirmed the email chain Ms. Tanojo sent him attached the Flame Ad, explained that WIKA's global email system only shows attachments in the latest email in forwarded chains and that this happened with Danny CD's email, and gave a corroborating example. (Dkt. 400 at 15–19, 28–30, 48, 69–70, 72–74, 77, 80–83, 193–194.)

- Ashcroft and Ashcroft Singapore both circulated the Flame Ad as a PDF file attached to an email, which readily explains Danny CD's description of what he received from Chevron as an "email" rather than an "ad", and the attachment file name for the Flame Ad is identical in Ashcroft's distribution emails and the Chevron Emails.  (JTX 2; PTX 220, 222 & 223; Dkt. 400 at 26, 30, 32, 77, 81, 85, 87–88, 98, 194.)

- Ashcroft and Ashcroft Singapore initially circulated the Flame Ad just hours before Danny CD was contacted by Chevron about the ad, prompting his email to WIKA Singapore.  (Dkt. 400 at 24–25, 32–34, 79–80, 88–90; JTX 2; PTX 220, 222 & 223.)

- Ashcroft elicited corroborating testimony from Placek that Chevron itself indicated it disqualified WIKA from the contract bid due to the Flame Ad, without objecting or moving to strike that testimony.  (Dkt. 400 at 52:4-14, 117:15-19, 118:15-20, 118:24–119:6.)

- Ashcroft offered and used DTX 128, did not object to testimony on redirect, and elicited further testimony on re-cross, all of which further corroborates Chevron's disqualifying WIKA from the bid due to the Flame Ad.  (DTX 128 at p. 36; Dkt. 400 at 168–169, 198–199.)

The Court properly admitted the emails under the Rule 807 exception.[10]

And, regardless, Ashcroft cannot show that any error from the admission of this evidence was harmful.  *See* Fed. R. Civ. P. 61.

Ashcroft also argues that WIKA trampled on limitations this Court placed on the use of this evidence during its closing argument, but that is not the case.  As a threshold matter, Ashcroft has the very high burden of establishing "plain error," because it never 1) sought a limiting instruction

---

[10] *See, e.g., Brokaw v. Boeing Co.*, 137 F. Supp. 3d 1082, 1094 (N.D. Ill. 2015) (Rule 807 met where email headers and other information indicated they were written under highly reliable circumstances); *Parker v. Four Seasons Hotels, Ltd.*, 12 C 3207, 2014 WL 1292858, at *3 (N.D. Ill. Mar. 31, 2014) (admitting email under Rule 807 and noting no indication of unreliability or inaccuracy); *see also S.E.C. v. Daifotis*, 874 F. Supp. 2d 870, 878 (N.D. Cal. 2012) (email discussing and attaching draft of ad at issue admitted under Rule 807; noting author's likely motivation to be truthful).

with respect to Chevron, 2) objected to WIKA's closing argument, 3) asked for any curative instruction, or 4) sought the opportunity to rebut the challenged argument. *See Rosa v. City of Fort Myers, FL*, 297 Fed. App'x 830, 835 n.4 (11th Cir. 2008) (reviewing for plain error an improper closing argument where no contemporaneous objection was made); *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1282 (11th Cir. 2008) (noting failure to request surrebuttal in rejecting challenge to closing argument). Under plain error review, a new trial could only be granted if WIKA's argument was "plainly unwarranted and clearly injurious." *Hilger v. Velazquez*, 613 Fed. App'x 775, 776 (11th Cir. 2015).

Ashcroft cannot show *any* error, much less plain error. Contrary to its argument, no limitation was placed on the use of the Chevron evidence when it was admitted, and the only later limitation was that it could not be considered for actual damages. (Dkt. 400 at 58:17–59:9; Dkt. 404 at 86; Dkt. 407 at 84–85, 90, 145:15-21.) Consistent with the Court's rulings, WIKA argued that the Chevron deal evidenced injury ***but not actual damages***, which WIKA expressly limited to the PES deal. (Dkt. 407 at 84–85, 90.) The jury understood that distinction, followed the Court's explicit instruction that Chevron could not be considered for actual damages, and returned an actual

damages verdict for the lost PES sale.  (Dkt. 388 at No. 5.)  There is no error, much less "plain error" or "reversible error" here.

## IV.   The Court Did Not Create An Unlawful "Uneven Playing Field."

Ashcroft's litany of "uneven" and "unfair" playing field arguments, Mtn. at 32-36, fail for a rudimentary reason:  they identify no legal error.

### A.   Ashcroft Identifies No Error In The Jury Charge.

Ashcroft's argument that the Court was required to use a uniform set of "neutral" instructions for the claims and counterclaims at issue, rather than using WIKA-prepared instructions for WIKA's claims and Ashcroft-prepared instructions for Ashcroft's counterclaims, fails for several reasons.

*First*, Ashcroft cites no authority for the proposition that jury instructions must be identical for "mirror-image" claims. Given that Ashcroft does not contend that any portion of the Court's charge improperly instructed the jury on the law, Ashcroft's complaint goes to the "style and wording" the Court employed, an area where the Court "enjoys wide discretion." *U.S. S.E.C. v. Big Apple Consulting USA, Inc.*, 783 F.3d 786, 802 (11th Cir. 2015). WIKA (and apparently Ashcroft too) could not find a single case suggesting that a failure to provide "mirror-image" instructions for common claims and counterclaims constitutes an abuse of that wide discretion.

31

*Second*, as the Court explained in rejecting Ashcroft's objection, it structured the charge to correspond with the verdict form (which first set out interrogatories on WIKA's claims, followed by interrogatories on Ashcroft's counterclaims) and thus avoid jury confusion. (Dkt. 407 at 20:6-18.) That structure enabled the jury to match the interrogatories with the appropriate instructions on how to answer them.

*Third*, Ashcroft fails to explain how the WIKA-prepared (but Court-modified and adopted) instructions on WIKA's claims resulted in error. Ashcroft's only argument seems to be WIKA's instructions "advocated for a particular result." (Mtn. at 33 n.12.) But Ashcroft offers no specifics to support its complaint and provides only a global citation to WIKA's 99-page charge submission. *Id.*; *N.L.R.B. v. McClain of Georgia, Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived."). In any case, Ashcroft waived any argument that WIKA's instructions were leading by failing to assert this objection at the charge conference.  *See, e.g.*, *Electro Servs., Inc.*, 847 F.2d at 1528–29; *Dunkin Donuts*, 956 F.2d at 1570.

Finally, to the extent Ashcroft is complaining about the Court's instructions on its counterclaims (which Ashcroft prepared), its complaint is

barred by the "invited error" doctrine. *United States v. Frank*, 599 F.3d 1221, 1240 (11th Cir. 2010) ("when a party agrees with a court's proposed instructions, the doctrine of invited error applies, meaning that review is waived even if plain error would result"); *see also United States v. Gibson*, 708 F.3d 1256, 1275 (11th Cir. 2013) (same).

### B. The Court Properly Excluded The Irrelevant Testimony Ashcroft Sought To Offer Through Dr. Koo.

Excluding Dr. Koo's irrelevant testimony was appropriate and did not create unfairness. WIKA moved to exclude Koo's testimony because his tests: 1) did not replicate the tests cited in the Flame Ad; and 2) were performed *after* Ashcroft pulled its ad. (*See* Dkt. 234 at 4, 9.)[11] After hearing argument from counsel (twice), the Court excluded Koo from testifying. (Dkt. 351 at 17; *see also id.* at 4–19; Dkt. 353 at 83–89.)

In so ruling, the Court rejected the same argument Ashcroft repeats now: that Koo's testimony was "relevant and admissible for the limited purpose of rebutting WIKA's argument that Ashcroft's original testing was unreliable." (Mtn. at 34.) The argument misrepresents the record, and is

---

[11] As a result, Koo's tests were not relevant to the literal falsity of the Flame Ad or Ashcroft's "good faith" in using it; instead, this post-hoc testing would serve only to confuse the jury. *See Osmose*, 612 F.3d at 1310; *see also Alpo Petfoods, Inc. v. Ralston Purina Co.*, 720 F. Supp. 194, 205 (D.D.C. 1989) (claims in ads must be supported based on testing performed and cited; tests performed later to validate the claims are irrelevant).

meritless.  WIKA withdrew any attack on the reliability of Ashcroft's cited testing *before* the Court excluded Koo,[12] and did not challenge the reliability of Ashcroft's testing at trial.

To the extent Ashcroft maintains that the Court's "error" was "compounded" when Dr. Newton was allowed to testify regarding his testing, Mtn. at 35, the Court did not err by treating two experts differently based on the different content of their respective testimony.  Ashcroft cites no case, precedent or theory which required the Court to allow Koo to testify because Dr. Newton did.  Instead, Dr. Newton was properly allowed to testify that the tests referenced in the Flame Ad did not stand for the propositions for which they were cited, and that Ashcroft's claims in that ad were not accurate.[13]

Finally, Ashcroft waived any objection to the scope of Dr. Newton's testimony or the use of any exhibits tendered during his testimony or in closing.  *See BFS Retail & Commercial Operations, LLC v. Harrelson*, 701 F. Supp. 2d 1369, 1377 (S.D. Ga. 2009) ("when a party does not object to the

---

[12]  WIKA's counsel stated WIKA was not challenging the reliability of Ashcroft's tests at the March 18, 2016 pretrial conference. (Dkt. 351 at 9).

[13] In fact, the Court addressed Ashcroft's argument that it was "unfair" to allow Dr. Newton to testify when Koo could not during the March 18 pretrial hearing, and reiterated that Dr. Newton's testimony was presented to show that Ashcroft's tests were "wrong and that you overstated … in your advertisement." (Dkt. 351 at 18.)

34

admission of certain evidence at trial, that party waives his right to complain about such admissions later"). Ashcroft did not file a motion *in limine* to challenge the scope of Dr. Newton's trial testimony (*see* Dkt. 351 at 19); did not object to his trial testimony regarding his testing; and did not object to the use of the video of the open flame test of the Ashcroft 1279 gauge during testimony or closing argument. (Dkt. 399 at 26, 31; Dkt. 407 at 122-127.)

### C. Summary Judgment On Ashcroft's Disgorgement And Enhanced Damages Remedies Was Proper.

The Court ruled at summary judgment and on reconsideration that Ashcroft waived two Lanham Act remedies: disgorgement and enhanced damages. (Dkt. 191 at 35-36; Dkt. 201 at 1-13). Ashcroft did not respond to WIKA's specific summary judgment challenges to these remedies, *see* Dkt. 19 at 5-10, so it waived them. *See e.g.*, *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (party abandons opposition to summary judgment argument by not responding to that argument). Ashcroft's second motion for reconsideration of this decision violates LR 7.2(E), NDGa, and offers no reason for the Court to reverse itself and order a new trial.

Further, any alleged error is harmless. These remedies applied only to Ashcroft's Lanham Act counterclaims, which Ashcroft lost. Accordingly, the Court's rulings cannot be the basis for a new trial. *E.g.*, Fed. R. Civ. P. 61.

35

## V.    Ashcroft Is Not Entitled To A New Trial On Its Tortious Interference Counterclaim.

### A.    Ashcroft Does Not Meet Its Burden Under Rule 59.

*First*, Ashcroft's argument should be rejected because it cites no basis for allowing Rule 50 or 59 relief on a claim dismissed at summary judgment.

*Second*, Ashcroft's argument attacking the Court's summary judgment Order is a (year-late) motion for reconsideration barred under Local Rule 7.2(E). *Lattimore v. Wells Fargo Bank, N.A.*, 1:12-CV-1776-CAP-JSA, 2014 WL 11858150, at *1 (N.D. Ga. May 6, 2014) (Pannell, J.) (denying Rule 59(e) motion), *aff'd* 591 Fed. App'x 693 (11th Cir. 2015) (*per curiam*).

*Third*, even if considered under Rule 59(e), Ashcroft does not identify: 1) new, previously unavailable evidence; or 2) any manifest error of law or fact. *See Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (the "only grounds for granting a Rule 59 motion are newly-discovered evidence or manifest errors of law or fact.  [It] cannot be used to re-litigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment."); *Michael Linet, Inc. v. Vill. of Wellington, Fla.*, 408 F.3d 757, 763 (11th Cir. 2005) (denying Rule 59(e) motion which "was essentially a motion to reconsider the … prior summary judgment order").

Specifically, Ashcroft has not provided any new evidence that was previously unavailable to it at summary judgment.  While citing evidence produced at trial as support for its tortious interference claim, Mtn. at 39-40, Ashcroft does not claim this evidence was unavailable at summary judgment. *Mays v. U.S. Postal Serv.*, 122 F.3d 43, 46 n.6 (11th Cir. 1997) (*per curiam*) (court should not grant a motion to reconsider based on previously unsubmitted evidence absent "some showing that the evidence was not available during the pendency of the motion.").

Ashcroft argues the Court incorrectly required "direct evidence" of tortious interference at summary judgment.  But Ashcroft could have raised this issue at summary judgment, and did not. *See id.* at 46 n.5 (motions for reconsideration "should not be used to raise legal arguments which could and should have been made before the judgment was issued.").  To the contrary, Ashcroft advocated for the direct evidence standard it now claims is incorrect.[14]

---

[14] At summary judgment, Ashcroft cited this Court's *Trilink* decision and the direct evidence standard therein. (Dkt. 118 at 25, n.12.)  Ashcroft again cited *Trilink* in resisting WIKA's summary judgment motion, but cited no case supporting the argument it is now attempting to make – that circumstantial evidence can support a tortious interference claim. (Dkt. 128 at 22-23.)  The cases Ashcroft now relies on in its Rule 59 Motion, *Arford v. Blalock*, 199 Ga. App. 434, 441 (1991) and *Sowell v. Blackman*, 236 Ga. App. 705 (1999), were not cited in its summary judgment briefing.

### B.   This Court's Summary Judgment Ruling Is Correct.

Ashcroft's motion for reconsideration also fails on the merits.

Ashcroft's main line of attack is on the Court's decision in *Trilink*, as it argues that circumstantial evidence can support a tortious interference claim. (Mtn. at 37-38.)  This discussion of the legal standard, however, is academic, as Ashcroft fails to cite how the Court's consideration of Ashcroft's submitted evidence *at summary judgment* was error.  Instead, Ashcroft cites to trial testimony to establish that it should have prevailed at summary judgment. This is obviously improper, and no reason to grant Rule 59 relief.  *Dixon v. Wallowa Cty.*, 336 F.3d 1013, 1022 (9th Cir. 2003) (in reviewing a grant of summary judgment, the court is "limited to the … evidence available to the court at the time the motion was made.").

Even considering the trial evidence, there is no evidence from Ashcroft that it lost any sales, and as for Ashcroft's contention that WIKA wrongly took away business from shared distributor AWC:  there is no evidence that anyone at AWC ever saw any of the Durability Ads, and AWC gave business to WIKA not due to any Ad, but because WIKA gave AWC exclusive access to one of WIKA's largest customers.  (Dkt. 406 at 155-156, 165–166, 168-170; DTX 83 at 11.)

## VI.   Ashcroft Is Not Entitled To A New Trial On Its Lanham Act Counterclaims.

Finally, Ashcroft has not shown the judgment against its Lanham Act

Counterclaim is against the "great weight" of the evidence.  (Mtn. at 41-44.)

### A.   Ashcroft's Argument Is Immaterial, Given The Other Independent Bases For The Take Nothing Judgment On Its Counterclaims.

Ashcroft's arguments regarding literal falsity and materiality fail at

the outset because, irrespective of their validity, other deficiencies

independently doom its Lanham Act Counterclaim.  This Court entered

judgment against Ashcroft's Durability Ad Counterclaim because WIKA's

Ads: 1) were not literally false; 2) did not deceive customers; 3) did not have a

material effect on consumers' purchasing decisions; and 4) did not cause

Ashcroft injury.  (Dkt. 388 at § VII.A; Dkt. 426 at 5-6.)

Ashcroft's failure to challenge the second and fourth elements are

outcome-determinative.  It presents no evidence showing that the jury's

findings on lack of deception or injury were against the great weight of the

evidence.  While Ashcroft claims in a footnote that the deception and injury

prongs were "presumptively satisfied," Mtn. at 43 n.19, the presumption for

injury applies only to "willfully deceptive, comparative advertising."  *Trilink*,

583 F. Supp. 2d at 1321.

Further, any *presumption* of deception and injury can be rebutted, and the jury was free to reject any presumption. *Id.*; Dkt. 407 at 164:8–166:11 (jury charge on deception and injury). Ashcroft did not submit at trial, and does not identify now, any evidence of deception or injury, while WIKA showed that Ashcroft could not prove any deception or that Ashcroft had suffered any injury. (Dkt. 406 at 238:16–240:21.)

## B.   Ashcroft's Literal Falsity Argument Fails.

Ashcroft's arguments that: 1) WIKA admitted literal falsity in closing argument by stating "WIKA has made some mistakes"; and 2) the Court's July 22, 2016 Order requires a "literally false" finding for the Durability Ads, Mtn. at 41-42, do not meet Ashcroft's burden of proving the "great weight" of the evidence compelled a finding that WIKA's Ads were literally false.

Whether the Durability Ads were "literally false" or "misleading" (or not false advertising at all) was a fact question for the jury.[15] An ad is only literally false if it has an "unambiguous meaning either facially or considered in context." *Osmose*, 612 F.3d at 1308–09. As the Court noted at summary judgment, this determination is often a "close call" because when a statement "becomes susceptible to multiple meanings, the statement is more likely to be

---

[15] Unlike Ashcroft's Flame Ad, the Court never ruled that the Durability Ads were "tests prove" claims, and this question was instead presented to the jury. (*See* Dkt. 191 at 11-14 & 33-35.)

merely misleading." (Dkt. 191 at 11.) Ashcroft has not cited any error in the jury instructions relating to the difference between a literally false advertisement and a misleading ad. (Dkt. 407 at 162:7-163:12.)

Ashcroft's arguments do not establish the literal falsity of the Durability Ads. First, WIKA's counsel stating that "WIKA has made some mistakes" in closing arguments is not evidence, and is not an admission of literal falsity. Hence, this does not support granting a new trial.

Similarly, the Court's July 22 Order is consistent with a finding that none of the Durability Ads were literally false. Ashcroft's contention that the Court's findings on page 20 of its Order "contradict" the jury's verdict is simply wrong, as the Court independently ruled, on the next page, that "the Durability Ads were misleading only." (Dkt. 426 at 21.)

As to the substance of the Ads, the Court got it right: the Court and jury were justified in determining that none of the Ads could be considered *unambiguously* false. *See Osmose*, 612 F.3d at 1308-09.

Although WIKA did not have any burden to show that the Durability Ads were true or misleading, the evidence it proffered defeats Ashcroft's claim that the WIKA Ads were literally false. For example, the jury and Court could have determined that the "lasts five times longer than competing brands when used in like applications" statement was ambiguous or literally

41

true because: 1) the ambiguous phrase "lasts … longer" can have different meanings depending on whether longevity or intensity of use is being measured; 2) the evidence showed that at least one of the WIKA XSEL gauges lasted over five times longer than the 1279 gauge in vibration testing; and 3) the term "brands" can be interpreted as singular and plural (or puffery) by relevant consumers, particularly as the 1279 gauge was previously the top performer in the market in gauge performance.  (*E.g.*, Dkt. 404 at 235:5-9; Dkt. 405 at 54:15-18, 59:21–60:12.)

The phrase "capable of producing 10 million pressure cycles without any negative effects to the accuracy" could be found literally true or ambiguous within the Ads as a whole as well because: 1) WIKA's testing showed the XSEL produced over 10 million pressure cycles; and 2) the ambiguous terms "capable of" and "without negative effect on accuracy" rendered the statements at most misleading but not unambiguously false. (*E.g.*, JTX 50; DTX 4; PTX 143; Dkt. 405 at 54:3-14; 85:1-12.)

As to WIKA's "All Welded System can extend gauge life by 2.5 times" claim, the jury and Court could have found that: 1) this was not a tests-prove advertisement, as no testing was cited; 2) the claim was ambiguous as to being supported by testing; or 3) the claim was sufficiently corroborated by WIKA because the jury believed Mr. Weissner's (and others') testimony that a

42

customer, Dow Chemical, provided WIKA this information.  (*E.g.*, DTX 3; Dkt. 404 at 170:3–171:16, 172:2-10, 186:14–187:6, 187:10–188:5, 189:4-9; DKt. 406 at 186:19–187:3.)

Finally, Ashcroft's Motion fails because it mistakenly assumes all of the Durability Ads were ruled to be "tests-prove" claims. (Mtn. at 41, claiming "Ashcroft was only required to establish that the tests offered by WIKA in support of its Durability Advertisement 'did not establish the proposition for which they are cited'".) The jury, however, made no such finding.  Ashcroft's failure to address this issue is fatal, because its argument is premised on each Ad being a tests-prove claim.

### C.    Ashcroft's Materiality Argument Fails.

Finally, Ashcroft's arguments regarding the materiality of the Durability Ads also does not support Rule 59 relief.

As a threshold matter explained above, this argument is academic in light of other fatal deficiencies found by the jury (lack of deception or injury).

Further, Ashcroft's argument that it met its materiality burden— because the Durability Ads addressed the durability of the XSEL and durability is "an inherent quality or characteristic of the product", Mtn. at 43-44, is incorrect for at least two reasons.

43

*First*, Ashcroft mischaracterizes the Court's July 22 Order.  While the Order stated a gauge's "durability … [is an] important factor[ ]" in consumer purchasing decisions, the Court did *not* rule that "durability" is an "inherent quality or characteristic" of a gauge, or that any specific statement in the Durability Ads were "material."  (Dkt. 426 at 8.)  Instead, the Court only stated "the relative flammability and safety of a gauge are indicative of the inherent quality of that particular gauge," omitting durability. *Id.*

*Second*, materiality is a question of fact on which Ashcroft had the burden of proof.  *See Johnson & Johnson*, 299 F.3d at 1250.  While Ashcroft "***may*** establish" materiality by proving that a statement relates to the inherent quality or characteristic of a good, *Osmose*, 612 F.3d at 1318 (emphasis added), any such showing created only a presumption of materiality which WIKA could rebut.  *See* 5 MCCARTHY § 27:35 (2016).[16]  At trial, WIKA presented evidence that the claims in the Durability Ad were not material.  (*E.g.*, Dkt. 405 at 87:16–88:18.)  Ashcroft's Rule 59 motion presents no evidence that counters the jury's and Court's finding on materiality.

---

[16] *Cashmere & Camel Hair Mfrs.,* cited by Ashcroft, is inapplicable here: it is a summary judgment decision; and it merely indicates that materiality was presumed and defendants could not effectively "rebut" plaintiff's materiality argument.  284 F.3d at 312 ("The problem with defendants' rebuttal argument, however, is that it ignores what a rational juror could find after drawing all reasonable inferences in plaintiffs' favor.").

## CONCLUSION

For the foregoing reasons, Ashcroft's Motion should be DENIED in its entirety.

Respectfully submitted this 16th day of September, 2016.

**/s/ Eric P. Schroeder**

## Local Rule 7.1(D) Certification of Compliance

I hereby certify that the foregoing pleading has been prepared with Century Schoolbook font, 13 point, one of the font and point selections approved by the Court in L.R. 5.1B, N.D. Ga.

**/s/ Eric P. Schroeder**
Georgia Bar No. 629880

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing **WIKA's Opposition to Ashcroft's Motion for Renewed Judgment As a Matter of Law, New Trial or Remittitur** with the Clerk of Court using the CM/ECF system which will send email notification of such filing to all counsel of record.

This 16th day of September, 2016.

**/s/ Eric P. Schroeder**
Georgia Bar No. 629880

#6604759_6

45