# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| WIKA INSTRUMENT, LP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 1:13-cv-00043-CAP |
| ASHCROFT, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## ASHCROFT, INC.'S REPLY BRIEF IN SUPPORT
## OF RULES 50(b) AND 59 RENEWED MOTION FOR JUDGMENT AS A
## <u>MATTER OF LAW AND/OR FOR NEW TRIAL OR REMITTITUR</u>

HOLLAND & KNIGHT LLP

Caroline J. Tanner (GA Bar No. 392580)
Gregory J. Digel (GA Bar No. 221750)
Keisha O. Coleman (GA Bar No. 844720)
1180 West Peachtree Street, NW
Atlanta, Georgia 30309
(404) 817-8500 (phone)
caroline.tanner@hklaw.com
greg.digel@hklaw.com
keisha.coleman@hklaw.com

Brian G. Leary (*pro hac vice*)
Benjamin M. McGovern (*pro hac vice*)
10 St. James Avenue
Boston, Massachusetts 02116

*Attorneys for Ashcroft, Inc.*

# <u>TABLE OF CONTENTS</u>

I.     ASHCROFT REBUTTED THE PRESUMPTIONS OF DECEPTION
       AND INJURY, IF ANY, WITH RESPECT TO WIKA'S LANHAM
       ACT CLAIM ........................................................................................1

II.    WIKA DID NOT PREVAIL ON ITS CLAIM FOR TORTIOUS
       INTERFERENCE BECAUSE INJUNCTIVE RELIEF IS
       UNAVAILABLE...................................................................................5

III.   THE JURY'S AWARD OF PROFITS AND DAMAGES TO WIKA
       IS EXCESSIVE, UNSUPPORTED AND AGAINST THE WEIGHT
       OF THE EVIDENCE ...........................................................................7

       A.   WIKA FAILED TO PROVE A CAUSAL CONNECTION
            BETWEEN ASHCROFT'S PROFITS AND THE PRODUCT
            INFORMATION PAGE .......................................................7

       B.   THE JURY'S CALCULATION OF ACTUAL DAMAGES
            WAS IMPROPER ...............................................................9

IV.    THE JURY'S FINDINGS REGARDING ASHCROFT'S
       COUNTERCLAIM WERE AGAINST THE WEIGHT OF THE
       EVIDENCE ........................................................................................11

       A.   WIKA'S OWN WITNESSES ADMITTED THE LITERAL
            FALSITY OF THE DURABILITY ADVERTISEMENTS ..............11

       B.   THE DURABILITY ADVERTISEMENTS CONTAINED
            "TESTS-PROVE" CLAIMS ...............................................11

       C.   ASHCROFT IS ENTITLED TO PRESUMPTIONS OF
            DECEPTION AND INJURY ...............................................14

CONCLUSION ......................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

C<small>ASES</small>

*Barnett v. Morrow*,
  196 Ga. App 201, 396 S.E.2d 11 (1990) ................................................................7

*Castrol, Inc. v. Pennzoil Quaker State Co.*,
  169 F. Supp. 2d 332 (D.N.J. 2001) ......................................................................8

*Euro-Pro Operating, LLC v. Euroflex Americas*,
  No. 08CV6231(HB), 2008 WL 5137060 (S.D.N.Y. 2008)................................12

*Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*,
  299 F.3d 1242 (11th Cir. 2002) .........................................................................15

*KEG Tech., Inc. v. Laimer*,
  436 F. Supp. 2d 1364 (N.D. Ga. 2006) ................................................................8

*Liniado v. Alexander*,
  199 Ga. App. 256 (1991) ......................................................................................7

*Morro v. City of Birmingham*,
  117 F.3d 508 (11th Cir. 1997) .............................................................................6

*N. Am. Medical Corp. v. Axiom Worldwide, Inc.*,
  522 F.3d 1211 (11th Cir. 2008) ...........................................................................4

*Osmose, Inc. v. Viance, LLC*,
  612 F.3d 1298 (11th Cir. 2010) ...................................................................12, 13

*Tiller v. State Farm Mut. Auto. Ins. Co.*,
  No. 1:12-CV-3432-TWT, 2013 WL 451309 (N.D. Ga. 2013)............................7

*Trilink Saw Chain, LLC v. Blount, Inc.*,
  583 F. Supp. 2d 1293 (N.D. Ga. 2008).............................................................1, 8

*WL Gore Assocs., Inc. v. Totes, Inc.*,
788 F. Supp. 800 (D. Del. 1992)..........................................................................12

**STATUTES**

15 U.S.C. § 1117(a) ...........................................................................................8

Fed. § 13-6-11 ...................................................................................................7

O.C.G.A. § 13-6-11............................................................................................7

**OTHER AUTHORITIES**

Local Rule 7.1(C) & (D) ....................................................................................1

Pursuant to Local Rule 7.1(C) & (D), Ashcroft[1] respectfully submits this reply in further support of its renewed motion filed as Docket No. 446 (the "Motion"). In filing this reply, Ashcroft does not intend to waive, and hereby specifically preserves, any argument advanced in the Motion that is not specifically re-addressed here. Nothing in WIKA's opposition disturbs the conclusion that this Court should enter judgment as a matter of law for Ashcroft, or, alternatively, order a new trial and/or remittitur.

## I.   ASHCROFT REBUTTED THE PRESUMPTIONS OF DECEPTION AND INJURY, IF ANY

Even assuming, *arguendo*, that WIKA was entitled to presumptions of deception and injury in connection with its Lanham Act claim, which Ashcroft does not concede,[2] the evidence still does not support a finding of liability. Both parties agree that if these presumptions attach, they are rebuttable. *See* WIKA's Opposition to Ashcroft's Motion for Renewed Judgment as a Matter of Law, New Trial or Remittitur ("Opposition"), Dkt. 460, at pp. 4-5; *see also Trilink Saw Chain, LLC v. Blount, Inc.*, 583 F.

---

[1] Capitalized terms shall be defined in this reply in the same way as those terms are defined in Ashcroft's Motion.  *See* Dkt. 446.

[2] As explained by Ashcroft in its Motion, WIKA is not entitled to these presumptions because the jury lacked a sufficient basis to conclude that Ashcroft's Product Information Page was literally false.  *See* Motion, Dkt. 446, at p. 7 n. 2 & Section II.B.

Supp. 2d 1293, 1321 (N.D. Ga. 2008) (presumption rebutted by evidence that plaintiff "did not suffer its alleged marketplace injuries."). And contrary to WIKA's protestations, the evidence was more than sufficient to rebut any presumption that the Product Information Page caused deception or injury.

Here, any presumption of deception necessarily assumes that customers who read the Product Information Page were encouraged to buy phenolic instead of thermoplastic gauge cases based on the allegedly false message that the former was safer than the latter in a refinery fire. But this premise was disproven conclusively at trial. Indeed, the only consumer that actually saw the Product Information Page– PES[3]– was under no such illusion. PES initially issued a RFQ on May 7, 2014 that required a phenolic gauge case. *See* JTX 33 [Dkt. 397], at pp. 3-12. In June 2014, PES or its agent viewed a copy of the Product Information Page. *See* JTX 35 [Dkt. 397], at p. 1. If that advertisement was truly deceptive, PES should have received Ashcroft's marketing message as confirmation that its original decision to specify phenolic was correct. But that is not what occurred.

---

[3] Although WIKA persists in arguing that Chevron and Valero received copies of the Product Information Page, *see* Opposition, at p. 7, there was no direct evidence offered on this point, and the circumstantial evidence was ambiguous at best. And in any event, there was absolutely no evidence to demonstrate that either customer was actually deceived by the Product Information Page if they in fact saw it.

Instead, sometime in July 2014, PES decided to **waive** its requirement of phenolic, and purchased a **thermoplastic** gauge case instead. *See* JTX 36 [Dkt. 397], at p. 1; Trial Tr., Vol. VIII (Freyler) [Dkt. 415], at 208:8 – 209:1. PES's actual behavior– a shift from phenolic to thermoplastic after viewing the advertisement– belies the assumption that the Product Information Page deceived customers into believing that phenolic was better. This evidence alone is sufficient to rebut any presumption of deception.

The same is true of any presumption of injury. By definition, a presumption of injury assumes that the Product Information Page either caused WIKA to lose sales or permitted Ashcroft to gain them. But, again, the evidence introduced at trial contradicts that assumption. WIKA's Opposition simply ignores the evidence that its net sales for the XSEL gauge rose for every year that the Product Information Page was in circulation. *See* JTX 38 [Dkt. 397]. It ignores that Ashcroft suffered a decrease in unit shipments during the first year that the Product Information Page was in circulation. *See* JTX 41 [Dkt. 397] (1279 shipments dropped approximately 3.6%). And WIKA ignores that its own witnesses could not identify any lost sale, customer, or opportunity that can be traced to the Product Information

Page.  *See* Trial Tr., Vol. V (Firestone) [Dkt. 414], at pp. 24-26; Trial Tr., Vol. VIII (Gerster) [Dkt. 415], at pp. 125-26.

The PES transaction does not support the presumption of injury, it refutes it.  PES' decision to buy U.S. Gauge could not have been **motivated by** the Product Information Page, because: (i) PES required phenolic before the advertisement was published, *see* JTX 33 [Dkt. 397] (specifying "case" material as phenolic); and (ii) although that advertisement promoted Ashcroft's gauge as superior to **both** the WIKA **and** U.S. Gauge products, WIKA lost the sale, not to Ashcroft, but to U.S. Gauge.  *See, e.g., N. Am. Medical Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1224 (11th Cir. 2008) (element of injury under the Lanham Act requires plaintiff to have been "injured **as a result** of the false advertising.") (emphasis supplied).

Finally, although Mr. Donat's speculation regarding PES' internal deliberations was certainly not credible, Ashcroft is not challenging, and this Court need not assess, his credibility in order to conclude that PES' decision to disqualify WIKA had nothing to do with Ashcroft's advertisement.  PES disqualified the XSEL because, as PES' agent wrote, "I have been directed by PES … to comply with PES Standard 0435 regarding case material.  The WIKA offering is considered not technically acceptable because of the

POCAN case material." *See* PTX 128 [Dkt. 397], at p. 1. It was PES' own internal standards, and not Ashcroft, that drove the decision. A presumption of injury cannot withstand scrutiny in these circumstances.

## II.   WIKA DID NOT PREVAIL ON ITS CLAIM FOR TORTIOUS INTERFERENCE BECAUSE INJUNCTIVE RELIEF IS UNAVAILABLE

As set forth more particularly in Ashcroft's Motion, the jury finding of tortious interference is unsupported and against the weight of the evidence in part because the award of $0 in compensatory damages precludes WIKA from meeting a required element of the tort (*i.e.,* injury). *See* Motion, at pp. 11-12. WIKA insists in its Opposition that no showing of injury was required because it is "still entitled to injunctive relief." *See* Opposition, at p. 13. WIKA is incorrect, both because it never sought that remedy and because it is unavailable as a matter of law in any event.

First, WIKA never sought injunctive remedy for tortious interference. In its First Amended Complaint, WIKA sought "damages due to Ashcroft's tortious interference" and "punitive damages in an amount to be determined at trial." *See* Dkt. 40, ¶¶ 139 & 142. And WIKA's prayer for relief seeks only "actual damages, lost profits and punitive damages" on the tortious interference claim. *Id.*, pg. 40(e). In fact, there is no mention of injunctive

relief for tortious interference in any submission made by WIKA before trial. Indeed, WIKA's outline of the case in the joint pretrial order requested only actual and punitive **damages** on its tort claim, and made **no mention** of injunctive relief in its statement of the legal issues to be tried in connection with that claim. *See* Joint Pretrial Order, at Dkt. 208-4, pp. 18-19 & Dkt. 208-7, pp. 2-4. WIKA later re-affirmed this waiver during the post-trial phase by failing to request an award of injunctive relief in either its initial proposed judgment or in the subsequent briefing filed in support of that proposed judgment. *See* Dkt. Nos. 402 (WIKA's May 5, 2016 proposed judgment) & 409 (WIKA's May 23, 2016 response to Ashcroft's proposed judgment). WIKA cannot now revive a waived remedy as part of a belated effort to cure its inability to prove injury in connection with its tort claim. *See Morro v. City of Birmingham*, 117 F.3d 508, 515-16 & n. 3 (11th Cir. 1997) ("Counsel may waive the right to have an issue decided by failing to identify the issue to the court at the pretrial conference ….").

Second, WIKA would still be barred from seeking injunctive relief as a matter of substantive law even if it had not waived that remedy. This is because WIKA had an adequate remedy at law on its tort claim (*i.e.,* monetary damages) and elected to pursue it. WIKA is bound by that decision

and cannot now take a second bite at the apple on injunctive relief simply because it was unable at trial to prove damages. *See, e.g., Tiller v. State Farm Mut. Auto. Ins. Co.*, No. 1:12-CV-3432-TWT, 2013 WL 451309, at *8 (N.D. Ga. 2013) ("It is axiomatic that equitable relief is only available in the absence of an adequate remedy at law."); *Liniado v. Alexander*, 199 Ga. App. 256, 258 (1991) (where party elects to proceed in law for damages, and the suit is cognizable at law, equity is without jurisdiction unless the legal remedy is inadequate). As a consequence, WIKA cannot prevail on its tort claim, and also cannot utilize that unsuccessful claim as a vehicle for its ancillary claim to recover costs and fees under Fed. § 13-6-11. *See* Motion, at pp. 11-17; *see also Barnett v. Morrow,* 196 Ga. App 201, 202, 396 S.E.2d 11, 12 (1990) (§ 13-6-11 relief is "ancillary and recoverable only in cases where other elements of damages are recoverable.").

## III.   THE JURY'S AWARD OF PROFITS AND DAMAGES TO WIKA IS EXCESSIVE, UNSUPPORTED AND AGAINST THE WEIGHT OF THE EVIDENCE

### A.   WIKA Failed To Prove a Causal Connection Between Ashcroft's Profits and the Product Information Page

In its Motion, Ashcroft has shown that the jury's award of $3.3 million in disgorged profits is fatally flawed because there is no evidence whatsoever that Ashcroft made a single sale **because of** the Product

Information Page. *See* Motion, at pp. 18-22. Instead of responding to the substance of this argument, WIKA sets up a straw-man in its Opposition. Specifically, WIKA suggests that "[c]ontrary to Ashcroft's argument, the Eleventh Circuit explicitly ***does not*** require any actual damages as a prerequisite to an award of profits." *See* Opposition, at p. 18 (emphasis in original). But Ashcroft made no such argument in its Motion.  Disgorgement does not require proof that a plaintiff lost sales.  The error identified by Ashcroft is fundamentally different.

This is the error: because disgorgement may only compensate, not penalize, *see* 15 U.S.C. § 1117(a), plaintiffs must prove a causal connection between harm (*i.e.*, a false advertisement) and the profits sought to be disgorged. Absent proof that a false advertisement enabled the defendant to gain specific profits from its wrongdoing, "disgorgement" would, by definition, be a penalty. *See Trilink*, 583 F. Supp. 2d at 1322-23; *see also KEG Tech., Inc. v. Laimer,* 436 F. Supp. 2d 1364, 1373 (N.D. Ga. 2006) ("…any award of profits should be limited to those profits [defendants] enjoyed **as a consequence** of selling certain misidentified products in an early SEC catalogue…") (emphasis supplied); *Castrol, Inc. v. Pennzoil Quaker State Co.*, 169 F. Supp. 2d 332, 343 (D.N.J. 2001) ("Surely,

[plaintiff] must demonstrate with reasonable certainty the portion of [defendant's] profits attributable to the willful and intentional false advertising before the Court can order disgorgement.").

WIKA makes no effort in its Opposition to identify evidence of a causal connection between the Product Information Page and Ashcroft's profits, and none exists in the record.[4] Ashcroft is thus entitled to judgment as a matter of law and/or a new trial on the award of disgorged profits.

### B.    The Jury's Calculation of Actual Damages Was Improper

In its Opposition, WIKA does not contest that the jury failed to deduct the expenses that would have been associated with WIKA's PES bid before awarding $12,189.46 in actual damages. Instead, WIKA appears to argue that the jury award is "close enough" because Ashcroft purportedly waived its objections to this Court's instructions and never presented this argument to the jury. Neither argument has merit.

First, Ashcroft did not object to this Court's instruction on actual damages – either at the charge conference or following the jury charge – because in both instances this Court properly instructed that the $12,189.46

---

[4] WIKA is also wrong that Ashcroft waived its objection to the jury instruction on this issue. That objection, along with Ashcroft's objection to the non-neutrality of the instructions, was properly preserved. *See* Trial Tr., Vol. IX (charge conference) [Dkt. 416], at 13-14, 19-20, 37-38, 174-76.

amount represented WIKA's "contention" as to the amount of the sale, and left the question of "whether that amount should be awarded" to the jury. *See* Trial Tr., Vol. IX [Dkt. 416], at 36:22 – 37:7; 144:25 – 145:21. In these circumstances, it is specious for WIKA to contend that this Court endorsed the $12,189.46 amount as a proper measure of damage, or that Ashcroft waived any rights by failing to object to an instruction that did not relieve the jury of its obligation to deduct expenses as part of its calculation of actual damages. *See id.*, at 156:4 – 156:10.

Equally disingenuous is WIKA's suggestion that Ashcroft failed to bring this issue to the attention of the jury. Ashcroft's counsel did exactly that by arguing as part of his closing that: "[t]here's not a shred of evidence that Philadelphia Energy was influenced in any way whatsoever by the Product Information Page. And that **$12,000** that Mr. Clark just talked about, **that's the amount that they were going to bid for the deal. That's not damage to WIKA**. That's an unsustainable number as well." Trial Tr., Vol. IX (Ashcroft closing) [Dkt. 416], at 98:7 – 98:12 (emphasis supplied). Simply put, Ashcroft properly preserved this argument, and the jury erred by failing to deduct WIKA's expenses before awarding actual damages.

## IV.   THE JURY'S FINDINGS REGARDING ASHCROFT'S COUNTERCLAIM WERE AGAINST THE WEIGHT OF THE EVIDENCE

### A.    WIKA's Own Witnesses Admitted Literal Falsity

The argument of WIKA's counsel that the Durability Advertisements were "mistakes," while not evidence, correctly summarized the testimony of WIKA's witnesses. When asked whether it was "inappropriate" for WIKA to have run its advertisements without supporting data, WIKA's former president testified that "[y]eah. But, again, we make **mistakes** …" *See* Trial Tr., Vol. VIII (Gerster) [Dkt. 415], at 150:24 – 151:3. Similarly, when asked about inaccurate claims made in another ad, WIKA's chief engineer testified that "[t]he compromise to accuracy, I believe, was a marketing **mistake**." *See* Trial Tr., Vol. VII (Wang) [Dkt. 405], at 75:17 – 75:21; 86:9 – 86:11. Finally, WIKA's then-marketing director expressed concerns to his superiors that WIKA could not "legally" advance its claims absent test results. *See* DTX 159 [Dkt. 397]. The admission that the Durability Advertisements were "mistakes" came from WIKA's counsel **and** its witnesses.

### B.    The Durability Advertisements Contained "Tests-Prove" Claims

WIKA's Opposition criticizes Ashcroft for "mistakenly assum[ing]" that the Durability Advertisements advance "tests-prove" claims because, it

11

says, the jury "made no such finding." *See* Opposition, at p. 43. While the jury was not asked that question specifically, the evidence established conclusively that the Durability Advertisements made tests-prove claims.

WIKA's argument simply ignores the explicit statement in the 5 Times Longer Advertisement that "studies have shown" the XSEL lasting 5 times longer than competing brands. *See* DTX 4 & 276-80 [Dkt. 397]; *see also Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1309 (11th Cir. 2010) (advertising that cites a scientific or validating test constitutes a "tests prove" claim). WIKA similarly overlooks that a tests prove claim can be implied from the context of the advertisement or from the inclusion of a specific numerical comparison. *See id.* at 1309 n. 6 ("When an advertising claim of favorable fact either **expressly or impliedly** asserts that the facts is test or study-validated, the fact of the validation becomes an integral and critical part of the claim.") (emphasis added); *see also Euro-Pro Operating, LLC v. Euroflex Americas*, No. 08CV6231(HB), 2008 WL 5137060, at *7 (S.D.N.Y. 2008) (reliance on "scientific testing through innuendo" constitutes tests prove claim); *WL Gore Assocs., Inc. v. Totes, Inc.*, 788 F. Supp. 800, 809 (D. Del. 1992) (a "numerical comparison gives the impression that the claim is based upon independent testing…."). This is

12

precisely what WIKA did with the 10 Million Cycle and 2.5 Times Longer Advertisements.

Indeed, both of these advertisements quantify the alleged superiority of the XSEL gauge by making a specific numeric claim that could only have been derived from testing. *See, e.g.,* DTX 4 [Dkt. 397] ("…the XSEL pressure system is capable of producing **10 million** pressure cycles without any negative effects to the accuracy.") & DTX 3 [Dkt. 397] (stating that the AWS System "extends gauge life **2.5 times** longer.") (emphasis supplied). The context within which these claims appear also leads to the conclusion that they were validated by tests. For example, WIKA deployed these claims within one sentence of a statement that "studies have shown," *see* DTX 4, 276 & 278-79 [Dkt. 397], within the same paragraph as an assertion that WIKA had "experimented" with new designs and performed "additional testing," *see* DTX 280 [Dkt. 397], and within a brochure beginning with a boast that the XSEL gauge was the product of "years of research." *See* DTX 3 [Dkt. 397]. WIKA is therefore wrong to assert that its Durability Advertisements do not contain tests prove claims. *See, e.g., Osmose, Inc.,* 612 F.3d at 1311 (advertisement advances tests prove claim where test

"findings" were referenced in either the "same sentence" or in "closely surrounding text" to a promotional claim).

        C.    <u>Ashcroft Is Entitled To Presumptions of Deception and Injury</u>

In its Opposition, WIKA suggests that the jury ruled against Ashcroft with respect to the deception, materiality and injury caused by the Durability Advertisements. *See* Opposition, at p. 39. This is a distortion of the verdict. In reality, the jury was asked whether the Durability Advertisements met **<u>all</u> <u>three</u>** elements. *See* Jury Verdict, Dkt. 388, at Question No. 30. The negative response could therefore mean that the jury found in Ashcroft's favor with respect to one or two of the elements, but not all three. *See* Motion, at p. 43 n.20. WIKA is therefore incorrect to conclude that the jury made findings "on lack of deception or injury."

WIKA is also wrong on the merits of its argument that its ads did not cause deception or injury. For the reasons described in Section VII.A of the Motion and Section IV.A of this Reply, the Durability Advertisements are willfully false. And WIKA is incorrect to assert that they are not "comparative." *See* Opposition, at p. 39. Indeed, the 5 Times Longer Ads make an explicit comparison between the XSEL and "competing brands," and frequently appear in the same paragraph or brochure as the 10 Million

Cycle and 2.5 Times Longer Advertisements. *See* DTX 3-4 & 276-80 [Dkt. 397]; *see also Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1251 (11th Cir. 2002) (utilizing context to determine whether a "consumer might imply a comparison of the two products" when an advertisement explicitly referencing a competitor is "paired" with one that does not). No more was required for the presumptions to attach.

The evidence was also insufficient to rebut these presumptions. As WIKA notes correctly, the defendant has the burden of rebuttal with respect to presumptions of deception and injury. **<u>WIKA</u>** therefore bears that burden of rebuttal with respect to Ashcroft's counterclaims. Ashcroft introduced evidence at trial that WIKA had engaged in a deliberate campaign to convert Ashcroft's distributors using the Durability Advertisements, and succeeded in converting one such distributor. *See* DTX 83 [Dkt. 397] & Trial Tr., Vol. V [Dkt. 414], at p. 47. WIKA has no response to that evidence, and the presumptions of deception and injury therefore stand unrebutted.

## <u>CONCLUSION</u>

WHEREFORE, for the foregoing reasons, Ashcroft respectfully requests that this Court grant its motion for judgment as a matter of law, or, in the alternative, that it order a new trial and/or remittitur as outlined above.

15

This 3rd day of October, 2016.

HOLLAND & KNIGHT LLP

*/s/ Caroline J. Tanner*
Caroline J. Tanner (GA Bar No. 392580)
Gregory J. Digel (GA Bar No. 221750)
Keisha O. Coleman (GA Bar No. 844720)
1180 West Peachtree Street, NW, Suite 1800
Atlanta, Georgia 30309
(404) 817-8500 (phone)
caroline.tanner@hklaw.com
greg.digel@hklaw.com
keisha.coleman@hklaw.com

Brian G. Leary (*pro hac vice*)
Benjamin M. McGovern (*pro hac vice*)
10 St. James Avenue
Boston, Massachusetts 02116
brian.leary@hklaw.com
benjamin.mcgovern@hklaw.com

*Attorneys for Ashcroft, Inc.*

## **CERTIFICATION OF COUNSEL**

Pursuant to Local Rule 5.1B, the undersigned counsel for Defendant files this Certification of Counsel stating that the foregoing document was prepared in Times New Roman, 14 point font.

HOLLAND & KNIGHT LLP

*/s/ Caroline J. Tanner*
Caroline J. Tanner

## **CERTIFICATE OF SERVICE**

I hereby certify that on this day, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

This 3rd day of October, 2016.

HOLLAND & KNIGHT LLP

*/s/ Caroline J. Tanner*

Caroline J. Tanner

18

#48168279_v2