1                  IN THE UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF GEORGIA
2                          ATLANTA DIVISION

3

4
WIKA INSTRUMENT I, LP, F/K/A    )
5  WIKA INSTRUMENT CORPORATION,    )
                                   )
6            Plaintiff,            )
                v.                 )   CIVIL ACTION
7                                  )   FILE NO. 1:13-CV-00043-CAP
ASHCROFT, INC.,                    )
8                                  )   TELEPHONE CONFERENCE
             Defendant.            )
9  _____)

10

11

12  ----------------------------------------------------------------

13

14           BEFORE THE HONORABLE CHARLES A. PANNELL, JR.
                    TRANSCRIPT OF PROCEEDINGS
15                       APRIL 7, 2016

16

17  ----------------------------------------------------------------

18

19          Proceedings recorded by mechanical stenography
             and computer-aided transcript produced by

20

21              WYNETTE C. BLATHERS, RMR, CRR
                   Official Court Reporter
22                  2314 U.S. Courthouse
                 75 Ted Turner Drive, SW
23              Atlanta, Georgia  30303
                    (404) 215-1547

24

25

```
 1   APPEARANCES: (Telephonically)

 2   For the Plaintiff:        ERIC SCHROEDER
                               DAMON J. WHITAKER
 3                             J. BENNETT CLARK
                               EDWIN M. COOK
 4                             Attorneys At law

 5   For the Defendant:        CAROLINE J. TANNER
                               BENJAMIN M. MCGOVERN
 6                             KEISHA O. COLEMAN
                               Attorneys at Law

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    Thursday Afternoon Session

 2                         April 7, 2016

 3                           3:30 p.m.

 4                           —  —  —

 5                    P R O C E E D I N G S

 6          MS. TANNER:  This is Caroline Tanner.

 7          COURTROOM DEPUTY:  Hey, Caroline.  This is Don.  How

 8  are you today?

 9          MS. TANNER:  Hey, Don.  I'm good.  I've got you on

10  speaker phone because I've got Keisha Coleman in my office.

11  Is that going to be okay?

12          COURTROOM DEPUTY:  Oh, of course.  The judge just

13  asks for the sake of the court reporter that before anyone

14  speaks if you could just identify yourselves because it really

15  helps her out.

16          MS. TANNER:  Sure.  Is she on now?  Or she'll get on

17  when he gets on; right?

18          COURTROOM DEPUTY:  Correct.  Yeah, we're all sitting

19  at the table, so I guess whenever, you know, before you speak

20  just identify yourself to help her out.  So I'm going to call

21  Ben and, I guess, Mr. Leary up in Boston.

22          MS. TANNER:  Yeah, I think it will just be Ben at the

23  number that I emailed to you this morning.

24          COURTROOM DEPUTY:  All right.  I'm going to put you

25  on a brief hold.  I'll be right back.
```

1          MS. TANNER:  Thank you.

2          COURTROOM DEPUTY:  Thank you.

3          MR. MCGOVERN:  Hello.  This is Ben McGovern.

4          COURTROOM DEPUTY:  Hey, Ben.  It's Don from Judge

5   Pannell's.  How are you?

6          MR. MCGOVERN:  Hey, Don.  I'm doing well.  How are

7   you?

8          COURTROOM DEPUTY:  Good.  Thanks.  I'm going to

9   connect you with Caroline; okay?

10          MR. MCGOVERN:  Okay.

11          COURTROOM DEPUTY:  Ms. Tanner, Mr. McGovern, are you

12   both still there?

13          MS. TANNER:  Yes, we are.

14          MR. MCGOVERN:  Yes.

15          COURTROOM DEPUTY:  All right.  Fantastic.  I'm going

16   to put you on a brief hold, and I'm going to get all of WIKA's

17   folks on the line.  Okay?

18          MS. TANNER:  Okay.

19          MR. MCGOVERN:  Okay.  Thank you.

20          MR. SCHROEDER:  Hello.  Eric speaking.

21          COURTROOM DEPUTY:  Hey, Eric.  It's Don from Judge

22   Pannell's.  How are you today?

23          MR. SCHROEDER:  Doing great, Don.  How about

24   yourself?

25          COURTROOM DEPUTY:  I'm doing well.  Thank you.  I'm

1  going to connect you with Ms. Tanner and Mr. McGovern.  Okay?

2          MR. SCHROEDER:  Okay.

3          COURTROOM DEPUTY:  All right.  Thank you.  Counsel,

4  is everybody still there?

5          MS. TANNER:  Yes.

6          MR. MCGOVERN:  Yes, we are.

7          COURTROOM DEPUTY:  Okay.

8          MR. SCHROEDER:  I am.  This is Eric, and with me is

9  Damon Whitaker.

10          COURTROOM DEPUTY:  All right.  Counsel, Judge has

11  asked if you could just identify yourself before you speak for

12  the sake of the court reporter.  Thank you.

13          THE COURT:  All right.  This is Judge Pannell, and

14  this is Case 13-CV-43, WIKA v. Ashcroft.  I do have a court

15  reporter taking this telephone conference down.

16          Now, let me make sure.  For WIKA Instruments I have

17  on the line Eric Schroeder and Damon Whitaker.  Are there any

18  other attorneys on the line for WIKA?

19          MR. SCHROEDER:  Judge Pannell, this is Eric

20  Schroeder.  Also in the room today is Bennett Clark and Win

21  Cook.

22          THE COURT:  Okay.  All right.  And as for Ashcroft, I

23  know I have Caroline Tanner.

24          MS. TANNER:  Yes, sir.

25          THE COURT:  And Benjamin McGovern.  And who is the

1  other?

2          MR. MCGOVERN:  Yes, your Honor.  This is Benjamin

3  McGovern, and I'm the only one here in the room.

4          MS. TANNER:  In Atlanta, your Honor, Keisha Coleman

5  is also on the phone.

6          THE COURT:  Okay.  All right.  I sent y'all -- the

7  real reason for this phone call, we've done a lot of work

8  trying to come up with a verdict form because I've found

9  recently it helps the jury if I give them a proposed verdict

10  form at the beginning of the trial.  And I did not want to

11  blind side you with that Monday morning, so we've sent you a

12  proposed verdict form.

13          And the first thing I really want to discuss in this

14  phone call is I've done this before, and sometimes the parties

15  will actually give me a minor improvement or find a mistake in

16  my verdict form.  So let me ask, Mr. Schroeder, is there any

17  problem with the verdict form?

18          MR. SCHROEDER:  Your Honor, one, thank you for

19  putting the time into this and simplifying what is a very

20  complex matter or maybe the lawyers have made it more complex

21  than it needs to be.

22          On No. 2, underneath Lanham Act Claims, I'm looking

23  at the verdict question, do you find the flammability

24  advertisement had a material effect on consumers' purchasing

25  decisions and caused WIKA injury in violation of the Lanham

1   Act?  Are you following me, your Honor?

2            THE COURT:  Yes.  That's on page 1.

3            MR. SCHROEDER:  Okay.  My understanding of the Lanham

4   Act is to establish a violation of the Lanham Act, we only

5   need to prove the likelihood of injury and -- but we do need

6   to prove actual injury for monetary damages.  And we are

7   asking for both injunctive relief and monetary damages for the

8   flammability advertisement or PI Page.  So I'm not sure how

9   you'd like to address that but we think that the likelihood --

10           THE COURT:  It's your case.  You tell me how to

11  address that.  How should that question read?

12           MR. SCHROEDER:  Okay.  I would say and would be the

13  same as you do for the 1279 data sheet, your Honor.

14           THE COURT:  No, no, no.  No, no, no.  Look at No. 2.

15  Give me word-for-word how you think it ought to read.

16           MR. SCHROEDER:  Of course, your Honor.  Of course,

17  I'll be happy to.  Do you find that the flammability

18  advertisement, open parens, Product Information Page, closed

19  parens, had a material effect on consumers' purchasing

20  decisions and likely caused WIKA injury in violation of the

21  Lanham Act?  So the difference would be instead of -- would be

22  the insertion of likely before caused, your Honor.

23           THE COURT:  Okay.  Well, I'm going to make a note.  I

24  don't know that I'm going to buy into this but okay.  What's

25  your next thing?

1          MR. SCHROEDER:  I think that consistent with that on

2     the compensation, WIKA has proven it should recover.

3          THE COURT:  What number are you on, page and number,

4     please, sir?

5          MR. SCHROEDER:  Yes, your Honor.  This is Eric

6     Schroeder again.  Sorry.  I believe, actually, the next thing

7     would be that we had asked for enhanced damages, your Honor,

8     and we don't see that addressed in this verdict form.

9          THE COURT:  I thought it was somewhere.  Yeah, let me

10    make a note.  I'll find it in a minute.  All right.  You can

11    go on to something.  All right.  What else?

12         MR. SCHROEDER:  I see that your Honor has applied a

13    presumption on literal falsity for actual deception.

14         THE COURT:  What page and what question number are

15    you on, sir?

16         MR. SCHROEDER:  I need to slow down.  You're right.

17    Page 1, your Honor, underneath Flammability Advertisement.

18    This comment is more general.  It's not too specific language.

19    You may recall from the *Trilink* decision there are a number of

20    presumptions that may apply.  One, based on literal falsity,

21    which the Court has addressed it here; or, Two, if an ad is

22    found to be a willfully deceptive comparative advertisement.

23    If a -- underneath the *Trilink* decision if an advertisement is

24    a willfully deceptive comparative advertisement, I believe

25    that decision stands for the proposition that willful

1  deception triggers a presumption of causation and harm, which

2  in that decision you explained applied to both deception and

3  injury, your Honor.

4          THE COURT:  All right.  One of your verdict forms,

5  probably yours, had that presumption in parentheses and I've

6  taken it out because I think it's confusing.

7          Now, let me just say a verdict form doesn't contain

8  the whole charge of the court.  There will be the verdict form

9  and there will be the charge of the Court.  And it's my belief

10  I'll charge on the presumption, but I'm not going to put it in

11  the verdict form.

12          MR. SCHROEDER:  Understood, your Honor.  In our

13  verdict form we tried to simplify it by just asking whether

14  the advertisement violated the Lanham Act, and I only bring

15  this up because your Honor broke it out into two steps.  So

16  that was just our observation.

17          THE COURT:  All right.  Anything else?

18          MR. SCHROEDER:  On the counterclaims of Ashcroft --

19  and, of course, anything I say, I think, should apply equally

20  to both parties, your Honor.

21          THE COURT:  If you don't start giving me the page

22  number and question, I'm going to go over and ask Ms. Tanner

23  for her suggestions in a minute, now.  What's your page and

24  number?

25          MR. SCHROEDER:  Page 9, Section 6, Letter A.

1          THE COURT:  Question 6?

2          MR. SCHROEDER:  I'm sorry.  Section 6, your Honor.

3          THE COURT:  Okay.  All right.

4          MR. SCHROEDER:  Underneath the Court has described

5    the term "durability advertisements".  Under subsection 1 --

6    I'm sorry.  Under Subsection 3 it states, can extend gauge

7    life by 2.5 times or more, your Honor.  Are you with me?

8          THE COURT:  Yes.

9          MR. SCHROEDER:  Okay.  That subsection describes or

10   is triggered off of the phrase "the XSEL pressure gauge," and

11   I will defer to Ms. Tanner as to her claim.  But I believe

12   that what they are claiming is not that the XSEL pressure

13   gauge extends gauge life by five times or more, but instead it

14   was a product called AWS, all-welded system.  And so I believe

15   that a further clarification underneath Subsection 3 would be

16   in order to address that, and I am ready to give you language

17   if you would prefer that.

18         THE COURT:  Well, no, this is Ashcroft's claim.  Let

19   me talk to her first.  All right.  What else?

20         MR. SCHROEDER:   That's it, your Honor.

21         THE COURT:  Okay.  Ms. Tanner, your time, your

22   side's time.

23         MR. MCGOVERN:  Your Honor, this is Ben McGovern up in

24   Boston.  I'm actually going to take this part.

25         THE COURT:  All right.  That will be fine.

1          MR. MCGOVERN:  The first thing we'd like to look at,

2    your Honor, is on page 1, Section 1(a), and it's really a

3    matter of terminology.  Your Honor uses the term "flammability

4    advertisement" through here and also throughout the verdict

5    form.  That's really a phrase that's been coined by WIKA.  The

6    actual title of this document that's at issue is the "Product

7    Information Page," which you have in the parentheses.  So we

8    just believe that flammability advertisement should be struck

9    both here and throughout, and what you leave there is simply

10   the Product Information Page.  That's our first comment.

11         THE COURT:  All right.  Well, thank you.  I'm

12   probably not going to do that but okay.  What else?

13         MR. MCGOVERN:  Our second comment would be Question

14   31, which appears on page 10.

15         THE COURT:  Wait a minute.  Give me a second.  Okay.

16   I'm with you.

17         MR. MCGOVERN:  And on this Question 31 your Honor

18   included kind of a predicate threshold question of whether a

19   failure to take exception constitutes commercial advertisement

20   or promotion.

21         THE COURT:  Yes, sir.

22         MR. MCGOVERN:  That threshold question isn't repeated

23   for the other claims, and we think that it should be, your

24   Honor.  We think that's a threshold question on both sides for

25   everything that we're talking about, whether it be the Product

1   Information Page --

2          THE COURT:  Are you really contend -- are you really

3   contending that?  Because you haven't put it in your verdict

4   form on other things, and I don't really find that emphasized

5   in anything in the case.  But on this matter, this failure to

6   except these bids, or whatever you want to call them, I think

7   there is a real issue, and in the motion for summary judgment

8   I did not rule that it was in commercial advertising.  I just

9   said there wasn't enough evidence to rule against whoever -- I

10  guess rule against Ashcroft, I guess, is the way that went.

11  But do you seriously contend that these other advertisements

12  are not in commercial advertising?

13          MR. MCGOVERN:  Yeah.  Your Honor, what I --

14          THE COURT:  Come on.  You really do?

15          MR. MCGOVERN:  Your Honor, what our witnesses will

16  say is that this is something that's posted to a very obscure

17  portion of the website and gives them to distributors to use

18  if they would like.  That's why we think it should be

19  included, but I understand your Honor's point.

20          THE COURT:  No, I'd like to get this right, but I

21  want to know whether you're jerking me around or you're really

22  serious about that being an issue because I have not detected

23  that being a serious issue before in anything that either side

24  sent me.

25          MR. MCGOVERN:  Your Honor, I believe that we did put

1   it in our proposed verdict form, if I'm not mistaken.  But if

2   we haven't sufficiently highlighted it, I apologize for that.

3           THE COURT:  I'll look at it.  But, frankly, this

4   verdict -- I mean, well, this verdict form may not be the

5   final verdict form.  There are several things in this case I'm

6   going to listen to during the trial of the case and see.  So I

7   may put it in, but I just hadn't been under the impression

8   that that's a legitimate issue that warrants that kind of

9   consideration.

10          All right.  Do you have anything else?

11          MR. MCGOVERN:  Yes, your Honor, on page 3, Question

12  7.

13          THE COURT:  We're back to page 3.  All right.

14          MR. MCGOVERN:  And this is the question that has to

15  do with disgorgement of profits, your Honor.  I believe the

16  language that we had proposed we think is important because we

17  think the case law reflects this to demonstrate that the

18  profits, if any to be disgorged, need to be attributable to

19  whatever the violation is.

20          THE COURT:  Wait a minute.  What page are you on now?

21          MR. MCGOVERN:  Page 3, Question 7, your Honor.

22          THE COURT:  Okay.  All right.  I'm sorry.  All right.

23  Repeat what you said to me, please, sir.

24          MR. MCGOVERN:  Yes, your Honor.  We think that it

25  should be pointed out in this question that the profits that

1  are disgorged, if any, need to be attributable to the Product

2  Information Page or, in other words, attributable to the false

3  advertisement.  We think that should be clarified so that the

4  jury understands there needs to be that connection between

5  whatever the wrongdoing was and the profits that it is

6  disgorging.

7            THE COURT:  Well, let me read this to you:  What

8  amount, if any, has WIKA proven it should recover from

9  Ashcroft for use of the flammability advertisement, paren,

10 Product Information Page, based on the theory of an award of

11 Ashcroft's profits?  How should that be changed?

12           MR. MCGOVERN:  Your Honor, I would suggest that that

13 very last part where you start to read, based on the theory of

14 an award of Ashcroft's products that are attributable to the

15 Product Information Page.  That's all.

16           THE COURT:  Well, that just makes it redundant.  All

17 right.  What's your next matter?  I don't think that's going

18 to cause any confusion for the jury.

19           All right.  What's your next matter?

20           MR. MCGOVERN:  Your Honor, on page 4 at the very

21 bottom there's an instruction that has to do with -- it's sort

22 of a presumption that you're describing about a violation of

23 the Lanham Act can carry over to the Georgia Act, and we don't

24 see that language repeated when you get to Ashcroft's

25 counterclaims.  We just think that needs to be made

1 consistent.

2       THE COURT:  Let's see, what page?  So that ought to

3 go on page 12 before Section 7?

4       MR. MCGOVERN:  That's exactly right, your Honor.

5       THE COURT:  Okay.  What else?

6       MR. MCGOVERN:  And, your Honor, while you're on page

7 12 I think what's also missing in Section 7 on page 12 is a

8 question about attorney's fees, which appears in the WIKA

9 section but does not appear in the Ashcroft section.

10       THE COURT:  Okay.  Now, where -- let me go back and

11 look.  What page is it in the WIKA section?

12       MR. MCGOVERN:  Your Honor, it's Question 17 in the

13 WIKA section, which is on page 5.

14       THE COURT:  Okay.  All right.  What else?

15       MR. MCGOVERN:  On page 7, your Honor, Question 22,

16 which has to do with the Connecticut statute.  Our concern

17 here, your Honor, is the way it's written right now makes it

18 seem as if an award of attorney's fees is automatic if the

19 statute is violated when, in fact, we think that's something

20 that's discretionary.  And I have a citation for your Honor if

21 you'd like to take a look.

22       It's a Connecticut Appeals Court Case 646 A.2d 888.

23 And the name of your case -- the name of the case, your Honor,

24 is *Stale v. Michael's Garage, Inc.*

25       THE COURT:  Okay.  And what does it say, please, sir?

1        MR. MCGOVERN:  What it says, your Honor -- and I'm

2    reading from it on page 890.  It says, according to the

3    statute, the Court, in italics, may award the plaintiff, in

4    addition the relief provided in the section, costs and

5    reasonable attorney's fees.  We just think that language

6    should be reflected so that the jury doesn't get the idea

7    that --

8        THE COURT:  All right.  So how do you think 22 should

9    be worded?

10       MR. MCGOVERN:  Do you find in your discretion --

11   strike that, your Honor.  Do you find that Ashcroft violated

12   the Connecticut Unfair Trade Practices Act, thus entitling, in

13   the exercise of your discretion, WIKA to an award of

14   attorney's fees?

15       THE COURT:  Okay.  All right.

16       MR. SCHROEDER:  Your Honor, this is Eric Schroeder.

17       THE COURT:  Wait a minute.

18       MR. SCHROEDER:  Okay.

19       THE COURT:  That's sort of confusing.  All right.

20   What is it, Mr. Schroeder?

21       MR. SCHROEDER:  If you are to employ that language,

22   we only ask that on page 13, Question 46, that the language be

23   repeated for Ashcroft's claim for attorney's fees.

24       THE COURT:  Question 13?

25       MR. SCHROEDER:  I'm sorry.  Page 13, Question 46.

1    It's the mirror image of --

2            THE COURT:  Okay.  Comma in your discretion.  All

3    right.  What else?

4            MR. MCGOVERN:  Your Honor, this is Mr. McGovern

5    again.  That's all I have at this point, and I wanted to echo

6    what Mr. Schroeder said about thank you for taking the time to

7    put this together.  I think it's very helpful.

8            THE COURT:  I wish y'all had put this together rather

9    than -- you can't -- this must be the tenth or eleventh draft

10   of this thing.  Okay.

11           MS. TANNER:  Your Honor, this is Caroline Tanner.

12   I'm sorry to add one more, but I believe Mr. McGovern

13   overlooked one that I would like the Court to consider.

14           THE COURT:  Okay.

15           MS. TANNER:  On page 2, No. 6.  This is a question

16   about whether Ashcroft's conduct is willful or deliberate.  In

17   Section C the wording is, an award of Ashcroft's profits is

18   necessary to deter Ashcroft's future.  We would like the word

19   "wrongful conduct" added just to that sentence.

20           THE COURT:  Okay.

21           MS. TANNER:  Thank you.

22           COURTROOM DEPUTY:  Well, let's see.  Is that over in

23   WIKA's too?  Do we need to add that in WIKA in the Ashcroft

24   portion?

25           MR. SCHROEDER:  This is Eric Schroeder.  No, your

1   Honor.  Disgorgement of profits is only for WIKA.

2            THE COURT:  We got rid of that.  Okay.  All right.

3   Let me -- I'm sorry.

4            MS. TANNER:  This is Ms. Tanner again.  I'm sorry.

5   I'm chiming in very late, and I apologize.  On page 6 under

6   the Connecticut Unfair Trade Practice question that's Roman

7   Numeral 3, and it would be No. 18 under WIKA's claims.  And

8   there's a corresponding paragraph for Ashcroft's claims.  The

9   question reads, do you find that the flammability

10  advertisement, paren, Product Information Page, violated the

11  Connecticut Unfair Trade Practice Act?  And then you've got

12  yes or no.  I believe there is a separate element that is --

13  it's required that injury or damage be shown in order to

14  recover under the Connecticut Unfair Trade Practice Act under

15  the statute.

16           So we would just like to have added to Question 18

17  and then the corresponding question presumably, and caused

18  WIKA injury or such that a violation caused WIKA injury.

19           THE COURT:  Do you agree, Mr. Schroeder?

20           MR. SCHROEDER:  No, your Honor.  We think it should

21  stay as it is.  You're going to be giving jury instructions on

22  what is required.  And, your Honor, on the last question --

23           THE COURT:  Wait a minute.  Wait a minute.  Give me a

24  minute here.

25           MR. SCHROEDER:  Of course.

```
 1          THE COURT:  All right.  What is it, Mr. Schroeder?
 2          MR. SCHROEDER:  Okay.  I'm sorry.  Page 2, Question
 3  6, that Tanner just addressed about describing an award of
 4  Ashcroft's profits?
 5          THE COURT:  Right.  I'm with you.
 6          MR. SCHROEDER:  And they wanted to add the word
 7  "wrongful" in between future and conduct.
 8          THE COURT:  Yes.
 9          MR. SCHROEDER:  I just want to put on record that we
10  object to that addition and that we proposed the Eleventh
11  Circuit pattern jury instructions, and we would like to stay
12  with that.
13          THE COURT:  Okay.  All right.  Anything else on the
14  verdict form?
15          MS. TANNER:  No, sir.  Thank you.  This is
16  Ms. Tanner.
17          THE COURT:  Okay.  Let me just ask a couple of
18  things.  WIKA is claiming that you want a verdict and I've
19  gotten a verdict form about corrective advertising.  But at
20  this point WIKA has not undertaken on its own any corrective
21  advertising that you're going to present evidence as to the
22  amounts of money you spent; is that correct?
23          MR. SCHROEDER:  This is Eric Schroeder.  That is
24  correct, your Honor.  When we ask for corrective advertising,
25  we are not asking for corrective advertising costs.  We are
```

1   asking for injunctive relief of corrective advertising.

2          THE COURT:  So if you were to win, you think the

3   injunction is going to say and Ashcroft has to undertake

4   corrective advertising?

5          MR. SCHROEDER:  Something along the lines of a

6   disclaimer, your Honor.  It would not be a disclaimer, of

7   course, but one for the data sheet.  They would have to

8   affirmatively disclose that the rear cover is made of

9   polypropylene, and also for the Flammability Ad, that they

10  would be required to correct the falsities that we believe are

11  in that PI Page.

12         THE COURT:  On any future publication?

13         MR. SCHROEDER:  Yes.  And, also, I think we are

14  asking for an affirmative statement from Ashcroft that the

15  previously released flammability advertisement PI Page

16  contains the falsities that are found through this trial.

17         THE COURT:  Well, I guess what I'm building up to is

18  what you're going to ask for going to cause any expense to

19  Ashcroft.

20         MR. SCHROEDER:  I assume -- yeah.  I mean, we've not

21  gone into a deep analysis of what that expense would be, but I

22  assume they would have some internal expense to change some

23  advertisement and create something new.  And, also, we would

24  ask that they disclose it to their distributors and on their

25  website which -- excuse me.

1          THE COURT:  Okay.  Well, when I say okay, I don't

2    know that I'm agreeing to all this.  We'll see how it turns

3    out, but I just want to make sure of your position.

4          MR. SCHROEDER:  Thank you, your Honor.

5          THE COURT:  All right.  Now, also, this exceptional

6    case for attorney's fees, have y'all figured out the standard

7    that I've got to charge for the jury to decide whether it's an

8    exceptional case or not?

9          MR. SCHROEDER:  This is Eric Schroeder --

10         THE COURT:  I don't know if it would take bad faith

11   or it just takes mistake or, I mean, the research I've done

12   various courts are all over the place, and I really haven't

13   found anything in the Eleventh Circuit.

14         MR. SCHROEDER:  This is Eric Schroeder again, your

15   Honor.  We found the same thing.  I mean, we, subject to the

16   jury instructions, which I believe was substantially similar,

17   if not identical, to Ashcroft's instruction on exceptional

18   case, we did not find anything that really explained it more.

19   It sounds like exceptional case is really in the eyes of the

20   beholder, so my personal opinion would be, yeah, you would

21   have to find some sort of bad faith or intent.  Otherwise, why

22   would it be exceptional?

23         THE COURT:  Well, if that's both y'all's position, I

24   don't guess I can make any error of whatever I do.

25         Okay.  And then this prejudgment interest, how is the

1   plaintiff going to approach prejudgment interest?

2          MR. SCHROEDER:  I believe under the -- this is Eric

3   Schroeder.  I'm sorry, your Honor.  I tend to jump before I

4   look here.  On prejudgment interest, I believe underneath the

5   Lanham Act prejudgment interest is awardable under equitable

6   means, under an equitable standard.  So there's not really

7   anything else to guide, I think, a jury as far as when or when

8   not a prejudgment interest should be awarded.  It's more in

9   their discretion, much like Mr. McGovern was describing for

10  attorney's fees underneath CUTPA.

11         THE COURT:  Well, it may be in their discretion, but

12  it has to be computed.  How do they compute it?  I mean,

13  whatever dispute present -- you plan to present in this case

14  for them to make any kind of computation about prejudgment

15  interest -- because evidently you haven't spent any money on

16  corrective advertising for that to become involved.  So I

17  guess we're on some kind of cash flow or --

18         MR. SCHROEDER:  Okay.  Your Honor, this is Eric

19  Schroeder.  I misunderstood your question.  Are you asking us

20  what sort of percentage to the Court -- to the jury that we

21  would suggest would be prejudgment interest?

22         THE COURT:  Well, that would be part of it.  That's

23  part of it.  The other part is what do you base -- to have

24  interest you've got to figure out a principal.

25         MR. SCHROEDER:  That's right, your Honor, and we have

1   not been so optimistic as to lay down what exactly we think

2   the jury will award us, if anything.  But I think it would be

3   something along the lines of 7 percent of any amounts that

4   they award us dating back to the filing of the complaint in

5   January of 2013.

6         THE COURT:  I found some cases that talked about

7   deprivation of cash flow and stuff, things like that but --

8         MR. SCHROEDER:  Your Honor, if you would like us to

9   delve deeper into that and provide you some comment or

10   suggestions, we'd be happy to do that.

11         THE COURT:  Well, whatever you think best.  It's your

12   case.  But the jury can't just make this up out of thin air

13   anymore than the Court can and I never -- when I first ran

14   into this, I'm thinking, well, all this is an unliquidated

15   amount, and usually you don't get interest on an unliquidated

16   amount.  However, if say WIKA had undertaken pretrial

17   corrective advertising two years ago, half a million dollars,

18   I can see where you might be entitled to prejudgment interest.

19   But here you're just claiming interest on an unliquidated

20   amount of damages.

21         MR. SCHROEDER:  And I understand your comment, your

22   Honor.  I mean, and now you're raising up in my mind Georgia

23   state law on post judgment interest versus pretrial interest.

24   I believe underneath the Lanham Act, though, we can seek on

25   principles of equity the interest that we would get from the

1  judgment.  Again, I think you have pointed out a very good

2  issue, and we will go down and we will investigate this and be

3  prepared to discuss it with you Monday morning, if that suits

4  your Honor.

5      THE COURT:  Well, I'm not going to give you much time

6  Monday.  I'm going to strike a jury and start the trial.  We

7  can discuss it at some point, I guess.

8      MR. MCGOVERN:  Your Honor, this is Mr. McGovern.  The

9  only thing that I would point out in that regard is

10  Mr. Schroeder just said -- and we'll take a look at this too

11  so that we can be better educated when we next speak about it.

12  But to the extent it's an equitable issue, I think your Honor

13  recalls that we filed a motion to bifurcate, and it's still an

14  open question, which portions of this jury verdict form would

15  be advisory and not advisory.  We would certainly suggest that

16  if that's an equitable issue, that that would be advisory or

17  perhaps best left on the cutting room floor and taken care of

18  after trial, if necessary.

19      THE COURT:  Well, it doesn't really matter whether

20  it's for me or the jury.  I'm asking Mr. Schroeder what

21  evidence it is that's going to be presented for either the

22  Court or the jury to make any kind of determination.

23      MR. MCGOVERN:  I understand, your Honor.

24      THE COURT:  All right.  Anything else we need to talk

25  about?  I'm not going to be available after lunch -- wait a

1  minute -- tomorrow, but hold on just a minute.  Let me talk to

2  my -- let me see about this.  Put them on hold.  I'm going to

3  put y'all on hold just a minute.

4          (Brief Pause.)

5          THE COURT:  All right.  My law clerks have brought up

6  something, Mr. Schroeder.  On page 1, Question 2 --

7          MR. SCHROEDER:  Yes, your Honor.  I'm with you.

8          THE COURT:  -- the way I understood it and the way I

9  marked this you want me to add the word "likely" in Question 2

10 after the word "and" so it would read "and likely caused WIKA

11 injury;" is that correct?

12         MR. SCHROEDER:  That is correct, your Honor.

13         THE COURT:  Okay.

14         MR. MCGOVERN:  Your Honor, this is Mr. McGovern, if I

15 could just be heard on that really quickly.  We would object

16 to that, and the reason why is I think, as your Honor has

17 rightly drafted this, there needs to be actual injury in order

18 to link the damages.  And if that word "likely" is included

19 and the jury answer yes, they go straight to No. 5, which is

20 the damages amount, which allows them to conclude that damages

21 should be awarded based on just a likelihood of injury, which

22 we don't think is appropriate.

23         THE COURT:  Well, see, Mr. Schroeder wants to put

24 that in there to get an injunction even if they don't find

25 actual injury, which it's his case but -- they not going to

1  tell him how to run his case but that's really -- I'll be

2  honest with you.  When I put you on hold, that's what my law

3  clerk thought.  I don't want to add another question, but I

4  think I can take care of that in the charge.  I think I can

5  make it clear enough in the charge that the jury understands

6  if there's no injury, no damages.

7          MR. SCHROEDER:  And, your Honor, this is Eric

8  Schroeder, and we agree.  I mean, we cannot get monetary

9  damages unless we've proven injury from which they can

10 award money.  I think you can address that in question -- on

11 page 2, Question 5, has WIKA proven it should recover from

12 Ashcroft.

13         THE COURT:  Okay.  All right.  Now, you understand at

14 the end of the case I give the charge, and I have it typed up

15 and sent out to the jury.  This one will look like a manual, I

16 guess, more than a charge because it's going to be very long,

17 but the jury will have the written charges out with them

18 during deliberations.

19         MR. SCHROEDER:  Yes.  Thank you, your Honor.

20         THE COURT:  There's one other thing, y'all.  Oh.  I

21 think I have a motion, this motion for sanctions, and there's

22 some kind of motion you filed about how you want to bring that

23 up at trial.  I'm not going to rule on this any further.  I'm

24 going to listen to the matter at trial about these missing

25 photographs or late discovered photographs before I impose any

1    further sanction.

2           Now, if Mr. -- if WIKA is going to bring that up

3    during the trial and it may be relevant to bring up depending

4    on how your trial develops, it may be relevant to bring up the

5    late production of the photographs.  But at this point I don't

6    feel compelled to give any charge on any kind of assumption

7    about it, but we'll see how the evidence develops.  I'd like

8    to hear the evidence about it and decide just how crucial the

9    missing photographs were to the plaintiff's case.

10          The think the defendant makes a good point that while

11   the photographs in my mind are interesting and they're

12   certainly not as pretty as the photographs they use in the

13   advertisement, I'm not sure how much it affects the

14   plaintiff's ability to proceed with their case and how much

15   any kind of -- what's the word I want -- assumption ought to

16   be made.

17          Any questions about that?

18          MR. SCHROEDER:  Yes, your Honor.  This is Eric

19   Schroeder.  I understand the judge's ruling, and just for my

20   own confirmation and for the team, if it becomes relevant that

21   documents or drafts that were produced in the last six weeks

22   or eight weeks is a relevant question for a witness, you will

23   assess that question at the time?

24          THE COURT:  Yes, sir.

25          MR. SCHROEDER:  Okay.  I got it.  Thank you.

1           THE COURT:  Yeah.  I can rule from the bench.  I do

2    not need a motion in limine.

3           MR. SCHROEDER:  I hear you.

4           THE COURT:  All right.  Well, y'all have a good

5    weekend.  I'll see you at 9:00 o'clock Monday morning.

6           MR. SCHROEDER:  Thank you.

7           THE COURT:  Wait a minute.  Let me ask my deputy

8    clerk.  Is there anything else?

9           COURTROOM DEPUTY:  I don't think so.

10          THE COURT:  All right.  Thank you very much.

11          MR. MCGOVERN:  Thank you, your Honor.

12          MS. TANNER:  Thank you.

13          (Whereupon, the proceedings were adjourned at 4:10

14   p.m.)

15                        -  -  -

16

17

18

19

20

21

22

23

24

25

1                        REPORTERS CERTIFICATE

2

3

4          I, Wynette C. Blathers, Official Court Reporter for

5    the United States District Court for the Northern District of

6    Georgia, with offices at Atlanta, do hereby certify:

7          That I reported on the Stenograph machine the

8    proceedings held in open court on April 7, 2016, in the matter

9    of WIKA INSTRUMENT, LP V. ASHCROFT, INC., Case No.

10   1:13-CV-00043-CAP; that said proceedings in connection with

11   the hearing were reduced to typewritten form by me; and that

12   the foregoing transcript (Pages 1 through 28) is a true and

13   accurate record of the proceedings.

14          This the 23rd day of January, 2017.

15

16

17

18                          _____

                            /s/ Wynette C. Blathers, RMR, CRR
19                              Official Court Reporter

20

21

22

23

24

25