IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **WIKA INSTRUMENT, LP,** ) | |
| ) | |
| **Plaintiff,** ) | |
| v. ) | Civil File No. 1:13-cv-00043-CAP |
| ) | |
| **ASHCROFT, INC.,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## JOINT NOTICE OF SETTLEMENT

WIKA Instrument, LP ("WIKA") and Ashcroft, Inc. ("Ashcroft") hereby provide notice that the parties have reached a settlement in this action.

WIKA and Ashcroft further provide notice that Ashcroft has satisfied the monetary portions of the Final Amended Judgment entered on December 21, 2016 to the extent that Ashcroft has paid all sums due to WIKA as ordered by the Court. [Dkt. 481 at ¶¶ 1, 4, 5].

WIKA and Ashcroft further provide notice that the settlement agreement between the parties addresses the equitable relief referenced in the Final Amended Judgment, in that the settlement agreement contains a corrective advertising requirement and an injunctive requirement substantially similar to that ordered in the Final Amended Judgment, with certain clarifications agreed to by the parties as set forth in Attachment A.

1

[Dkt. 481 ¶¶2, 3; Settlement Agreement ¶¶ 3.2 – 3.3]. WIKA has agreed that it will only seek to enforce the equitable requirements as set forth in the Settlement Agreement.  The parties stipulate and request that the Court retain jurisdiction to enforce the terms of the settlement agreement.

WIKA further hereby withdraws the following, effective with this filing: a)  WIKA's Bill of Costs and supporting filings [Dkt. Nos. 443 and 462]; b) WIKA's request to set the amount of sanctions against Ashcroft and supporting filings [Dkt. Nos. 417 and 421]; and c) WIKA's Motion for Attorneys' Fees and Litigation Expenses and supporting filings [Dkt. Nos. 438, 454, 455, 456, 457, 458, 471, 477, 479, 482, and 488].  Ashcroft also withdraws its respective oppositions and related filings.  [Dkt. Nos. 453, 420, 468, 478, and 484].

Respectfully submitted this 27th day of March, 2017.

| /s/ Eric P. Schroeder | /s/ Caroline Johnson Tanner |
|---|---|
| **BRYAN CAVE LLP** | **HOLLAND & KNIGHT LLP** |
| Eric Schroeder (Ga Bar 629880) | Caroline J. Tanner (Ga Bar 392580) |
| Christopher Galanek (Ga Bar 282390) | Gregory J. Digel (Ga Bar 221750) |
| Damon Whitaker (Ga Bar. 752722) | |
| C. Angelia Duncan (Ga Bar. 682649) | 1180 W. Peachtree Street NW |
| Aiten McPherson (Ga Bar 439899) | Suite 1800 |
| One Atlantic Center, 14th Floor | Atlanta, Georgia 30309 |
| 1201 West Peachtree Street, NW | Telephone:  (404) 817-8500 |
| Atlanta, Georgia 30309 | caroline.tanner@hklaw.com |
| Telephone:  (404) 572-6600 | greg.digel@hklaw.com |
| eric.schroeder@bryancave.com | |

chris.galanek@bryancave.com
damon.whitaker@bryancave.com
angelia.duncan@bryancave.com
aiten.mcpherson@bryancave.com

J. Bennett Clark
*Admitted Pro Hac Vice*
211 North Broadway, Suite 3600
St. Louis, Missouri 63102

**HAYNES AND BOONE, LLP**
Felicity Fowler
Mark Trachtenberg
*Admitted Pro Hac Vice*
1221 McKinney Street, Suite 2100
Houston, Texas  77010
Telephone: (713) 547-2000

*Attorneys for WIKA Instrument, LP*

Brian G. Leary
Benjamin M. McGovern
*Admitted Pro Hac Vice*
10 St. James Avenue
Boston, Massachusetts 02116

*Attorneys for Ashcroft, Inc.*

### **Local Rule 7.1(D) Certification of Compliance**

I hereby certify that the foregoing pleading has been prepared with Century Schoolbook font, 13 point, one of the font and point selections approved by the Court in L.R. 5.1B, N.D. Ga.

<u>**/s/ Eric P. Schroeder**    </u>
Georgia Bar No. 629880

### **CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed the foregoing **Joint Notice of Settlement** with the Clerk of Court using the CM/ECF system which will send email notification of such filing to all counsel of record.

This 27th day of March, 2017.

<u>**/s/ Eric P. Schroeder**    </u>
Georgia Bar No. 629880

4

# Attachment A

*Excerpts from Parties' Settlement Agreement Concerning Equitable Relief*

**SECTION 1
DEFINITIONS**

As used in this Settlement Agreement and Release:

**1.1** "*Agreement*" means this Settlement Agreement and Release.

\*\*\*

**1.3** "*Ashcroft*" means Ashcroft, Inc.

\*\*\*

**1.7** "*Effective Date*" means the last date on which any Party executes this Agreement.

**1.8** "*Enjoined Parties*" means Ashcroft, and Ashcroft's agents, employees, representatives, attorneys and all other persons in active concert or participation with them.

**\*\*\***

**1.11** "*Product Information Page/Flammability Ad*" means Joint Exhibit 1.

\*\*\*

**1.13** "*WIKA*" means WIKA Instrument, LP.

\*\*\*

**1.15** "*1279 Data Sheets*" means Joint Exhibit 18 and Plaintiff's Exhibit 1.

\*\*\*

**SECTION 3**
**AGREEMENT**

\*\*\*

**3.2** **Corrective Advertising**. Within ten (10) days of the Effective Date, a letter containing the corrective advertising language set forth in Addendum A shall be posted to Ashcroft's website in a manner that is clearly visible and linked from the following pages:

> http://www.ashcroft.com/downloads/industry_brochures.cfm;
> http://www.ashcroft.com/downloads/product_information.cfm; and
> http://www.ashcroft.com/downloads/datasheets.cfm.

The letter shall be posted on Ashcroft's website for six (6) months from the date originally posted. The letter must be clearly visible to website visitors, but Ashcroft may choose how to include it on these specific web pages. The full corrective advertising language must appear to visitors of the above pages and not simply be included as a link to a different page.

\*\*\*

**ADDENDUM A**
**CORRECTIVE ADVERTISING LANGUAGE**

Ashcroft must use the following language in the corrective advertising referenced in Section 3.2 of the Settlement Agreement and Release to which this Addendum A is attached:

In March 2012, Ashcroft, Inc. ("Ashcroft") created and distributed an advertisement identified as "Page:DU/PI-74" that purported to provide a comparison of the flammability and safety characteristics of the Ashcroft 1279 Duragauge process gauge, the WIKA XSEL process gauge, and a competing U.S. Gauge model 1981 process gauge ("the Product Information Page/Flammability Advertisement"). Additionally, Ashcroft has for many years published a data sheet that does not make clear that the rear cover of the Ashcroft 1279 Duragauge process gauge case is not made of phenolic material ("the 1279 Data Sheets").

On January 1, 2013, WIKA brought suit against Ashcroft in federal court alleging that the Product Information Page/Flammability Advertisement and 1279 Data Sheets constitute false advertising in that: (1) the Product Information Page/Flammability Advertisement falsely misrepresents the flammability and safety characteristics of both Ashcroft's 1279 gauge and WIKA's XSEL gauge to the benefit of Ashcroft and the detriment of WIKA and (2) the 1279 Data Sheets falsely misrepresent that the case of the 1279 Duragauge is made entirely of phenolic material. A trial was held in April 2016 in which the jury and court found in favor of WIKA on WIKA's false advertising claims and awarded WIKA monetary damages and other relief, including corrective advertising. Judgment has been entered on those claims in WIKA's favor, and Ashcroft was further ordered by the court to issue corrective advertising to address the

harm created by its false advertising.

Pursuant to that judgment, Ashcroft informs you that the claims Ashcroft made in the Product Information Page/Flammability Advertisement about the flammability and safety of WIKA's XSEL process gauge were not true and the truth is that:

(a) The Pocan thermoplastic material used by WIKA for the case of its XSEL gauges does not create a pool of burning liquid or spatter burning molten plastic after removal from an open flame;

(b) Ashcroft's open flame tests did not show that the WIKA XSEL gauge or its case material poses the risk of spreading fire;

(c) Ashcroft's open flame tests showed the Pocan case used in WIKA's XSEL gauge immediately self-extinguished after removal from an open flame;

(d) The polypropylene material used in the rear cover of Ashcroft's 1279 Duragauge case burns, does not self-extinguish, and poses the risk of spreading a fire when exposed to an open flame; and

(e) The tests cited in the Product Information Page/Flammability Advertisement do not support the claim that WIKA's XSEL brand gauge poses a greater risk of spreading a fire when exposed to an open flame than Ashcroft's 1279 Duragauge process gauge or that Ashcroft's 1279 Duragauge process gauge is safer than WIKA's XSEL brand gauge.

Ashcroft further informs you that the photographs of its 1279 Duragauge process gauge shown in the Product Information Page/Flammability Advertisement did not convey the true results of Ashcroft's elevated temperature testing, as the product shown was not tested with its polypropylene front ring and rear cover.

Also, pursuant to that judgment, the statement in Ashcroft's 1279 Data Sheets that the case of its Duragauge process gauge is solely phenolic is not true. The rear cover of Ashcroft's gauge case is not made of phenolic material but from polypropylene, a thermoplastic material.

Ashcroft requests that you note the above corrections and return any and all copies of the Product Information Page/Flammability Advertisement and/or 1279 Data Sheets to Ashcroft, and cease and desist in distributing, publishing, citing, referring to, or otherwise disseminating the Product Information Page/Flammability Advertisement and/or 1279 Data Sheets.

\*\*\*

**3.3** **Ashcroft Advertising Obligations**.

    a.    <u>The Product Information Page/Flammability Ad</u>.  Ashcroft agrees that the Enjoined Parties shall not distribute, publish, cite, publicly refer to, or otherwise disseminate the Product Information Page/Flammability Ad, as well as any pictures, statements, or claims contained therein.  On or before the Effective Date, Ashcroft shall (i) request the return of all copies of the Product Information Page/Flammability Ad from all persons and entities to whom the Enjoined Parties distributed such advertisements; (ii) instruct all persons and entities to whom the Enjoined Parties distributed such advertisement to similarly desist in distributing, publishing, citing, and otherwise disseminating the Product Information Page/Flammability Ad; and (iii) provide WIKA a written report, prepared under oath, setting forth in detail the manner and form in which Ashcroft has complied with subsections (i) through (ii).

    b.    <u>The 1279 Data Sheets</u>.  Ashcroft agrees that the Enjoined Parties shall not distribute, publish, cite, publicly refer to, or otherwise disseminate the 1279 Data Sheets as identified in the Amended Complaint and in the form(s) existing as of April 22, 2016, shall not otherwise claim or suggest that the Ashcroft 1279 Duragauge process gauge is made entirely of phenolic material, and agrees that anytime Ashcroft publishes information describing the 1279 Duragauge process gauge that states that its case is made of phenolic material, Ashcroft will also indicate the material used in the back cover of the gauge case.  On or before the Effective Date, Ashcroft shall: (i) request the return of all copies of the 1279 Data Sheets from all persons and entities to whom the Enjoined Parties distributed the 1279 Data Sheets; (ii) instruct all persons and entities to whom the Enjoined Parties distributed the 1279 Data Sheets to similarly desist in distributing, publishing, citing, and otherwise disseminating the 1279 Data Sheets, and if such person or entity has a link to, or electronic file of, the 1279 Data Sheets that they delete it; and (iii) instruct EPCs (Engineering, Procurement and Construction Companies) with whom Ashcroft does business, distributors, and Ashcroft's direct customers, that revised 1279 data sheets describing the rear cover materials have been posted to Ashcroft's website, and that such persons or entities should return or destroy the prior 1279 Data Sheets; and (iv) provide WIKA a written report, prepared under oath, setting forth in detail the manner and form in which Ashcroft has complied with subsections (i) through (iii).

    c.    <u>Additional Obligations</u>.  In the event that WIKA discovers that a person or entity: (i) is in possession of the Product Information Page/Flammability Ad and/or the 1279 Data Sheets; (ii) is distributing, publishing, citing, and/or otherwise disseminating the Product Information Page/Flammability Ad (or any pictures, statements, or claims contained therein) and/or the 1279 Data Sheets; and/or (iii) claiming or suggesting that the rear cover of the 1279 Duragauge process gauge case is made of phenolic material or the Ashcroft 1279 Duragauge process gauge is made entirely of phenolic material, WIKA shall provide written or photographic evidence of such to Ashcroft and within ten (10) days of Ashcroft's receipt of such notification, Ashcroft shall either (A): (1) contact such person or entity to request the return of any and all copies of the Product Information Page/Flammability Ad and/or the 1279 Data Sheets;

4

(2) instruct such person or entity to comply with the provisions of Section 3.3(a) and Section 3.3(b); (3) instruct such person or entity that the rear cover of the 1279 Duragauge process gauge case is not made of phenolic material; and (4) provide WIKA with evidence that Ashcroft complied with subsections (1)-(3) of this paragraph; or (B) if applicable pursuant to Sections 3.3 (a) and (b), confirm that Ashcroft had instructed such person or entity, on or before the Effective Date, to stop using the Product Information Page/Flammability Ad (and any pictures, statements, or claims contained therein) and the 1279 Data Sheets and to return any and all copies thereof to Ashcroft.